## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| NICHOLAS O. RUSSO, JR. | : | CIVIL ACTION NO. |
| PLAINTIFF | : | |
| | : | 3:00CV1794(JCH) |
| v. | : | |
| | : | |
| JOHN M. BAILEY, ET AL  : | | |
| DEFENDANTS | : | DECEMBER 24, 2003 |

### DECLARATION OF LARRY REYNOLDS

1.  My name is Larry Reynolds and I am over the age of eighteen and believe in the obligations of an oath.

2.  From 1983 to the present I have been employed by the Hartford Police Department (hereinafter referred to as the "Department") as a police officer.

3.  From 1995 to late 1997, I served as the Employee Assistance Program (hereinafter referred to as the "EAP") Coordinator for the Department.

4.  As the EAP Coordinator, I served as a liaison between the Department and the agency contracted to provide EAP services, which are referrals for officers with personal problems, to members of the Department.

5.  Since 1993, I have held various Hartford Police Union (hereinafter referred to as the "Union") offices and in February of 1997 I became the President of the Union.

6.    The Union is recognized as the sole and exclusive bargaining agent for sworn members of the Department pursuant to certification granted by the Connecticut State Board of Labor Relations dated February 17, 1984 and August 12, 1994 (ME 14,689) for the purposes of collective bargaining under the provisions of the Municipal Relations Act.

7.    While serving in the capacity of EAP coordinator or Union official, I performed no law enforcement functions.

8.    Both the offices of EAP and the Union were located in offices outside the Department.

9.    Both the EAP and the Union had separate telephone numbers than that of the Department and any call received by the Department could not be transferred to either the EAP or the Union offices.

10.   In my role as EAP Coordinator, I was responsible for coordinating drug testing of members of the Department.

11.   The EAP Coordinator has no authority to refer any employee for any kind to drug testing and I never made a referral for Nicholas Russo to be drug tested.

12.   On January 10, 1997, the Department subjected Nicholas Russo to a drug test.

SILVESTER & DALY
72 RUSS STREET • HARTFORD, CONNECTICUT 06106 • (860) 278-2650 • FAX (860) 727-9243

13.  I played no role in the decision to make the referral and was never made aware of the outcome of any of Nicholas Russo's drug tests.

14.  Nicholas Russo never filed any grievance, nor requested that the Union file a grievance concerning this drug test, despite being given a suspension of two days for his unauthorized absence from work on January 7 and 8, 1997.

15.  Nicholas Russo pled no contest to the aforementioned two-day suspension.

16.  Nicholas Russo was drug tested on November 4, 1997.

17.  Prior to this November drug test I had no meetings or any contact with anyone at the Department concerning the basis for subjecting Nicholas Russo to the drug test.

18.  While off-duty on November 4, 1997 I was contacted by Captain Jeffery Flaherty to meet him in front of police headquarters to accompany Jeffery Flaherty, Sergeant Norberto Huertas and Nicholas Russo to the drug testing facility in Bloomfield, Connecticut.

19.  When I arrived to meet the aforementioned parties, I was in plain clothes, off-duty and not wearing or carrying any department-issued equipment or firearms.

3

20.   My presence was not in furtherance of any law enforcement function, but only as the EAP Coordinator to facilitate the test.

21.   In the past, I have done the same on three or four occasions when other officers where subjected to reasonable cause drug testing.

22.   Once the drug test was completed we returned to headquarters.

23.   I then left, as did Jeffery Flaherty, Norbeto Huertas and Nicholas Russo.

24.   Nicholas Russo was not disciplined as a result of this drug test.

25.   Nicholas Russo never contacted the Union about filing any grievance concerning the drug test, nor did he file any grievance on his own behalf concerning the test.

26.   On December 16, 1997, Nicholas Russo was arrested and charged with four felony counts.

27.   I did not participate in the investigation or arrest of Nicholas Russo.

28.   The Collective Bargaining Agreement between the Department and the Union, specifically Appendix A, paragraph 6 (a) provides that an officer arrested for a felony may be suspended without pay and without a prior disciplinary hearing.

4

29.  Immediately after his arrest Nicholas Russo was suspended by Chief
     Croughwell.

30.  The suspension of Nicholas Russo was made by Chief Croughwell pursuant
     to Appendix A of the Collective Bargaining Agreement and did not give rise to
     a grievable offense by the Department.

31.  Nicholas Russo never request that a grievance be filed based on his
     suspension for a felony arrest.

32.  Nicholas Russo testified that he was aware of the Department's right to
     suspend an officer that was arrested for a felony.

33.  I resigned from my EAP position sometime in December of 1997.

34.  I resigned from Union position, effective February 1, 1999.

35.  Prior to my resignation from the Union, I had no basis under the Collective
     Bargaining Agreement to bring any grievance on behalf of Nicholas Russo,
     nor did he request that I do so at any time.

SILVESTER & DALY
72 RUSS STREET • HARTFORD, CONNECTICUT 06106 • (860) 278-2650 • FAX (860) 727-9243

THE DECLARANT,

_____

Larry Reynolds

Sworn to and subscribed to
me on this        day of
December, 2003.

_____

Frank J. Szilagyi
Commissioner of the Superior Court

HPU/Russo/ Reynolds Affidavit.doc

# AGREEMENT

BETWEEN

## THE CITY OF HARTFORD
## CONNECTICUT

AND

## THE HARTFORD POLICE UNION

 

July 1, 1999 to June 30, 2004

 5

# APPENDIX A

## Employee Rights

The following subsections of Section 7-468 of the Municipal Employee Relations Act are hereby provided verbatim, solely so as to inform employees of their statutory rights:

**(A)** "Employees shall have, and shall be protected in the exercise of, the right of self-organization, to form, join or assist any employee organization, to bargain collectively through representatives of their own choosing on questions of wages, hours and other conditions of employment and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, free from actual interference, restraint or coercion."

**(D)** "An individual employee at any time may present a grievance to his or her employer and have the grievance adjusted, without intervention of an employee organization, provided the adjustment shall not be inconsistent with the terms of a Collective Bargaining Agreement then in effect. The employee organization certified or recognized as the exclusive representative shall be given prompt notice of the adjustment. (February Sp. Sess. 1965, P.A. 159, S.2. eff. June 4, 1965; 1967, P.A. 491 S.2., eff. June 16, 1967; 1993, P.A. 93-426, S.4.)"

It is understood and agreed that the following Police Officer "Bill of Rights" shall become effective immediately.

**1.** Any formal written complaint by a person against a Police Officer shall be duly sworn to and signed by the complainant. If the person refuses to sign the complaint, the complaint shall be received and the refusal to sign shall be noted.

61

2. The above does not preclude the Chief of Police from initiating a departmental investigation upon receipt of any type of complaint if he or she determines it to be in the best interest of the Police Department and/or the Police Officer involved. The investigation of an unsigned complaint must be concluded within thirty (30) working days of the filing of the complaint. On or before thirty (30) working days have passed, the Chief of Police must advise the Police Officer involved whether charges will be made against him or her or whether the investigation has been concluded. If the investigation has been concluded, no charges will be made against the Officer at any later time.

3. In the absence of any further corroboratory evidence after a departmental investigation, an unsigned complaint on its own standing shall not be used as evidence in any formal departmental hearing against a Police Officer.

4. Whenever a Police Officer is under investigation for any reason which may lead to disciplinary and/or criminal charges, such investigation shall be conducted in the following manner:

(a) Any questioning of the Police Officer shall be conducted at a reasonable hour normally when the Police Officer is on duty, unless the seriousness of the investigation warrants an immediate investigation as determined by the Chief of Police.

(b) If the Police Officer under questioning is under arrest or is likely to be placed under arrest, he or she shall be informed of all his or her rights prior to the beginning of questioning.

(c) The Police Officer shall have the right to be represented by counsel of his choice when such investigation relates to the officer being charged with a criminal offense. If the employee so desires, a union representative may be present during any questioning which may lead to suspension, demotion, dismissal or arrest.

5. Police Officers shall enjoy all legal rights guaranteed under the Constitution of the United States and the State of Connecticut and any other Federal or state statutes.

6.(a) No officer shall be suspended without pay until a disciplinary hearing has been conducted except as provided in Paragraphs (b) and (c) below or unless he or she has been arrested for a felony, a sexual offense and/or a crime of larceny under the Connecticut Penal Code.

(b) An officer who has been found to be under the influence of drugs or alcohol while on duty may be suspended without pay for the remainder of that tour of duty. The Chief of Police shall review the suspension within five (5) working days and either reverse or uphold the suspension, or take other appropriate disciplinary action as he or she may deem necessary following a disciplinary hearing.

(c) An officer who has assaulted another officer while either is on duty or displays physical violence against another Police Department employee or against Police Department equipment or facilities except if such action is in the course of a lawful arrest may be immediately suspended without pay until a hearing before the Chief of Police or his or her designee on the next administrative duty day at which time he or she may uphold, overturn, or continue the suspension for no more than five (5) working days.

(d) An officer who reports for duty improperly attired or equipped may be sent home to report back properly attired or equipped and will be docked pay for the time he or she is absent.

7. If a false complaint or allegation is made against any Police Officer, the Chief of Police, the Union Executive Board, and the Police Officer involved will meet to review the charges and discuss whether or not the matter should be presented to appropriate prosecutional persons.

8. In the event the Police Chief determines that the charges filed against an employee, if true, would warrant a penalty of no less than one (1) day and/or no more than five (5) days suspension without pay, the expedited hearing procedures, indicated below, will be followed: In all other disciplinary actions those hearing rules as outline in the H.P.D. Policy and Procedures, Section 4.3 shall remain in effect.

(a) The Police Chief or the Chief's designee will advise the Union and the employee of the charges filed and will set a date for an expedited disciplinary hearing before the Chief or his/her designee.

(b) The employee, who at the employee's discretion may be represented at the hearing by the Union, will be permitted to respond to the charges filed and will have access to the department's investigative package and will be permitted to respond to the contents of that package. No witnesses will be permitted to testify at such hearings, provided however, written statements from such witnesses may be submitted by either the department or the Union (or employee if not represented by the Union).

(c) Any charge which results from a citizen's complaint shall not be subject to this procedure.

(d) The findings of the Police Chief or designee shall be made known to the employee and Union at the close of the hearing. If the employee is suspended as a result of those findings, the employee and the Union shall be advised of the date(s) and duration of the suspension at that time. The Police Chief or designee may postpone a recitation of the findings if the Union or employee has submitted new or heretofore unknown information to the Chief or designee which may require further investigation by the department.

(e) Any suspension imposed as a result of an expedited hearing may be appealed to the third (3rd) step of the grievance procedure, and if not resolved at that step appealed to arbitration. Any appeal filed must be done so in accordance with Article II of this Agreement.

(f) Any employee, who is suspended from work without pay, at the employee's option, may elect to work during the suspension and have the suspension time deducted from the employee's accumulated and accrued leave such as vacation and earned leave, but not sick leave. Employees so suspended shall not be eligible for overtime or private duty assignments for the duration of such suspension.

1    Reynolds never filed that grievance or never represented
2    me in that.
3        Q        Wouldn't you agree that the grievance was timely
4    filed when the criminal charges were no longer in place?
5        A        For that portion of it?
6        Q        Yes.
7        A        Yes.
8        Q        Up to that point, the city had a claim that you
9    were arrested on felony charges and they were relying on
10   the language in Appendix A that provided that they could
11   suspend an officer without a hearing if they chose to do
12   so if you were arrested for a felony, right?
13       A        Correct.
14       Q        So you don't claim that Mike somehow didn't take
15   steps once your criminal charges were dismissed to
16   effectuate your immediate reinstatement, do you?
17       A        No.
18       Q        And Larry obviously couldn't be involved with
19   that because he was no longer involved with the union,
20   right?
21       A        With my reinstatement process?
22       Q        Yes.
23       A        No, he couldn't.
24       Q        Larry had nothing to do with that?

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

NICHOLAS O. RUSSO, JR.      :     CIVIL ACTION NO.
      PLAINTIFF        :
v.                  :     3:00CV1794(JCH)
                  :
JOHN M. BAILEY, ET AL    :
      DEFENDANTS     :     DECEMBER 24, 2003

## <u>DECLARATION OF MICHAEL WOOD</u>

1. My name is Michael Wood, I am over the age of eighteen and I believe in the obligations of an oath.

2. I was employed by the Hartford Police Department (hereinafter referred to as "Department") as a police officer from 1983 until my retirement in 2003.

3. I served as the President of the Hartford Police Union (hereinafter referred to as the "Union") from February 1999 to August 2003.

4. In 1997, when Nicholas Russo was drug tested on two occasions I had no contact with Nicholas Russo concerning those matters. At that time I held no Union office, nor had any contact with the Department's (hereinafter referred to as the "Department") administration concerning drug testing and had no role in those drug tests.

SILVESTER & DALY
72 RUSS STREET • HARTFORD, CONNECTICUT 06106 • (860) 278-2650 • FAX (860) 727-9243

5. I was never contacted by Nicholas Russo concerning the drug tests administered to him in 1997.

6. A grievance dated August 11, 2000 was filed on behalf of Nicholas Russo concerning the 1997 suspension. This grievance was prematurely filed and done at the request of Nicholas Russo's Attorney, James Brewer. The City never contested the untimely filing and it was heard subsequent to the dismissal of Nicholas Russo's criminal charges on September 15, 2000. The Collective Bargaining Agreement states that any grievance concerning suspension shall be commenced at the third step of the grievance process. The Collective Bargaining Agreement states that any grievance concerning suspension shall be commenced at the third step of the grievance process.

7. A third step hearing concerning Nicholas Russo was held on October 24, 2000.

8. Jane K. Heffernan, Principal Personnel Analyst with the City of Hartford, conducted the third step hearing.

9. Prior to the third step hearing referred to above, I discussed Nicholas Russo's reinstatement with Acting Chief Robert Rudewicz. Chief Rudewicz agreed that the dismissal of Russo's criminal charges meant the Department could no longer suspend under the provisions of Appendix A.

2

10. Thereafter I received a letter from Chief Rudewicz dated October 26, 2000, indicating that Russo was reinstated effective October 29, 2000. This information was communicated to Attorney Brewer.

11. The Union pursued the grievance. The grievance terminated in favor of Russo and he was awarded back pay and benefits for Russo for the period of September 15, 2000 until October 29, 2000.

12. The Union filed a grievance to the fourth step, which consists of hearing before the Connecticut Labor Department's Board of Mediation and Arbitration.

13. Subsequent to filing at the fourth step the Connecticut Supreme Court reversed the dismissal of Russo's criminal charges once again authorizing Russo's suspension under Appendix A of the contract.

14. In November of 2003, Nicholas Russo was convicted of felony charges in New London Superior Court. A felony conviction renders any grievance brought on Nicholas Russo's behalf moot given that the Union could never prove that the suspension of Nicholas Russo in 1997 and thereafter was unjust. Further, a felony conviction precludes Nicholas Russo from being sworn as a police officer in Hartford, Connecticut.

3

15. The Union acted in good faith at all times concerning Nicholas Russo's

suspension.

THE DECLARANT,

_____

Michael Wood

Sworn to and subscribed to
me on this        day of
December, 2003.


_____

Frank J. Szilagyi
Commissioner of the Superior Court


HPU/Russo/ Wood Affidavit

4

1  claims you brought with regard to the union and the
2  individual union officers.  Okay?
3        A     Yes.
4        Q     You brought a claim against Tom Hardwick,
5  Michael Wood and Larry Reynolds, correct?
6        A     Correct.
7        Q     Specifically in the fourth count of the Sixth
8  Amended Complaint, you're making out a claim for
9  violations of your civil rights.  That's Exhibit 61.
10       A     Yes.  Just a second.
11       Q     I have a spare here.
12       A     I think it's in here.
13       Q     To save time, here you go.
14       A     I got it.  I'm sorry.  What page?
15       Q     Fourth count begins on page 15 of Exhibit 61.
16       A     Go ahead.
17       Q     Am I to understand that your complaint is
18  against Larry Reynolds, Michael Wood and Mr. Hardwick in
19  their capacity as union officials?
20       A     Yes.
21       Q     You're making a claim that the union has somehow
22  engaged and its officials have somehow engaged in a
23  conspiracy with the Hartford Police Department.  Can you
24  tell me what the factual basis for that claim is?

1      A      I read this.

2      Q      In essence, that's the letter that reinstates

3  your employment, correct?

4      A      Correct.

5      Q      Thank you.

6      A      Are we marking this?

7      Q      It's already been marked as 67.

8      A      Sorry.

9      Q      That's all right.  One of the other claims that

10  you make is that the union defendants Larry, Tom and Mike

11  have collaborated with the police department in violating

12  your civil and due process rights?

13      A      Correct.

14      Q      Are you aware of that?

15      A      Correct.

16      Q      Let's take them one by one.  Can you tell me

17  what evidence you have that Mike Wood collaborated with

18  the police department to have your civil or due process

19  rights violated?

20      A      Mike Wood, I don't have any evidence that I'm

21  aware of.

22      Q      Let's go to Tom Hardwick?

23      A      Tom, I have no evidence.

24      Q      You have no evidence that Tom Hardwick

1    collaborated with the police department to violate your

2    civil or due process rights?

3        A    No.

4        Q    Let's talk about Larry.  Can you tell me,

5    Mr. Russo, what evidence you have that Larry Reynolds

6    collaborated with the Hartford Police Department in

7    violating your civil rights or your due process rights?

8        A    During -- it would be just during the drug

9    testing of November 1997.

10       Q    And you've told me about the events that you

11   claim he engaged in that you think violated your rights?

12       A    Correct.

13       Q    And I think you told me that Larry was doing

14   that while he was acting in his capacity as a union

15   official, right?

16       A    I don't know what -- he was wearing two hats at

17   the time.  He was the union president plus he was the

18   director of EAP so I would assume he assumed a dual role.

19       Q    What is it that you claim the role that he was

20   engaged in when he, as you claim, collaborated with the

21   police department to violate your civil and due process

22   rights?

23       A    His absence of not objecting to my being taken

24   into custody.  His absence of not requiring the police

1    department to adhere to the drug testing policy.

2         Q    When you were speaking to him during that
3    November 1997 drug test, were you looking to him as a
4    union official for advice and help?

5         A    I was looking to him as a union president.

6         Q    Okay.  And it was your expectation that Larry as
7    the union president was going to address your concerns at
8    that time, right?

9         A    Correct.

10        Q    And just so it's clear, this is the time that he
11   met you at the PD.  It was about 6:30, right?

12        A    Yes.

13        Q    And he was in plain clothes?

14        A    Yes.

15        Q    And just so I understand, when you left from the
16   PD to go to the facility for the test, who went with you?

17        A    Bert Huertas, Jeff Flaherty, Larry, and myself.

18        Q    Hajdasz didn't go?

19        A    No.

20        Q    And, again, is it your claim that Larry engaged
21   in the conduct that you complain of and he did so in an
22   intentional fashion?

23        A    I believe it was intentional.

24        Q    What makes you believe that he was intending to

1    cause for that warrant to issue?
2         A    That's upcoming.  That's what I just said.
3    We're back down there, and there will be another probably
4    suppression hearing.
5         Q    Were you aware that the union made a demand for
6    your immediate reinstatement upon the dismissal of your
7    criminal charges in September of 2002?
8         A    Yes.
9         Q    How did you know about that?
10        A    I believe at some point I saw a letter that was
11   written by Mike Wood.
12        Q    Did you ever see the response to the letter to
13   Mike Wood, written by -- signed by Chief Rudewicz?
14             MR. HOWARD:  For the record, I think you
15        may have misspoken.  I think it was 2000.
16        Q    What did I say?
17        A    2002.
18        Q    Sorry.  I meant 2000.
19             Back to my question.  Did you ever see the
20   response to the letter written by Michael Wood signed by
21   Chief Rudewicz in 2000?
22        A    I believe I saw it at one point.
23        Q    Let me show you.  I think we marked this as
24   Exhibit 67.

### Section 1.10  Probation Time

Probationary status shall be as provided in the Personnel Rules and Regulations; provided, however, that the probationary period for Police Officer shall extend for twelve (12) months beyond the date of swearing-in.

## ARTICLE II

## GRIEVANCE PROCEDURE

### Section 2.1

Any grievance or dispute which may arise between the parties concerning the application, meaning or interpretation of this Agreement, shall be settled in the following manner:

**Step 1.** The aggrieved employee, who may be represented by an individual delegated by the Union Executive Board, if said employee so desires, shall take up the grievance or dispute with said employee's first level supervisor who is outside the bargaining unit within seven (7) working days of the date of the grievance or his or her knowledge of its occurrence.

The first level supervisor outside the bargaining unit shall render his or her decision within seven (7) working days. Such supervisors shall exercise whatever authority may be delegated to them to resolve grievances, and in the event that no such authority is delegated, such supervisor shall have no jurisdiction in the grievance procedure.

Police Captains have all prior authority to rule on first step grievances and provide or deny permission to Union officers and/or Stewards to investigate and/or settle grievances.

5

**Step 2.** If the grievance has not been settled, it shall be presented in writing, on forms provided by the City, to the Chief of Police by the employee and/or the individual delegated by the Union Executive Board within seven (7) working days after the supervisor's response is received. The written grievance, which must be signed by the grievant, shall include:

(a) **A statement of the grievance and facts involved;**

(b) **The alleged violation of the specific provision of this Agreement; and**

(c) **The remedy requested.**

The Chief of Police or his or her designated representative shall render his or her decision in writing within fourteen (14) working days of the date the grievance was submitted to him.

**Step 3.** If the grievance has not been settled, it shall be presented in writing to the City Director of Personnel within five (5) working days after the decision of the Chief of Police is received. If he or she so determines, the Director of Personnel, or his or her designated representative, shall meet with the interested parties no later than ten (10) working days after the receipt of the grievance and in any case shall render his or her decision in writing within fifteen (15) working days of the receipt of the grievance.

**Step 4.** If the Union is not satisfied with the decision rendered in Step 3, it shall notify the Director of Personnel within thirty (30) working days after receipt of the decision that it intends to submit the grievance to arbitration, and shall simultaneously file notice of appeal with the State Board of Mediation and Arbitration, which shall act on such request in accordance with its rules and procedures. Said Board shall be limited to the express terms of the contract and shall not have the power to modify, amend or delete any terms or provisions of the Agreement, or render a decision contrary to law.

6

The decision of the arbitrator shall be final and binding on the parties.

The City and the Union shall each have the right to submit three (3) grievances per fiscal year to the American Arbitration Association, single arbitrator, in lieu of the State Board of Mediation and Arbitration. The right to annual submission may not be accumulated.

The cost of the American Arbitration Association and the arbitrator shall be divided equally between the parties. The decision of the arbitrator shall be final and binding on the parties.

Nothing in this Article is intended to prohibit the City from processing a grievance through the grievance procedure up to and including arbitration. Such grievance shall be submitted in writing to the Union President within fourteen (14) days, such grievance shall be submitted to arbitration.

The expense for the arbitrator's services and the proceedings shall be borne equally by the City and the Union. If either party desires a verbatim record of the proceedings, it may cause such a record to be made, providing it pays for the record and makes copies available without charge to the other party and to the arbitrator.

Once a grievance has been submitted to arbitration, either the City or the Union may request an expedited hearing before the State Board of Mediation and Arbitration provided the provisions of this section are met and provided further that it is understood that the case will be heard by a single arbitrator.

7

## Section 2.2

Grievances involving discharge, suspension, and demotion, following disposition by the Chief of Police, shall be processed beginning at the third (3rd) step. Grievances involving documented counseling, oral and written reprimands shall be final at the third (3rd) step of the procedure, provided that after the following time limits in which no discipline has been issued for a similar offense: documented counseling six (6) months, oral reprimand one (1) year, written reprimand two (2) years; these incidents for the purpose of discipline will be disregarded in any future disciplinary action. No employee shall be suspended, discharged, demoted or disciplined except for just cause.

## Section 2.3

If the employee asks that he or she be personally represented by his or her own attorney at Step two or three in the grievance procedure, an individual designated by the Union Executive Board may also be present as an observer at the employee's request.

If the employee is represented by the Union and desires his or her own attorney to be present as an observer at Step two or three, the attorney's presence as an observer will be subject to the approval of the City's representative.

In accordance with Section 7-468(d) of Connecticut's Municipal Employee Relations Act, nothing herein is intended to preclude the employee from representing himself at any one (1) of the first three (3) steps of this procedure.

## Section 2.4

In order to avoid the necessity of processing at one (1) time numerous grievances originating with the same event, the Union may file a single grievance at the appropriate step. When this occurs, all other grievances, if any, on the same event shall be held in abeyance, and the Union grievance shall be processed as a precedent.

8

When such a grievance is resolved, the parties shall promptly review the other grievances, if any, that were held in abeyance in an effort to resolve them. This mutual review procedure shall not require more than five (5) working days subject, however, to mutual extension of period for review if circumstances so require.

## Section 2.5

If any such grievance cannot be settled on the basis of the precedent grievance, it shall be processed in accordance with the grievance procedure, and once more in accordance with the time limitations established in this Agreement.

Should the City and the Union differ about the application, meaning or interpretation of Section 1.1 through 1.4 and Sections 6.1 through 6.10 of this Agreement that confer rights or benefits to the Union as an organization (and which do not confer rights or benefits to employees as members of the bargaining unit) such differences shall be reduced to writing by the Union and filed at the appropriate step and shall be subject to the foregoing grievance procedure. It is the intent of this paragraph to provide union access to the grievance procedure on contractual provisions granting rights or benefits directly to the Union as an organization.

## Section 2.6

Failure on the part of the City to comply with the time limitations for any grievance response set forth in Article II will be cause to allow the grievance to be filed at the next step of the grievance procedure.

9

# CITY OF HARTFORD



**DEPARTMENT OF PERSONNEL**
550 Main Street, Hartford, CT 06103
Telephone: (860) 543-8590
Fax: (860) 722-8042

COUNCIL – MANAGER GOVERNMENT

November 1, 2000

Mr. Nicholas Russo, Jr.
112 Meyers Drive
Rocky Hill, CT 06067

Dear Mr. Russo:

A third step hearing of your suspension grievance was held on October 24, 2000.

Present for the Hartford Police Union was M. Wood, President, T. Hardwick, Vice President, and F. Szilagyi, Esq. You, the grievant, were not present.

Present for the Hartford Police Department was D. Shirley, Principal Administrative Analyst and H. Apostolidis, Esq.

The Personnel Director designated J. Heffernan, Principal Personnel Analyst, as her representative to hear the grievance.

All parties were provided full opportunity to make argument and present evidence.

The time limits at the third step of the grievance procedure, regarding the scheduled hearing date, were waived by the City and the Union.

## ISSUE

The issue is set as: Whether the grievant was suspended for just cause on December 17, 1997, in accordance with Article II, Section 2.2 of the collective bargaining agreement between the City of Hartford and the Hartford Police Union. If not, what shall the remedy be?

## BACKGROUND

On December 16, 1997, the grievant, a Hartford Police Department detective, was arrested on 4 counts of forgery in the second degree and 4 counts of obtaining prescriptions by fraud. Accordingly, effective December 17, 1997, he was suspended without pay as a result of these felony charges.



**MEMBER**

The authority to suspend without a hearing is contained in Appendix A, Section 6(a) of the collective bargaining agreement between the City of Hartford and the Hartford Police Union which reads:

> "No officer shall be suspended without pay until a disciplinary hearing has been conducted except as provided in paragraphs b and c below or unless he has been arrested for a felony, a sexual offense and/or a crime of larceny under the Connecticut Penal Code."

The grievant was given a standard letter of notification of the suspension which reads in part:

> "Due to the nature of the circumstances leading to your arrest, I have no option but to suspend you from duty without pay pending the outcome of this matter through Criminal Court and/or Police Department administrative procedures."

On September 15, 2000, the Superior Court granted a Motion to Suppress in the grievant's criminal case. The State of Connecticut entered a dismissal of the charges so an appeal could be taken on the Motion to Suppress. That appeal is going forward.

## DISCUSSION

At the time of the grievant's arrest on December 16, 1997 on felony charges, the Chief of Police had the authority to suspend without a hearing based upon Appendix A, Section 6 (a) of the collective bargaining agreement.

The Chief of Police also had the right to impose a suspension without pay pending a decision in the Criminal Court or a Police Department administrative hearing.

As a result of the dismissal of the criminal charges against the grievant, he is considered to be no longer under arrest. That status may or may not change based on the Appellate Court's ruling. Thus, the Chief of Police should reserve the right to hold a disciplinary hearing for the grievant when the criminal case has been finally concluded in the court system. Consequently, by letter dated October 26, 2000 from Acting Chief R. Rudewicz to M. Wood, President, Hartford Police Union, the grievant was reinstated effective October 29, 2000. The reinstatement is contingent upon the grievant providing documentation, satisfactory to the Hartford Police Department, he is fit for duty as a Police Officer at this time. The grievant must also comply with P.O.S.T. Council mandates on certification and employment.

As the decision to reinstate was made by the Hartford Police Department prior to the writing of this decision, that is no longer an issue. The issues remaining are whether the suspension was for just cause and back pay.

Based on the evidence and testimony presented at the hearing, the suspension was for just cause.

The grievant must meet the conditions of a medical release for return to work and certification requirements. Upon his reinstatement he is to receive back pay from September 15, 2000 until the effective date of his reinstatement, October 29, 2000.

## DECISION

The grievance is denied. The grievant was suspended for just cause in accordance with Article II, Section 2.2 of the collective bargaining agreement between the City of Hartford and the Hartford Police Union. Upon meeting fitness and certification requirements for reinstatement, he is to be paid back pay from September 15, 2000 until October 29, 2000.

Very truly yours,

Jane K. Heffernan
Principal Personnel Analyst

JKH/abb

Concur: _____          Date: _11/2/00_
         Patricia C. Washington, Personnel Director

cc:    Acting Chief R. Rudewicz
       Acting Assistant Chief W. Reilly
       D. Shirley
       H. Apostolidis, Esq.
       M. Wood
       T. Hardwick
       F. Szilagyi, Esq.