UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

NICHOLAS O. RUSSO, JR.,  : CIVIL ACTION NO.
                         : 3:00CV1794 (JCH)
        PLAINTIFF,       :
                         :
V.                       :
                         :
JOHN M. BAILEY, ET AL.,  : MARCH 19, 2004
        DEFENDANTS.      :

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS,
LAWRENCE REYNOLDS, MICHAEL WOOD, THOMAS HARDWICK AND
HARTFORD POLICE UNION'S MOTION FOR SUMMARY JUDGEMENT

I    INTRODUCTION

Pursuant to Rule 56 of the of the Federal Rules of Civil Procedure, the plaintiff hereby objects to the motion for summary judgment filed by the defendants, Lawrence Reynolds, Michael Wood, Thomas Hardwick and the Hartford Police Union (the "Union Defendants"), in the case of Russo v. Bailey, Docket No. 3:00CV1794 (JCH). This case is one of three cases brought by the plaintiff that has been consolidated for discovery purposes. The defendant is not entitled to summary judgment as a matter of law because the plaintiff has been successful in presenting genuine issues of material facts.

II   STATEMENT OF FACTS

    A.   PRELIMINARY STATEMENT

    The plaintiff, Nicholas O. Russo, Jr. (herinafter "Russo") was[1] a Detective with the

---

[1] The plaintiff will be referred to as a former Hartford Police Detective although he has not been formally notified of his termination by the City of Hartford. He has, however been denied all pay, benefits and seniority since his arrest on December 16, 1997(except for a short period of time when the criminal charges were dismissed by the Superior Court). Therefore, plaintiff considers to have been discharged by the defendant City of Hartford.

Hartford Police Department Hartford Police Department (hereinafter "HPD") . Beginning in September, 1994 Russo was assigned to the HPD Crimes Against Persons Unit [presently referred to as "Major Crimes"] (hereinafter, "CAPERS"). In 1995, Russo was assigned to the Federal Violent Crimes Task Force, or Federal Gang Task Force. (hereinafter "FGTF"). Russo's investigative work for the HPD and the FGTF was outstanding and exemplary. Plaintiff's 56(c)(2) Statement ¶¶ 5-16.

There was tremendous animosity and conflict between HPD Detectives assigned to CAPERS and FBI Agents and HPD Detectives assigned to the FGTF. Plaintiff's 56(c)(2) Statement Section II.. The FGTF's quick resolution, and therefore, deprivation of HPD Capers personnel overtime, of homicides and Russo's cooperation with the federal Government became a contentious issue in the ranks of the HPD and the Connecticut State's Attorney Office. As a result, Detective Russo became the target of selective enforcement of departmental rules and regulations, illegal drug testing, false arrest and imprisonment, harassment, stalking and derogatory comments and threats on his life.

Finally, in the fall of 1997 Russo became the subject of a vindictive criminal investigation, instigated by named defendants who wanted to ruin his credibility and career.

Russo's supervisors, including, Lieutenant Kenary, Captian Flaherty and Chief Croughwell were very bitter and then frightened about Russo's involvement with the Federal Government. Named defendants Croughwell, Lyons, Lawlor, and Flaherty believed Russo was providing incriminating information about corrupt acts they either committed, approved or covered up. On October 31, 1997, after learning from State Inspector Stephen Kumnick, Chief State's Attorney John Bailey and thereafter HPD Capers Detective Rovella that Russo was assisting in a criminal investigation into corruption at the HPD, Croughwell, Lawlor and Lyons,

among others, threatened to, " kick [Russo's] fucking ass." Thereafter, Croughwell ordered Russo taken into Custody, his weapon taken, illegally drug tested and removed from duty. Croughwell also ordered Russo to submit to a lie detector test (polygraph) to determine the truthfulness of Russo's denial of involvement in the Federal Corruption investigation. Given the threats and refusing to compromise the federal investigation, Russo refused to admit his involvment to these criminals.

Concerned with the expansive knowledge and investigative ability of Russo, and their own criminal and unethical conduct, the defendants' set about on a course of action aimed solely at destroying Detective Russo's reputation, career and life. Plaintiff's 56(c)(2) Statement Section II..

### B.   THE POPE PARK MURDER, ILLEGAL DRUG TESTING, DISCLOSURE OF TESTING AND OTHER HARASSMENT

On January 9, 1997, Russo's supervisor, Daryl Roberts improperly marked Russo AWOL, after Russo called in sick, following the normal procedure and after providing Lt. Kenary and Sgt. Roberts with a note from his Physician. Plaintiff's 56(c)(2) Statement VII(A). Plaintiff was subjected to hostile and disparate treatment by his superiors at the Hartford Police Department. On January 9, 1997, Russo was subjected to an illegal drug test without reasonable cause or suspicion. Plaintiff's 56(c)(2) Statement Section XIII(A). Following the Pope Park Murder in July, 1997, Russo lead the criminal investigation for the FGTF which two days after the murder lead to the arrest, and later, conviction of the murderer Julio Ramos, the resentment of Russo dramatically increased. (Plaintiff's 56(c)(2) Statement Section II(A))

In 1997, Russo volunteered to assist U.S. Attorneys John Durham and James Glasser in a federal corruption investigation into the HPD. Plaintiff's 56(c)(2) Statement ¶ 61, 63, 68, 69. Russo's involvement with the federal corruption probe was leaked to the targets of the probe by

State's Attorney Inspector Stephen Kumnick and then Chief State's Attorney John Bailey. The targets of the federal investigation included the defendants: Flaherty, Kenary, Lyons, Lawlor and Croughwell. Plaintiff's 56(c)(2) Statement ¶¶ 61-63, 169-173.

In response to, and in retaliation for what Chief Croughwell suspected to be a threat against him and his department, Chief Croughwell engaged in the following extreme, outrageous, illegal and unlawful acts in a direct attempt to cause injury, pain, humiliation, defamation and financial loss upon Russo:

Croughwell conspired with Flaherty to illegally arrest and detain Russo under the pretext of required drug testing. Croughwell, Flaherty and Reynolds all violated the HPD Drug Testing Policy. Plaintiff's 56(c)(2) Statement Section XIII. On or about November 5, 1997, days after Croughwell threatened to physically harm Russo, Croughwell ordered Flaherty and two other police sergeants to go to United States Attorney's office in New Haven, Connecticut to illegally take Russo into custody, take his hand gun and drive him from the United States Attorney's Office where Russo was working for the FGTF. Plaintiff was in fear for his life. Plaintiff's 56(c)(2) Statement Section XIII; Flaherty physically took the plaintiff back to Hartford and forced him to immediately submit to a drug test in Bloomfield, Connecticut.
 As ordered by Croughwell, Flaherty stripped Plaintiff of his firearm. While in custody, plaintiff was forced to urinate in the street. . Plaintiff's 56(c)(2) Statement Section XIII.

The defendants' thereafter set out on a course to destroy the character of Plaintiff by taking this highly confidential testing information and disseminating it amongst the general population of the Police Department even before the results were returned, and on November 5, 1997, the information was revealed by the Hartford Police Department to departmental personnel and other persons, including Maxine Bernstein, a reporter for *The Hartford Courant.* The HPD

Drug Testing Policy strictly forbids any disclosure of an officer being tested. Plaintiff's 56(c)(2) Statement Section XIII.

### C.  THE CRIMINAL INVESTIGATION AND TYLENOL 3

In his continued efforts to destroy Russo's credibility and career in order to protect himself and his department from the corruption probe, the defendants initiated a criminal investigation of Russo along with the State's Attorney for the Judicial District of Hartford, James E. Thomas. Plaintiff's 56(c)(2) Statement Section V.

The defendants' also duped a low-level Diversionary Inspector of the Federal Drug Enforcement Administration ("DEA") to support their criminal investigation of Russo. This Diversionary Investigator, Marcus Brown (hereinafter "Brown"), joined Kenary, Flaherty, SGT Hajdaz and State's Attorney Inspector Skinner in the investigation. These officers rushed to build a case, any case, against Russo.

Without any complaint, this Joint Investigative Team (hereinafter "JIT") conducted an expansive illegitimate[2] and unprecedented investigation to determine if Russo was abusing Tylenol 3 that they illegally learned he was prescribed by his physian. This fishing expedition was a vindictive investigation to gather incriminating evidence. Plaintiff's 56(c)(2) Statement Section V.

As part of this investigation, Brown entered pharmacies in Detective Russo's neighborhood and around the vicinity of Russo's physician, Dr. Buccheri's office demanding Russo's patient profile and prescriptions; no other patient profiles were gathered. Id. Brown was

---

[2]The United State's Attorney's Office, and in particular, Russo's supervisor, Deputy U.S. Attorney John Durham was unaware of the criminal investigation of Russo, until Russo's arrest.

not conducting routine administrative inspections, but instead was aiding the Hartford Police Department and the State's Attorney's Office in their criminal investigation into Detective Russo. Id.

The defendants' arrested Russo on December 16, 1997 and charged him with Forgery in the second degree and illegally obtaining a controlled substance, Tylenol #3, by fraud. Plaintiff's 56(c)(2) Statement Section XIII XV. While Russo was under investigation and just prior to his arrest he was transferred by the defendants' from Capers to the Fraud Division.

On December 16, 1997, the Plaintiff was suspended without pay pending the outcome of his criminal trial. From December 16, 1997, to the present, the Union Defendant did not challenge the Hartford Police Department's suspension of the Plaintiff.

On September 15, 2000, the Superior Court ruled that the evidence seized during the criminal investigation of Detective Russo was obtained illegally. Plaintiff's 56(c)(2) Statement¶ 189-190. On that same day, the Prosecution moved and the Court dismissed all charges against Detective Russo. Id.

From September 15, 2000 to the present, Defendant Rudewicz illegally suspended the Plaintiff without pay. Id.

### D.    MARQUIS RETALIATION AND MORE THREATS

On or about September 15, 2000 when the criminal case against Russo was dismissed by the Superior Court and February 2002, when the Connecticut Supreme Court dubiously reversed and remanded the criminal case, despite repeated requests by Russo and court intervention, the City and Chief Marquis, did not take any steps to provide a safe work environment for Russo so that he was able to return to work.

Russo was never provided any reinstatement support or administrative assistance. The Plaintiff was not paid salary, or benefits from the date his suspension legally ended, September 15, 2000, to October 31, 2000, other officers similarly situated had been paid. Russo was denied medical insurance coverage that other officers received from September 15, 2000 to October 31, 2000. Plaintiff's 56(c)(2) Statement¶ 190, 191, 196, 199, 202, 203, 214, 219, 220, 221.

The City further interfered with Russo's attempts to receive worker's compensation benefits following Russo's quadruple bypass surgery in December 2001. Plaintiff's 56(c)(2) Statement¶ 216-218.

### E. UNION INVOLVEMENT

The plaintiff filed numerous grievances but the Union did not pursue those grievances. The inaction of the Union to plaintiff's grievances and complaints was in furtherance of an implicit agreement between the Hartford Police Department defendants and the Union defendants to prevent the plaintiff's return to duty. The Union President and EAP Representative, Reynolds, in violation of his responsibilities to the Union joined the defendants Croughwell, Flaherty, Kenary and Lilley in conspiring to bring criminal charges against the plaintiff and allowed the illegal drug testing of plaintiff. Reynolds Dep. at 168. Reynolds did not file a grievance following the November Drug Test for November 1997. Reynolds Dep. 122-123.

On December 16, 1997, the Plaintiff was suspended without pay pending the outcome of his criminal trial. From December 16, 1997 to the present, the Union Defendant did not challenge the Hartford Police Department's suspension of the Plaintiff.

Reynolds testified:

"Q. So there's nothing that you can point to regarding any kind of outreach to Nick Russo after he was suspended and arrested?
A    No.

> Q   And did you file or did anyone in the union file a grievance on behalf of Nick Russo after he was suspended and arrested in December of 1997?
> A   I did not, no.
> Q   Did anyone from the union?
> A   To my recollection, no.
> Q   Well, certainly you normally grieve someone being suspended, don't you?
> A   Yes." Reynolds Dep. at 164.

On September 15, 2000, the Superior Court ruled that the evidence seized during the criminal investigation of Detective Russo was obtained illegally. On that same day, the Prosecution moved and the Court dismissed all charges against Detective Russo.

From September 15, 2000 to the present, Defendant Rudewicz illegally suspended the Plaintiff without pay. The Union Defendants refused to take action to effectuate the Plaintiff's immediate reinstatement to his position in the Hartford Police Department. The Union Defendants, each and all of them, have refused to proffer any legitimate reason why the Plaintiff was not immediately reinstated when the criminal charges against him were dismissed, nor have they provided any evidence to support the continued suspension of the plaintiff. The Union Defendants refusal to advocate on behalf of the Plaintiff was a violation of Plaintiff's civil and due process rights. The Union has a duty to represent all of its members equally without discrimination. From December 16, 1997 to date, Defendant Union has taken no actions to protect the rights of the Plaintiff.

## III   LAW AND ARGUMENT

### A.   Standard or Review

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. Rule 56(c), F.R.C.P.; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S.Ct. 2505, 91

787, 794 (1966)); see Ciambriello v. County of Nassau, 292 F.3d 307, 324 (2d Cir. 2002)[3].

"Absent some concert of action between a union and the state, a union's actions do not constitute state action for the purposes of the First, Fifth and Fourteenth Amendments." Laboy v. Seabrook, 1996 U.S. Dist. LEXIS 10452, *6 (July 25, 1996 S.D.N.Y.) As a private entity, a union acts under color of state law for purposes of § 1983 if the state is somehow implicated in the union's actions. Id. at *7. "The Supreme Court has also held that, a union is a state actor for the purpose of § 1983 if it is a 'willful participant in joint action with the State or its agents.'" Id. (quoting Dennis v. Sparks, 449 U.S. 24, 27, 66 L. Ed. 2d 185 (1980)).

For example, in Hughes v. Patrolmen's Benevolent Ass'n of the City of N.Y., Inc., 850 F.2d 876 (2d Cir. 1988), the Second Circuit upheld the district court's finding that although the PBA was not itself a state actor, because of its joint participation with the state actor New York City Police Department in an effort to deprive plaintiff of his constitutional rights plaintiff could recover against the CBA under § 1983. Id. at 880-81.

The union acted in concert with the state actors, the police defendants. Lt. Flaherty, Srgt. Hasdazs and Srgt. Huertas, all who were on duty and armed, drove to New Haven and took Russo into custody for the drug test. Flaherty took away Russo's gun and Russo drove Russo to the HPD and then to the Medtox facility. Larry Reynolds was also present and did not advocate on behalf of Russo during the ride. (Huertas Dep. at 79-85; Flaherty Dep. at 223.) On January 26, 1999, Larry Reynolds corresponded with Attorney Brewer regarding Russo's grievances thus indicating that he was aware of all of the issues involving Russo. (Exhibit 17.) Reynolds was

---

[3] While Union Defendants cite to Ciambrielli for the proposition that "[l]abor unions . . .generally are not state actors," the court in Ciambrielli did not dismiss the complaint against the union because the union was a union, rather it dismissed the complaint because plaintiff offered no support for his joint action allegations. Ciambriello, 292 F.3d at 324.

informed by Brewer that the union was to represent Russo. (Exhibit 18.)

### C. The Union Officials Are Not Entitled to Summary Judgment on Plaintiff's Breach of Duty of Fair Representation Claim Because Material Facts are in Dispute Over the Union's Actions.

In Labee v. Hartford Pension Com'n, 239 Conn. 168 (1996), the Connecticut Supreme Court described in detail a union's duty of fair representation. The Court stated:

> A union must represent its members in good faith. This duty of fair representation derives from the union's status as the sole bargaining representative for its members. As such, the union has the exclusive right and obligation to act for its members and to represent their interests. . . . Because the individual members are thereby deprived of the opportunity to represent themselves or to select a minority union, this duty of fair representation is a necessary bulwark to prevent arbitrary union conduct. . . . The duty of fair representation requires the union to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion in complete good faith and honesty, and to avoid arbitrary conduct. A union breaches this duty if it acts arbitrarily, discriminatorily or in bad faith. . . . Furthermore, a union's actions are in bad faith if the union acts fraudulently or deceitfully . . . or does not act to further the best interests of its members.

(Internal quotations and citations omitted) Labee, 239 Conn. at 193-95.

An employee may sue the union for breach of its duty of fair representation if the union fails to submit a meritorious grievance to arbitration. Tedesco v. City of Stamford, 222 Conn. 233, 248 (1992). On December 16, 1997, the Plaintiff was suspended without pay pending the outcome of his criminal trial. From December 16, 1997 to the present, the Union Defendant did not challenge the Hartford Police Department's suspension of the Plaintiff.

Reynolds testified:

"Q. So there's nothing that you can point to regarding any kind of outreach to Nick Russo after he was suspended and arrested?
A   No.
Q   And did you file or did anyone in the union file a grievance on behalf of Nick Russo after he was suspended and arrested in December of 1997?
A   I did not, no.
Q   Did anyone from the union?
A   To my recollection, no.

Q   Well, certainly you normally grieve someone being suspended, don't you?
A   Yes." Reynolds Dep. at 164.

On September 15, 2000, the Superior Court ruled that the evidence seized during the criminal investigation of Detective Russo was obtained illegally. On that same day, the Prosecution moved and the Court dismissed all charges against Detective Russo.

From September 15, 2000 to the present, Defendant Rudewicz illegally suspended the Plaintiff without pay. The Union Defendants refused to take action to effectuate the Plaintiff's immediate reinstatement to his position in the Hartford Police Department. The Union Defendants, each and all of them, have refused to proffer any legitimate reason why the Plaintiff was not immediately reinstated when the criminal charges against him were dismissed, nor have they provided any evidence to support the continued suspension of the plaintiff. The Union Defendants refusal to advocate on behalf of the Plaintiff was a violation of Plaintiff's civil and due process rights. The Union has a duty to represent all of its members equally without discrimination. From December 16, 1997 to date, Defendant Union has taken no actions to protect the rights of the Plaintiff. Therefore, the Union has breached its duty as to Russo.

## CONCLUSION

The Defendants' motion for summary judgment should be denied.

THE PLAINTIFF,
NICHOLAS O. RUSSO, JR.

By: _____
Erin I. O'Neil
818 Farmington Avenue
West Hartford, CT  06119
(860) 523-4055
Federal Bar # ct 23073

## CERTIFICATION

This is to certify that the foregoing has been faxed on March 19, 2004, to all counsel and pro se parties of record:

Charles L. Howard, Esq.
Gregg P. Goumas Esq.
Derek Mogck, Esq.
Shipman & Goodwin LLP
One American Row
Hartford, CT 06103-2819

John P. Shea, Jr.
Sabia & Hartley, LLC
190 Trumbull Street
Suite 202
Hartford, CT 06103-2205

Frank Szilagyi, Esq.
Silvester, Daly & Delaney
72 Russ Street
Hartford, CT 06106

Attorney Helen Apostolidis
Office of Corporation Counsel
City of Hartford
550 Main Street
Hartford, CT 06103

_____
Erin I. O'Neil