### (a)  Roberts

Sergeant Roberts felt that Russo had forgotten that he was a Police Officer because of his work with the federal agents. Plaintiff's 56(c)(2) Statement ¶ 31. Russo was subject to the illegal drug test in January, 1997, at the direction of Srgt. Roberts. Plaintiff's 56(c)(2) Statement ¶ 34. Roberts placed Russo on AWOL status although Roberts did not have a reasonable basis to do so since Russo had called in sick following the sick leave procedures. Roberts testified that:

> "Q. If someone calls you up and says, "I know I'm supposed to be working today, but I'm taking a medication that makes me drowsy, I would like to book off sick," you would let them off. Right?
> A. Yes. If they said that, yes." (Roberts Dep. at 135.)

Roberts was not cooperative and did not support the Fed. Task Force and had refused to assist the Fed. Task Force in the investigation of the Pope Park Murder and had disobeyed a direct order by Deputy Chief Casati to assist, which resulted in his transfer. Plaintiff's 56(c)(2) Statement ¶ 34-38. Roberts denied Russo over time but made Russo close out files after hours. In April 1997, Roberts changed the locks to CAPERS and did not give Russo the key. Plaintiff's 56(c)(2) Statement Section VII(C).

### (b)  Croughwell

Croughwell asked the State's Attorney's office to investigate Russo but did not ask the State's Attorney's office to investigate the allegations of perjury against Lawlor. (Croughwell Dep. at 117-119.) There is not a policy or prior practice of the HPD having the State's Attorneys Office investigate a police officer prior to Russo but Croughwell had the State Attorney's office investigate Russo. (Flaherty Dep. at 32.) Russo was the only officer Croughwell ordered on sick leave following a drug test. (Flaherty Dep. at 100-101.) Russo is the only officer who had his

15

weapon taken away during a drug test. (Flaherty Dep. at 102-104.) Croughwell threatened Russo over the telephone and told him Lawlor and Lyons would beat him up stating, "I've got two guys here who want to kick your ass." Croughwell was not investigated or arrested for this. Nicholas Russo was investigated and arrested. (Croughwell Dep. at 191-199.) Croughwell promoted Sergeant Cancel to Lieutenant after he assaulted a subordinate with a gun. (Croughwell Dep. at 172.) Cancel was suspended for a few days and the suspension ran concurrently with his scheduled days off after assaulting a subordinate. (Croughwell Dep. at 172.)

(c)    **Flaherty**

In a memorandum dated November 4, 1997, Flaherty ordered Russo to go on sick leave. (Exhibit 5.) In a memorandum, from Huertas to Russo, dated April 2, 1997, Russo is informed that he was not entitled to receive over time pay. (Exhibit 6.) The overtime log dated March 29, 1997, shows that every other officer assigned to the CAPers division received overtime pay and Russo was not given such pay. (Exhibit 7.) Russo is the only officer who had his weapon taken away during a drug test. (Flaherty Dep. at 102-104.)

(d)    **Kenary**

Russo complained to Kenary that he was given an excessive workload and he was not provided with any assistance from other officers. (Exhibit 21.) Russo requested a partner for assistance. (Exhibit 22.)

(e)    **Lyons**

Lyons threatened to beat up Russo for his involvement with the Federal corruption investigation. He was not investigated or arrested for this. Russo was investigated and arrested. (Croughwell Dep. at 191-199.) Lyons was in possession of drugs and drug paraphernalia, 125

16

bags of heroin and 25 bags of crack cocaine and was not arrested. Russo was investigated and arrested. (Miele Dep. at 78-108; Calderone Dep. at 135-148; Russo Dep. 6/25/03, at 214-221; Kenary Dep. at 153-160; Lawlor Dep. at 56-84; Croughwell Dep. at 229-240; Lyons Dep. at 181-203.)

### (f)    Lawlor

Lawlor stalked, followed and threatened Russo. He was not investigated or arrested for this. (Exhibit 32.) Officer Eric Coleman ("Coleman") was found possessing cocaine and tested positive for possessing cocaine.

### (g)    Rovella

Unofficial compensation time is not recognized by the HPD and it is a crime to receive compensation from the City of Hartford through fraudulent means. (Hajdasz Dep. at 156.) . (Flaherty Dep. at 210-11; Hajdasz Dep. at 154). Sergeant James Rovella ("Rovella") falsified and forged time cards in order to steal overtime from the HPD.  Even though the HPD does not recognize "unofficial compensation time" Rovella claimed that it was unofficial compensation time. These actions could have been investigated, and Rovella could have been arrested; however, he was not. Russo was investigated and arrested. (Rovella Dep. at 34-63; Flaherty Dep. at 210-11; Hajdasz Dep. at 160.)

### (h)    Lilley

Seargent Lilley was involved in the decision to place Russo on AWOL status and had contacted Dr. Bucchieri to obtain medical information about Russo.   Plaintiff's 56(c)(2) Statement Section VII.

### (i)    Rudewicz

17

Acting Chief Robert Rudewicz ("Rudewicz") drove his vehicle into the Gold Building in Hartford and was found in possession of cocaine in his vehicle. He was not investigated or arrested. Russo was investigated and arrested. In May, 2003, Rudewicz was found intoxicated in his vehicle in Goodwin Park in Hartford at 2:00 a.m. He was not investigated or arrested. (Russo Dep. at 77-92.)

(j)   **The City**

Miele sexually assaulted a prostitute in New Britain, Connecticut and was not investigated or arrested or disciplined. Russo was investigated and arrested. (Russo Dep. 6/25/03, at 214-221.) Assistant Chief McKoy ("McKoy") was found by New Britain Police soliciting a prostitute. This incident was known by the HPD but was not investigated and Chief McKoy was not arrested. Russo was investigated and arrested. (Russo Dep. 6/25/03, at 77-92.)

Unofficial compensation time is not recognized by the HPD and it is a crime to receive compensation from the City of Hartford through fraudulent means. (Hajdasz Dep. at 156.) . (Flaherty Dep. at 210-11; Hajdasz Dep. at 154). Sergeant James Rovella ("Rovella") falsified and forged time cards in order to steal overtime from the HPD. Even though the HPD does not recognize "unofficial compensation time" Rovella claimed that it was unofficial compensation time. These actions could have been investigated, and Rovella could have been arrested; however, he was not. Russo was investigated and arrested. (Rovella Dep. at 34-63; Flaherty Dep. at 210-11; Hajdasz Dep. at 160.)

Lawlor stalked, followed and threatened Russo. He was not investigated or arrested for this. (Exhibit 32.) Officer Eric Coleman ("Coleman") was found possessing cocaine and tested positive for possessing cocaine. Sergeant Scott Vinci and Sergeant Michael Fallon were accused

18

of stealing overtime and wages and were subsequently promoted to Lieutenant. (Croughwell Dep. at 243-44.) Edelwich and Miele were in possession of drugs and drug paraphernalia, 125 bags of heroin and 25 bags of crack cocaine and were not arrested, an internal affairs investigation was not done, and neither were suspended and neither were forced to take a reasonable suspicion drug test . Russo was investigated and arrested. (Miele Dep. at 78-108; Calderone Dep. at 135-148; Russo Dep. 6/23/03, at 214-221; Kenary Dep. at 153-160; Croughwell Dep. at 229-240; Lawlor Dep. at 56-84; Lyons Dep. at 181-203.). The HPD did not internally investigate Miele, Edelwich or Lawlor for the drug possession. (Miele Dep. at 131; Huertas Dep. at 116.) After the drugs and other contraband were discovered in the Intelligence Unit, no officers assigned to the Intelligence Division were given a drug test, either random or a reasonable suspicion drug test. (Lawlor Dep. at 5.) Eric Coleman was not disciplined or arrested and was allowed to resign. Russo was not allowed to resign, but was investigated and arrested. (Russo Dep. at 77-92.)

### 2.    Neither Croughwell or Roberts are Shielded by Qualified Immunity.[3]

The doctrine of qualified immunity provides that: "government officials performing discretionary function, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Moffit v. Brookfield, 950 F. 2d 880, 885 (2d Cir. 1991),

"The relevant inquiry is whether it would be clear to a reasonable officer that his conduct

---

[3] Plaintiff believes that none of the Police Defendants are protected by the doctrine of qualified immunity. However, as the doctrine of qualified immunity is an affirmative defense, and defendants only maintain in their memorandum that Croughwell and Roberts are shielded by qualified immunity, plaintiff limits his argument to Croughwell and Roberts.

19

was unlawful in the situation he confronted. Thus, as the Supreme Court has pointed out, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." (Emphasis added; internal quotations and citations omitted) Stephenson v. Doe, 332 F.3d 68, 77-78 (2d Cir. 2003).

"A court evaluation a claim of qualified immunity must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation." Wilson v. Layne, 526 U.S. 603, 609 (1999). If the court finds that a clearly established right of the plaintiff has been violated, the court must then determine whether the defendant's actions "could reasonably have been thought consistent with the rights they are alleged to have violated." Anderson v. Creighton, 483 U.S. 635, 638 (1987). The Supreme Court has held that "a claim of immunity is conceptually distinct from the merits of the plaintiff's claim that his rights have been violated." Mitchell v. Forsyth, 472 U.S. 511, 527-28 (1985). Qualified Immunity is an affirmative defense, and as such the burden is on defendant to establish its existence. See In re: State Police, 88 F.3d 111, 123 (2d Cir. 1996).

There is no rational basis for the difference in treatment of Russo and the defendants' conduct was irrational and wholly arbitrary. It was improper for Roberts to deny Russo access to the CAPers office by denying him a key after the locks were changed. (Roberts Dep. at 102.) A supervisor does not have the authority to prevent an officer from earning overtime if the officer has worked the overtime hours. (Roberts Dep. at 79, 80.) Flaherty ordered Huertas not to give Russo any overtime in April, 1997, which is not allowed by the collective bargaining agreement. (Huertas Dep. at 50-51.)

20

### 3. Hostile Work Environment in Violation of Equal Protection.

Plaintiff does not allege any discrimination based on race, sex, or gender, but instead on his first amendment speech. This should not be considered a hostile work environment claim.

## D. POLICE DEFENDANTS HAVE VIOLATED PLAINTIFF'S RIGHT TO SUBSTANTIVE DUE PROCESS. (SECOND COUNT)

### 1. Plaintiff's substantive due process clause claims are not all encompassed by other explicit constitutional amendment.

"'Where a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" Russo v. City of Hartford, 184 F. Supp. 2d 169, 184 (D. Conn. 2002) (finding plaintiff properly alleged substantive due process violation) (quoting Albright v. Oliver, 510 U.S. 266, 273, 127 L. Ed. 2d 114 (1994)).

### 2. Plaintiff Had a Property Interest.

"[T]o establish a violation of either substantive or procedural due process, plaintiff must initially show that [he] was deprived of a property or liberty interest." Gordon v. Nicoletti, 84 F. Supp.2d 304, 309 (D. Conn. 2000).[4] In many circumstances a state employee may have a property interest in continued employment or a promotion. See, e.g., Harhay v. Town of Ellington Bd. of Educ., 323 F.3d 206, 212 (2d Cir. 2003) (finding contractual right to reappointment under a collective bargaining agreement to be an important interest as opposed to a trivial and insubstantial interest, and therefore a property interest); Board of Regents of State

---

[4] Again Plaintiff asks this court to take judicial notice of the fact that the EHHA are state actors acting under color of law as discussed above.

21

Colleges v. Roth, 408 U.S. 564, 576, 33 L. Ed. 2d 548 (1972) (discussing property interests in public employment created by tenure provisions or employment contracts);

### 3.  Defendants' actions shock the conscience.

A claim for a substantive due process violation must "shock the conscience." Rochin v. California, 342 U.S. 165, 172 (1952); see e.g. Russo v. City of Hartford, 184 F. Supp. 2d 169, 196-97 (D. Conn. 2002) (finding allegations that police chief had refused to investigate police officer's allegations of physical threats by supervisors or to take steps to prevent potential harm by fellow police personnel to police officer sufficiently stated a claim for a violation of substantive due process). "[T]he Due Process Clause of the Fourteenth Amendment was intended to prevent government 'from abusing [its] power, or employing it as an instrument of oppression.'" De Shaney v. Winnebago County Dept. of Social Services, 489 U.S.189, 196 (1989) quoting Davidson v. Cannon, 474 U.S. 344, 348 (1986). Actions violate the substantive component of the Due Process Clause only when they "can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." Collins v. Harker Heights, 503 U.S. 115, 128 (1992); see also County of Sacremento v. Lewis, 523 U.S. 833 (1998). Actions intended to injure in some way and unjustifiable by any government interest will most likely be found conscience-shocking. Id. This is a fact-specific inquiry that requires a case by case analysis.

Understanding that actions which would shock the conscience in one set of circumstances could be considered completely rational in another set of circumstances, the Supreme Court has established that the "deliberate indifference" standard will determine if an official's actions "shock the conscience." Sacremento v. Lewis, 523 U.S. at 850-51; see also Betts v. Brady, 316 U.S. 455, 462 (1942). Inherent to the word "deliberate" is the idea that the actor must

22

contemplate her actions within a given time frame; split-second decisions that result in harm are not equal to those actions that are considered and implemented over a longer period of time. Pre-meditated actions are decidedly more egregious and therefore often rise to the level of constitutional violation. Id.

The Supreme Court has held, and the Second Circuit has recognized, the subjective deliberate indifference standard to determine if an official's actions shock the conscience. This standard necessitates that the official actually knew of the substantial risks of his behavior and violated the individual's rights by responding with deliberate indifference. See Farmer v. Brennan, 511 U.S. 825, 837 (1994); Hanrahan v. City of Norwich, 959 F.Supp. 118, 122 (D. Conn. 1997). A government official shocks the conscience and violates one's substantive due process rights when, given the opportunity to deliberate and decide upon a course of action that would intentionally harm an individual, that official carries through with such actions. Daniels v. Williams, 474 U.S. 327, 331, 106 S.Ct. 662 (1986).

Croughwell's actions were arbitrary and conscience shocking. **On October 31, 1997,** Russo was threatened with bodily harm by Croughwell for his involvement with a federal corruption probe of the HPD, specifically, Lyons, Lawlor, Edelwich and Miele. (Plaintiff's 56(a)(2) Statement ¶ 152-55, 172-82; Russo Dep., 6/24/03, at 110, 115, 133; Edelwich Dep. at 90-91; Croughwell Dep. at 133-34, 158, 188; Lawlor Dep. at 117, 119, 133, 139, 155, 159-160; Lyons Dep, at 128-130, 142, 145, 146, 154.) Croughwell, in response to Russo's cooperation with the federal government, and the threat that posed to the police department, then conspired with Flaherty and Kenary, to illegally arrest and detain Detective Russo under the pretext of a required drug evaluation and subsequently arrested him in order to discredit Russo so that any

23

68, 77-78 (2d Cir. 2003). Qualified Immunity is an affirmative defense, and as such the burden is on defendant to establish its existence. See In re: State Police, 88 F.3d 111, 123 (2d Cir. 1996).

### E.  PLAINTIFF STATES A FIRST AMENDMENT RETALIATION CLAIM AGAINST RUDEWICZ. (THIRD COUNT)

To prevail on such a § 1983 claim, the plaintiff must prove, inter alia, that the defendant caused the deprivation of his or her rights. See Monell v. Department of Social Servs., 436 U.S. 658, 692, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978). To prevail on a First Amendment retaliation claim the plaintiff must establish: "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." Garcia v. S.U.N.Y. Health Sciences Center, 280 F.3d 98 (2nd Cir. 2001). Plaintiff has sufficiently alleged retaliation for First Amendment activity.

#### 1.  Russo's speech and conduct is protected.

Russo's filing of the present federal lawsuits is protected speech.

#### 2.  Defendant took adverse action against Plaintiff.

Following the filing of these lawsuits, Rudewicz has suspended him, denied him medical benefits and refused to reinstate him following the dismissal of the criminal charges in September 2000. City never offered to get certification from state troopers rather than in-house in Hartford or from another city for his safety. Rudewicz waited until the training elapsed before reinstating Russo. Past practice was to allow officers to train in other locations than Hartford. Plaintiff's 56(a)(2) Statement ¶ 203.

3.  **There was a causal connection between Plaintiff's protected speech and the adverse action.**

Rudewicz continued the retaliation against Russo in 2000 when he became Acting Chief of the HPD. Russo filed his federal lawsuits in 2000, therefore, there is a causal connection between Russo's protected speech and Rudewicz's action against him.

F.  **RUDEWICZ VIOLATED PLAINTIFF'S FOURTEENTH AMENDMENT RIGHT TO EQUAL PROTECTION. (THIRD COUNT).**

1.  **Plaintiff, as a class of one, has irrationally and arbitrarily, received intentionally disparate treatment from Defendant Police Officers.**

To prevail on a class of one equal-protection claim, plaintiff must show, not only irrational and wholly arbitrary acts, but also intentional disparate treatment." Barstow v. Shea, 196 F. Supp. 2d 141, 148 (D. Conn. 2002) (citing Olech, 528 U.S. at 564); see also Russo v. City of Hartford, Docket No. 3-97-CV-2380 (D. Conn. 2001) (stating, "successful equal protection claims may be brought by a "class of one," where the plaintiff alleges that he has been intentionally treated differently from other similarly situated and that there is no rational basis for the difference in treatment.").

On September 15, 2000, Defendant Rudewicz continued to illegally suspended the Plaintiff without pay by refusing to reinstate him to his position as Detective for the Hartford Police Department, despite the lack of any legal evidence or basis for this suspension. Defendant Rudewicz has refused to proffer any legitimate reason why the Plaintiff was not immediately reinstated when the criminal charges against him were dismissed, nor has he provided any evidence to support the continued suspension of the Plaintiff.

2.  **Rudewicz is not Shielded by Qualified Immunity.**

26

The doctrine of qualified immunity provides that: "government officials performing discretionary function, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Moffit v. Brookfield, 950 F. 2d 880, 885 (2d Cir. 1991),

"The relevant inquiry is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. Thus, as the Supreme Court has pointed out, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." (Emphasis added; internal quotations and citations omitted) Stephenson v. Doe, 332 F.3d 68, 77-78 (2d Cir. 2003).

"A court evaluation a claim of qualified immunity must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation." Wilson v. Layne, 526 U.S. 603, 609 (1999). If the court finds that a clearly established right of the plaintiff has been violated, the court must then determine whether the defendant's actions "could reasonably have been thought consistent with the rights they are alleged to have violated." Anderson v. Creighton, 483 U.S. 635, 638 (1987). The Supreme Court has held that "a claim of immunity is conceptually distinct from the merits of the plaintiff's claim that his rights have been violated." Mitchell v. Forsyth, 472 U.S. 511, 527-28 (1985). Qualified Immunity is an affirmative defense, and as such the burden is on defendant to establish its existence. See In re: State Police, 88 F.3d 111, 123 (2d Cir. 1996).

**D.    CROUGHWELL, LAWLOR AND LYONS INTENTIONALLY INFLICTED EMOTIONAL DISTRESS UPON PLAINTIFF (SIXTH COUNT).**

To prevail on his claim for intentional infliction of emotional distress the plaintiff must prove the following: (1) that defendant intended or should have known that emotional distress was a likely result of their conduct; (2) that the conduct was extreme and outrageous (3) that the conducted caused plaintiff distress (4) and that the plaintiff suffered severe emotional distress. Drew v. K-Mart Corp., 37 Conn App. 239, 251 (1995). To sustain a claim for intentional infliction of emotional distress, the plaintiff must show that the defendants' conduct exceeds "all bounds usually tolerated by decent society." DeLaurentis v. City of New Haven, 220 Conn. 225, 597 A.2d 807, 828 (1991).

**(1)    The Defendant Intended or Should Have Known That Emotional Distress Was a Likely Result of Their Conduct/ The Defendants Conduct Was Extreme and Outrageous.**

**On October 31, 1997,** Russo was threatened with bodily harm by Croughwell, specifically Crooughwell called Russo on the phone and threatened that he had "two guys in his office that wanted to kick his fuckin' ass."    Plaintiff's 56(c)(2) Statement ¶ 169-178. The two guys were Lawlor and Lyons. Also present was Edlewich. When Lawlor and Lyons found out that Russo was providing information to the federal government on corruption in the HPD, Plaintiff's 56(c)(2) Statement ¶ 169, 170, 171, specifically on Lawlor, Lyons and Edelwich, and their "Bosses", they immediately went to Croughwell's office to tell Croughwell about the conversation with Rovella. The meeting between Lawlor, Lyons, Edelwich and Croughwell in Croughwell's office centered around the "alleged set of comments that Nick had made to [Rovella]", specifically that Russo was assisting the Federal Government with a corruption probe of HPD officers. Plaintiff's 56(c)(2) Statement ¶ 169-178.

28

2. **The Conduct Caused Plaintiff Severe Emotional Distress.**

Russo is treated by a psychologist, Dr. Hall and a physciatrist and has been diagnosed with Post Traumatic Stress Disorder, that a result of the abuse he suffered at the hands of the defendants.Defendants ask for summary judgment claiming their conduct was neither extreme nor outrageous; (Def. Mem. S.J. pp. 48-49.); however, defendants actions were in fact extreme and outrageous and therefore Count Six should stand.

### CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment against Counts One, Two and Six of Plaintiff's complaint should not be granted.

THE PLAINTIFF,
NICHOLAS O. RUSSO, JR.

By: [signature]
Erin I. O'Neil
818 Farmington Avenue
West Hartford, CT 06119
(860) 523-4055
Federal Bar # ct 23073

29

## **CERTIFICATION**

This is to certify that the foregoing has been faxed on March 19, 2004, to all counsel and pro se parties of record:

Charles L. Howard, Esq.
Gregg P. Goumas Esq.
Derek Mogck, Esq.
Shipman & Goodwin LLP
One American Row
Hartford, CT 06103-2819

John P. Shea, Jr.
Sabia & Hartley, LLC
190 Trumbull Street
Suite 202
Hartford, CT 06103-2205

Frank Szilagyi, Esq.
Silvester, Daly & Delaney
72 Russ Street
Hartford, CT 06106

Attorney Helen Apostolidis
Office of Corporation Counsel
City of Hartford
550 Main Street
Hartford, CT 06103

_____
Erin I. O'Neil