## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

NICHOLAS O. RUSSO, JR.,                    :         CIVIL ACTION NO.
                                           :         3:00-cv-1794 (JCH)
          PLAINTIFF,                       :
                                           :
vs.                                        :
                                           :
                                           :
CITY OF HARTFORD ET AL.                    :
                                           :
          DEFENDANTS.                      :         APRIL 16, 2004

## POLICE DEFENDANTS' REPLY TO RUSSO'S
## MOTION TO STRIKE DATED MARCH 23, 2004

Defendants Joseph Croughwell, James Flaherty, David Kenary, Daryl Roberts,

Christopher Lyons, Robert Lawlor, James Rovella, Charles Lilley and Robert

Rudweicz (collectively "the Police Defendants") respectfully submit this Reply to

Russo's Motion to Strike dated March 23, 2004.

### I.    INTRODUCTION

The plaintiff, Nicholas Russo ("Russo") has moved to strike the Police

Defendants' references to a memorandum from Sergeant Charles Lilley ("Lilley") to

Lieutenant David Kenary ("Kenary") dated January 8, 1997 and from Sergeant Daryl

Roberts[1] ("Roberts") to Kenary dated January 9, 1997. More specifically, he asks this

Court to strike the references to these memoranda that appear in paragraphs 33, 38, 41-

43, 45 and 56 of the Defendants' Rule 56(a)(1) Statement. According to Russo, the

---

[1]  Daryl Roberts has since been promoted to the rank of lieutenant. For consistency, he is referred to as sergeant in this memorandum, since he was a sergeant in January 1997.

memoranda constitute inadmissible hearsay and do not fall into any hearsay exception. Russo's arguments are wholly without merit.

Roberts' and Lilley's memoranda are not hearsay because they are being offered to show that Police Chief Joseph Croughwell ("Croughwell") had a good faith basis to order Russo to submit to a reasonable cause drug test in January 1997. Since Russo has alleged that Croughwell maliciously imposed that drug test in violation of his civil rights, the reasons why Croughwell ordered that test are very relevant. Even if the memoranda were hearsay, Roberts and Lilley prepared them while acting in the course of their duties as supervisory police officials in the Hartford Police Department's ("HPD"). Therefore, the memoranda are sufficiently reliable to be admitted as business records under Fed. R. Evid. 803(6) and public records under Rule 803(8). The Court should therefore deny Russo's Motion.

## II.    ARGUMENT

### A.    Lilley's and Roberts' Memoranda are not hearsay because they are being offered to show the reasons why Chief Croughwell directed Russo to take a reasonable cause drug test.

Russo's assertion that Lilley's and Roberts' memoranda constitute hearsay is fatally flawed. Hearsay is defined as:

> [A] statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.

See Fed. R. Evid. 801(c).

In employment cases, internal memoranda relied upon by the employer in making employment decisions are not hearsay. Wolf v. Brown, 128 F.3d 682, 685 (8th

Cir. 1997); Moore v. Sears, Roebuck and Company, 683 F.2d 1321, 1324 (11th Cir.

1982); Alvarez v. Norden Systems, Inc., 1989 U.S. Dist. LEXIS 9954, *7-8

(S.D.N.Y. 1989)[2]; Brown v. CNN America, Inc., 1999 U.S. Dist. LEXIS 17699, *9,

n.3 (S.D.N.Y. 1999).   Rather, these documents are relevant and admissible because

they explain the employer's conduct and the reasons why the employer made the

contested decision. Wolf, 128 F. 3d at 685; Brown, supra at *7-8.

For example, in Alvarez v. Norden Systems, supra, the plaintiff alleged he was

terminated because of his national origin.  The employer moved for summary judgment

and asserted the plaintiff was terminated, in part, for kicking in a door and damaging

property. Id. at *4-5.  The employer submitted affidavits from managers that included

statements from individuals who had complained about the plaintiff's behavior and

witnessed him kicking down the door.  Id.  Claiming that the affidavits contained

inadmissible hearsay, the plaintiff unsuccessfully moved to strike them.

In denying the plaintiff's motion, the court held:

> [Plaintiff] ignores or misunderstands the purpose for which the
> statements are offered.  The assertedly inadmissible paragraphs relate
> statements made to the affiants by witnesses to the alleged stall door
> incident.  They are offered to demonstrate what information the affiants
> had available to them when making their decision to terminate [plaintiff]
> and the motivation behind that decision...Accordingly, the motion to
> strike certain portions of defendant's affidavits is denied.

Alvarez, supra at *7.

In Moore v. Sears, Roebuck and Company, supra, the plaintiff sued his former

employer claiming that he was fired because of his age.  At trial, Sears introduced a

series of memoranda prepared by the plaintiff's supervisors that referenced several

---

[2] Copies of unreported decisions are attached hereto as Exhibit "A".

events pertaining to his performance. Id. at 1324. The trial court admitted the

documents and the plaintiff appealed. Id. The Eleventh Circuit Court of Appeals

upheld the lower court's decision, holding:

> We hold that the trial judge properly admitted the evidence in question
> because it did not constitute hearsay; therefore we need not decide
> whether the documents were business records under Fed. R. Evid.
> 803(6). Hearsay is a statement, other than one made by the declarant
> while testify at the trial, offered in evidence to prove the truth of the
> matter asserted." (citations ommitted). The documents here were not
> tendered to prove the particulars of their contents, but to help establish
> that Sears was motivated in good faith to discharge [plaintiff] for reasons
> other than his age.

Several other courts have likewise ruled that documents, statements and other

memoranda relied upon to make an employment decision are not hearsay as defined by

Rule 801(c). See e.g. Wolf v. Brown, 128 F.3d at 687 (Upholding the admission of

seven employee letters that described the plaintiff's misconduct); Browne v. CNN

America Inc., 1999 U.S. Dist. LEXIS 17699 at * 9 (Documents containing critical

statements about the plaintiff's performance such as "he does not respond well under

pressure" and "needs to focus his thinking" were admissible to show the state of mind

of the decision-makers); Jones v. Los Angeles Community College District, 702 F.2d.

203, 205-6 (9th Cir. 1983) (Admission of several notices of unsatisfactory service was

proper to show that employer had a legitimate basis for believing the plaintiff's conduct

warranted termination); Hanley v. Siemens Medical Solutions Health Services Corp.,

2003 U.S. Dist. LEXIS 3506, *4-5 (E.D. Mich; 2003) (Supervisor's testimony about

statements made to him by three of the plaintiff's co-workers was admissible because

they "were offered for their effect on the listener, [the supervisor]; therefore, such statements were not hearsay.").

Russo has placed Croughwell's reasons for subjecting him to a reasonable cause drug test directly at issue, claiming that "[o]n January 9, 1997, Russo was subjected to an *illegal* drug test without reasonable cause or suspicion." (Russo's Memorandum in Opposition to Summary Judgment at 3-4). He claims the drug test was part of a "vindictive criminal investigation" designed to ruin his career. Id. As such, the reasons why Croughwell ordered Russo's drug test are acutely relevant.

Croughwell's Declaration dated December 18, 2003 firmly states that Lilley's and Roberts' memoranda played a key role in his decision. He stated:

5.      Dectective Russo's supervisors expressed serious concerns about his ability to function as a police officer and that they suspected that he might be using drugs. They suggested that there be a reasonable suspicion drug test.

6.      I did not order Detective Russo to undergo a reasonable suspicion drug test at that point but indicated that I needed their reasons in writing before I would make that determination.

7.      On January 9, 1997, I was presented with a memorandum of the same date from Lieutenant Kenary containing memoranda from Sergeants Roberts and Lilley documenting various issues relating to Detective Russo's work performance and their observations of him. Sergeant Roberts' memorandum expressly requested that Detective Russo be given a reasonable suspicion drug test. True and accurate copies of the memoranda I received were marked Russo Deposition Exhibit 30.

8.      In addition to reviewing the memoranda from Lieutenant Kenary and Sergeants Roberts and Lilley, I listened to tape recordings of voice mail messages that Detective Russo had left for Sergeant Roberts.

9.      Although I was not aware of any current drug problem or use by
        Detective
Russo on January 9, 1997, I was aware that he had been arrested for illegally obtaining prescription drugs earlier in his career and that he had received a lengthy suspension from the HPD for that conduct.

10.     Based on the above information, I believe I had more than reasonable suspicion to order Detective Russo to submit to a reasonable suspicion drug test, and on January 9, 1997, I ordered him to undergo a reasonable suspicion drug test pursuant to the HPD Drug Testing Policy.

(Declaration of Joseph Croughwell ("Croughwell Dec.") ¶¶ 5-10, App. D, Tab 3).

Lilley's and Roberts' memoranda set forth in vivid detail the information that Croughwell had before him when he ordered Russo to undergo a reasonable suspicion drug test. Whether he, in fact, was abusing prescription drugs at this point is not the issue. The issue is whether Croughwell had a reasonable suspicion that Russo should submit to a drug test. Since the memoranda are being offered to show the reasons underlying the decision-maker's actions and his state of mind, they are not hearsay and Russo's Motion to Strike them on this ground should be denied.

In addition, Croughwell has raised the affirmative defense of qualified immunity in connection with the claims that Russo has asserted against him under 42 U.S.C. § 1983. Accordingly, Croughwell's motives for submitting Russo to a drug test have further independent significance. See Lennon v. Chief Miller of Troy, 66 F.3d 416 (2d Cir. 1995). Since Russo claims that Croughwell's decision to make him undergo a drug test was driven by improper motive, Lilley's and Roberts' memoranda explain Croughwell's motives and actions. They are thus directly relevant to his qualified immunity defense and should not be excluded on hearsay grounds.

### B.     EVEN IF THE MEMORANDA ARE HEARSAY, THEY ARE ADMISSIBLE AS BUSINESS RECORDS UNDER RULE 803(6).

The business records exception to the hearsay rule is grounded in Rule 803(6), which states:

> A memoranda, report, record, or data compilation, in any form, of acts or events,…made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of the information or the method or circumstances of preparation indicate a lack of trustworthiness.

Rule 803(6) "favors the admission of evidence rather than its exclusion if it has any probative value at all." Phoenix Associates v. Stone, 60 F.3d 95, 101 (2d. Cir. 1995). The "principal" precondition to admissibility "is that the record has sufficient indicia of trustworthiness." Saks Int'l v. M/V Export Champion, 817 F.2d 1011, 1013 (2d Cir. 1987). The proffered evidence should be admitted if supported by a proper foundation that shows the document was "kept in the course of a regularly conducted business activity" and also that it was the regular practice of the business to make that record." Phoenix Associates v. Stone, supra at 101.

Roberts' and Lilley's memoranda constitute business records. First, Roberts and Lilly had a business duty to prepare the records under the HPD's Drug Testing Policy. They were further directed to do so by their superiors. This duty to prepare those records gives them adequate reliability to satisfy Rule 803(6). Second, the records are further reliable because they were based on Roberts' and Lilley's personal observations of Russo's conduct. Third, the records were prepared in the ordinary course of Roberts' and Lilley's duties as Supervisors in the HPD. Finally, Russo has failed to provide any evidence that demonstrates the memoranda lack the requisite degree of reliability required by Rule 803(6).

1.    Roberts and Lilley had a duty to prepare the memoranda under the
      HPD's Drug Policy and pursuant to the directive of Deputy Chief Casati.
      <u>Therefore, they are sufficiently reliable to satisfy Rule 803(6).</u>

The requirement of a business duty is "not in the language of Rule 803(6), but it
has long been recognized as a means of establishing the reliability of a hearsay
statement offered under this rule." <u>U.S. v. Reyes</u>, 157 F.3d 949, 952 (2d Cir.
1998)(prison logs that identified those who visited an inmate were business records
under Rule 803(6)).  In the employment context, employers may often have a policy
that requires the production of an investigation report after a specific event.  Policies
that impose such a duty cause the report to be sufficiently reliable and therefore
admissible under Rule 803(6).  <u>See</u> <u>Crimm v. Missouri Pacific Railroad Company</u>, 750
F.2d 703, 709 (8th Cir. 1984).

In <u>Crimm</u>, <u>supra</u>, the plaintiff sued his former employer, claiming that he was
discharged because of his age.  The employer countered that the plaintiff was
terminated because he had sexually harassed a subordinate.  <u>Id</u>. at 705.  Over the
plaintiff's objection at trial, the employer introduced the personnel manager's report of
his investigation of the subordinate's sexual harassment complaint.  <u>Id</u>. at 708-9. After
the jury rendered a defendant's verdict, the plaintiff appealed and asserted that the
manager's report contained inadmissible hearsay statements of the witnesses to the
purported harassment.  <u>Id</u>.  The Court of Appeals rejected that argument, holding:

> Even if we accept appellant's argument that the records are hearsay,
> they are admissible under the business records exception.  [Defendant]
> had a written policy requiring that in an investigation of sexual
> harassment, the conversations of those interviewed should be
> documented through written memoranda.  [The Manager] was directed to
> conduct an investigation and to prepare such memoranda.  [He] took

8

handwritten notes during the interviews and added to them shortly after the interviews. The typewritten report was prepared from the notes. Only six or seven days elapsed from the beginning of the investigation to the completion of the report.

Crimm, supra at 709.

Sergeant Roberts and Lilley had a clear and continuing duty to prepare the memoranda at issue in this case. The HPD's Drug Testing Policy requires supervors such as Roberts and Lilly to document behavior that gives them reasonable cause to believe an officer is using drugs. (App. C Tab 4; Russo Dep. Exh. 7).[3] The policy states, in relevant part:

C.    METHOD OF REASONABLE CAUSE SELECTION

1.    Supervisory personnel may request that an employee submit to a drug test when a supervisor has a reasonable suspicion that an employee is under the influence of drugs. "Reasonable suspicion" is a belief based on objective and articulable facts sufficient to lead a reasonably prudent supervisor to suspect that an employee is under the influence of drugs so that the employee's ability to perform the function of the job is impaired or so that the employee's ability to perform his/her job safely is reduced.

2.    *Supervisory personnel who have received the mandated training for reasonable suspicion testing in relation to this policy and having a reasonable suspicion that an employee is under the influence of drugs and should be required to submit to a urinalysis drug test, shall immediately notify through the chain of command the Chief of Police or his/her designee...*Should the Chief or his/her designee concur with this determination the following procedures shall be followed.

a.    *Supervisory personnel who have received the mandated training for reasonable suspicion testing in relation to this policy shall document, in writing, the facts outlining their reasonable suspicion that the employee in question is under the influence of drugs...*

(Russo Dep. Exh. 7).

---

[3] Deposition and deposition exhibits references use the same abbreviations as those used in Defendants' Motion for Summary Judgment and Rule 56(a)(1) Statement.

9

Thus, both Roberts and Lilley had a business duty to reduce their concerns about Russo's possible drug use to writing. Moreover, Lilly testified that he was directed to do so by superior officers in the chain of command. (Lilley Dep. at 213). [4] Therefore, their memoranda are sufficiently reliable to satisfy the liberal admissibility requirements of Rule 803(6).

2.    Roberts' and Lilley's memoranda were based on their first-hand observations of Russo's behavior and prepared reasonably close to the events causing them to believe Russo might be using drugs.

Roberts recommended Russo for a reasonable suspicion drug test because he personally observed Russo's suspicious behavior. Lilly also prepared his memorandum based on events that he personally witnessed. Both officers were questioned about this issue at length during their depositions. Sergeant Roberts testified as follows:

Q:    The just cause memo, were you saying there was just cause to drug test Detective Russo?
A:    Yes.
Q:    What was the basis?
A:    His physical appearance, his actions?

(Roberts' Dep. at 65)

Q:    ...Suffice it to say, the just cause testing was initiated by your observations?
A:    Yes.
Q:    Was there anything else?
A:    A phone conversation...I called him in for overtime. We had a homicide that morning.
       ..............................
Q:    You said he said he would be in?
A:    Yes.
Q:    Then what happened?

---

[4] To the same extent, Croughwell also indicated that he met with Russo's supervisors prior to January 9, 1997, in which he learned of their concerns about Russo's suspected drug use. Croughwell then told the supervisors that he needed the reasons for their concerns in writing. (Croughwell Dec. ¶¶ 4-6).

A:   He never showed up.

Q:   How did you document that?

A:   I called him up. I think he called me back and said he was coming in, but he never showed up.

Q:   This is the second call?

A:   The same day, yes.

Q:   Did he sound different on the phone?

A:   Yes. He did sound different.

Q:   In what way?

A:   His speech was slurred; he had loss of memory.

(Roberts' Dep. at 116 – 121).

Q:   Is there anything else that you would describe about these personal phone calls you had with Detective Russo and the two or three messages that was unusual?

A:   It was a professional call. He was impaired from what I heard over the telephone.

Q:   Did he say something inappropriate? When you say impaired, what do you mean?

A:   Slurred speech; incoherent; not clear.

(Id. at 122-123, attached as Exh. B).

These events occurred on January 7, 1997, which is only two days before he wrote the memorandum to Lieutenant Kenary. Even a cursory review of the remaining parts of Roberts' memorandum shows the he personally observed such things as Russo's watery/glassy eyes and his agitated or jittery behavior. Other entries memorialize personal conversations that Roberts had with Russo. All of the events occurred within 3-4 months of the date that Roberts prepared the memorandum. Thus, Roberts' memorandum was sufficient reliability to pass scrutiny under Rule 803(6).

Lilley's deposition testimony also shows that he prepared his memorandum after personally observing Russo's behavior. Lilley stated the following:

Q:   Where did you get all these dates from and entries?

A:   Just jotted it down and kept track of it.

......................

Q:    Let me rephrase it.  You compiled written sheets of paper about Russo with all these different dates on them so that you could write this memo; right?

A:    Yes.

Q:    You didn't certainly go by your memory when your wrote this memo, did you.

A:    No.

(Lilley Dep. at 217, attached as Exh. C)).

The entries in Lilley's memorandum cover the period of time from December 1, 1996 until January 7, 1997.  During that time, Lilley kept notes of Russo's activities and memorialized those notes into his memorandum dated January 8, 1997.  He did so at the direction of Lietuenant Kenary, who was also concerned about Russo's pattern of being late and failing to report to work.  (Id. at 219).  Because of his attention to detail during this time, Lilley's memorandum is sufficiently reliable under Rule 803(6).

3.    The record in this case conclusively demonstrates that the memoranda were prepared in the ordinary course of Roberts' and Lilley's duties.

The Court should find an adequate foundation exists to accept business records when a "qualified witness" establishes an adequate foundation to conclude that the documents were kept in the ordinary course of a regularly conducted business activity. Phoenix Associates v. Stone, supra at 101. The Second Circuit has recognized that a witness who testifies as to the authenticity of a record need not have firsthand knowledge of the creation of the record. U.S. v. Reyes, supra at 952. Rather, it is sufficient that the witness is familiar with the entity's practice to obtain that information. Id. The record in this case adequately satisfies this standard.

First, the HPD's Drug Policy forbids police officers from using drugs and places an affirmative duty on supervisors like Roberts and Lilley to "document, in writing, the facts outlining their reasonable suspicion" that an officer might be using drugs. Thus, there is no doubt that identifying potential drug users and documenting their actions is a business activity of the HPD. Roberts and Lilley prepared the memoranda, in accordance with the policy, while acting in their capacities as Russo's supervisors in the HPD.

Second, Chief Croughwell's declaration clearly identified Roberts' and Lilley's memoranda and states that they were prepared at his direction and in accordance with the Drug Testing Policy. (Croughwell Dec. ¶ 7). Thus, Chief Croughwell has adequately authenticated Roberts' and Lilley's memoranda.

Third, Roberts' and Lilley's deposition testimony conclusively authenticates the memoranda as business records. Lilley testified that he prepared the memorandum at

the direction of his superior and based upon his observations of Russo. (Lilley Dep. at 216-220). In fact, he was specifically asked about the memoranda at his deposition and authenticated it as an official document of the HPD. Id. at 212-13. Lilley stated:

> Q:    Do you recall drafting that memo?
> A:    Yes.
> Q:    Is there anything that is inaccurate in the memo?
> A:    I don't believe so.
> Q:    It's an official document of the Hartford Police Department; right?
> A:    Yes.

(Lilley Dep. at 212-213).

Roberts testified that he prepared the memorandum because he had reason to believe Russo was using drugs. (Roberts' Dep. at 65). He gave that memorandum to Lietenant Kenary, who then followed the HPD policy and sent the memorandum "up the chain" of command. Id. at 116. Thus, there is no question that both Sergeants prepared the memoranda pursuant to their duties as Russo's supervisors in the HPD and in accordance with the Drug Testing Policy.

Fourth, the defendants maintain that Roberts' and Lilley's memoranda have been properly authenticated in the record. However, to the extent that the Court requires further authentication, the defendants have attached declarations from sergeants Roberts (Exh. D) and Lilley (Exh. E). The declarations clearly indicate that they prepared the memoranda in the ordinary course of their duties, at the direction of their superiors and in accordance with the HPD's Drug Testing Policy. Under these circumstances, the defendants have properly authenticated the memoranda has business records.

14

4.    Russo has failed to produce any evidence that the memoranda lack the
requisite degree of reliability required by Fed. R. Evid. 803(6).

Russo implies that the memoranda lack reliability. However, Roberts and Lilley prepared the memoranda long before Russo commenced any civil action. Russo has produced no evidence that Roberts or Lilley had reason to fabricate any statements about him in January 1997. In fact, Russo's own testimony fails to undermine the reliability of these memoranda. (Russo Vol. III at 5-10). Of the seven pages of incidents contained in the memoranda, Russo identified only three references that he claimed were incorrect. Id. Russo can not seriously contend that the memoranda are unreliable when cannot rebut the statements contained therein.

Russo's reliance on Lewis v. Velez, 149 F.R.D. 474 (S.D.N.Y. 1993) is misplaced. In Lewis, supra, the Court declined to admit reports of corrections officers who had allegedly attacked and maliciously beaten an inmate. The court reasoned that the reports might not be reliable because the officers, fearing discipline, dismissal and criminal or physical charges, had motive to lie. Id. at 486. Those facts do not exist here. Neither Roberts nor Lilley were involved in any altercation or dispute with Russo at or before the time the memoranda were prepared. No evidence exists that Roberts or Lilley suspected that Russo intended to sue them for reporting his suspicious behavior. Instead, the evidence shows that Roberts and Lilley followed their supervisors' directives and the HPD Drug Testing Policy by documenting Russo's actions. Unlike the officers in Lewis, supra, Lilley and Roberts were not motivated to fabricate anything about Russo's behavior.

Because of the inherent reliability of Roberts' and Lilley's memoranda, the Court should admit them as business records under Rule 803(6).

## C.    ROBERTS' AND LILLEY'S MEMORANDA CONSTITUTE PUBLIC RECORDS UNDER FED. R. EVID. 803(8)

Rule 803(8) is "based upon the assumption that public officers will perform their duties, that they lack motive to falsify and that public inspection will disclose inaccuracies." Bridgeway Corp. v. Citibank, 201 F. 3d 134, 143 (2d. Cir. 2000). Rule 803(8) recognizes three categories of public records that satisfy the hearsay exception: records of the office's or agency's own activities; records of matters observed pursuant to a duty imposed by law; and reports setting forth factual findings. Id.

Roberts' and Lilley's memorandum satisfy the criteria for admission under each of the categories of Rule 803(8). Their memoranda set forth the regular activities of HPD supervisors who followed its Drug Testing Policy. The memoranda document their personal observations of Russo's behavior and were prepared close in time to the events they witnessed. And finally, these documents are inherently reliable, and Russo has failed to produce any evidence that would justify their exclusion.

### 1.    Roberts' and Lilley's memoranda are records, reports and statements that set forth the activities of the HPD.

Rule 803(8)(A) allows for the admission of a record, report or statements *in any form*, setting forth the activities of a public office or agency. United States v. Stone, 604 F.2d 922, 925-6 (2d. Cir. 1979). This hearsay exception is designed to allow admission of official records and reports prepared by an agency or government office

for purposes independent of specific litigation. <u>United States v. Stone</u>, <u>supra</u> at 925-926. <u>See</u> <u>also</u> <u>Felton v. New York Post</u>, 1990 U.S. Dist. LEXIS 10013, *4 (S.D.N.Y. 1990)(Statements by EEOC investigators that a right-to-sue letter was mailed to the plaintiff set forth the activities of the EEOC and therefore was admissible under Rule 803(8) to show that the plaintiff received a right-to-sue letter).

Roberts' and Lilley's memoranda satisfy Rule 803(8)(A). Both officers detailed Russo's activities as Russo's supervisors. Their memoranda tracked their activities as supervisors in the HPD, who acted in accordance with its Drug Testing Policy. Their attempts to root out potential drug abusers in the HPD constitute activities of a public agency and their corresponding memoranda are therefore admissible under Rule 803(8)(A).

2.    <u>Roberts' and Lilley's memoranda set forth matters that they observed pursuant to a duty imposed by law and therefore satisfy Rule 803(8)(B).</u>

Rule 803(8)(B) allows the Court to admit public records "setting forth...matters observed pursuant to a duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel..." <u>United States v. Orozco</u>, 590 F.2d 789, 792-3 (9th Cir. 1979)(Data Cards from the Treasury Enforcement Communications System that record the identity of vehicles crossing the Mexican border were public records. They were therefore admissible to show that the defendant had crossed the border on the night the police found him possessing drugs and not to go on a date as claimed.)

This exception applies if (1) the person making the record observed the matters

contained in the record firsthand pursuant to a duty imposed by law; (2) the record is prepared pursuant to a duty imposed by law; and (3) the documents and surrounding circumstances indicated trustworthiness. <u>Weston v. Haliburton NUS Environmental Corporation</u>, 1993 U.S.Dist. LEXIS 13567, *3-4 (E.D. PA. 1993).

As noted above, Roberts' and Lilley's memoranda were based on their personal knowledge and prepared contemporaneously with the events they witnessed. The HPD Drug Testing Policy, as well as a directive from Roberts' and Lilley's superiors, imposed a duty upon them to prepare the memoranda. Finally, as set forth above, Russo has produced no evidence that the reports are untrustworthy or that Roberts and Lilly wrote the memorandum with ill-will towards him. The fact that the records contain information that is prejudicial to Russo's case does not make them unreliable. The Court should therefore admit the memoranda pursuant to Rule 803(8)B.

> 3.     Roberts' and Lilley's memoranda are admissible under Rule 803(8)C because they constitute reports setting forth factual findings of HPD Supervisors.

Rule 803(8)(C) permits the court to admit "factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of the information or other circumstances indicate lack of trustworthiness." <u>Bridgeway Corp. v. CitiBank</u>, <u>supra</u> at 143. To fit within the purview of Rule 803(8)(C), the evidence must (1) contain factual findings, and (2) be based upon an investigation made pursuant to legal authority. <u>Id</u>. Courts have construed the term "factual findings broadly and regularly have admitted conclusions and opinions found in evaluative reports of public agencies. <u>Perrin v. Anderson</u>, 784 F.2d 1040, 1046-47 (10th Cir. 1986). Once a party

has shown that a set of factual findings satisfies the minimum requirements of the Rule, the admissibility of such factual finds is presumed. Id. The burden then shifts to the party opposing admission to show a "lack of trustworthiness." Id., citing Ariza v. City of New York, 139 F.3d 132, 134 (2d. Cir. 1998).

When evaluating the trustworthiness of a factual report, courts look to (1) the timeliness of the investigation, (2) the special skills or experience of the official, (3) whether a hearings was held and (4) possible motivation problems. Bridgeway Corp., Id. at 143. See also Perrin, supra at 1047 (Finding admissible an internal investigation report of Police Review Board that concluded police officer acted within the parameters of the police department's policies). Again, Roberts' and Lilley's memoranda satisfy this hearsay exception.

Roberts' and Lilley observed and memorialized Russo's erratic behavior over a period of time. Their memoranda are certainly reports that set forth their observations and therefore constitute factual findings. Again, however, Russo has failed to provide any specific facts that would require the Court to find their reports are unreliable. Moreover, three of the four factors that courts have used to evaluate a reports "trustworthiness" under Rule 803(8)(C) clearly favor admission. The reports were prepared close in time to the events that Roberts and Lilley observed. Both Sergeants had training from the HPD concerning how to recognize the behavior of others who might be using drugs.[5] Although it is true that no hearing was held, it is also true that

---

[5] Russo contends in his Motion to Strike that Officer Lilly has no "special skill or experience in diagnosing psychological disorders, drug dependencies, or any medical conditions." (Russo Memorandum at 10). This assertion misses the point. Lilley was observing Russo to determine whether his behavior could lead someone to conclude that he was using drugs, not to determine whether Russo had a psychological disorder or medical condition. Moreover, Lilley was asked at his deposition whether he had "ever been trained in

Russo has presented no facts that demonstrate the reports lack the requisite degree of trustworthiness. Accordingly, the reports are admissible under Rule 803(8)C.

## III.  CONCLUSION

The reports prepared by Sergeants Roberts and Lilley are not hearsay, because they are being offered to show that Chief Croughwell acted reasonably when he directed Russo to submit to a reasonable suspicion drug test in January 1997. Even if they were hearsay, they are sufficiently reliable to satisfy the hearsay exceptions of Rules 803(6) and 803(8). Therefore, the Court should deny Russo's Motion to Strike the memoranda from the record.

DEFENDANTS,
JOSEPH CROUGHWELL, JAMES
FLAHERTY, DAVID KENARY, DARYL
ROBERTS, CHRISTOPHER LYONS,
ROBERT LAWLOR, JAMES ROVELLA,
CHARLES LILLEY AND ROBERT
RUDWEICZ


By: _____
Charles L. Howard (ct 05366)
Gregg P. Goumas (ct 19095)
Derek L. Mogck (ct 23688)
Shipman & Goodwin LLP
One American Row
Hartford, CT 06103-2819
Tel: (860) 251-5000
Fax: (860) 251-5599

---

the method of reasonable cause selection for drug testing", to which he responded "I believe so." (Lilley Dep. at 58). Officer Roberts testified that *all* supervisors received training to recognize an employee who might have a drug or alcohol problem. (Roberts' Dep. at 123, Exh. B).

## CERTIFICATION OF SERVICE

I hereby certify that a copy of the foregoing Memorandum in Opposition to Russo's Motion to Strike was sent via first class mail, postage prepaid, on this 16th day of April, 2004, to:

James S. Brewer, Esq.
Law Office of James S. Brewer
818 Farmington Avenue
West Hartford, CT 06119

John T. Forrest, Esq.
142 Jefferson Street
Hartford, CT 06106

Attorney Helen Apostolidis
Office of Corporation Counsel
City of Hartford
550 Main Street
Hartford, CT 06103

John P. Shea, Jr.
Sabia & Hartley, LLC
190 Trumbull St., Suite 202
Hartford, CT 06103

Frank J. Szilagyi, Esq.
Silvester & Daly
72 Russ Street
Hartford, CT 06106

With Chambers Copy to:

The Honorable Janet C. Hall
Chambers
United States District Court
915 Lafayette Blvd.
Bridgeport, CT 06604

Gregg P. Goumas

**369185 v.01**