## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| NICHOLAS RUSSO | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:00-CV-1794 (JCH) |
| v. | : | |
| | : | |
| | : | |
| JOSEPH CROUGHWELL, et al. | : | |
| Defendants. | : | February 3, 2005 |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
## THEIR MOTION FOR JUDGMENT ON THE PLEADINGS

Defendants, Joseph Croughwell, Jeffrey Flaherty, David Kenary, Daryl Roberts,

Christopher Lyons, Robert Lawlor (collectively "the Police Defendants") and the City of

Hartford[1], submit this memorandum in support of their Motion for Judgment on the

Pleadings.  Pursuant to Fed. R. Civ. P. 12(c) (hereinafter "Rule 12(c)"), the Defendants

move for judgment on the First Count of Plaintiff's Sixth Amended Complaint (hereinafter

---

[1] The City of Hartford joins the Police Defendants' Motion for Judgment on the grounds that any finding by this Court that Plaintiff cannot, as a matter of law, establish that certain actions of the Police Defendants deprived him of his First Amendment rights mandates the entry of judgment for the City on such claims as well.  It is well established that a municipality's Section 1983 liability is dependent upon a prior finding that an individual municipal employee has deprived the plaintiff of a constitutional right. See, e.g., Dodd v. City of Norwich, 827 F.2d 1, 8 (2d Cir. 1987).  See also Estate of Smith v. Town of West Hartford, 186 F. Supp.2d 146, 151 n.5 (D. Conn. 2002) (noting that constitutional violation by individual defendants required in order to sustain claim against municipality).

the "<u>Russo II</u> Complaint") insofar as Plaintiff's First Amendment claim is premised upon their alleged participation in Plaintiff's arrest and prosecution for illegally obtaining prescription drugs.

## I. INTRODUCTION

On September 30, 2004, this Court ruled on numerous motions for summary judgment (hereinafter "Ruling") pertaining to three matters which had been consolidated for purposes of discovery, including <u>Russo v. City of Hartford, et al.</u>, Civil No. 3:97-cv-2380(JCH) (hereinafter "<u>Russo I</u>"); <u>Russo v. Bailey, et al</u>, Civil No. 3:00-cv-1794(JCH) (hereinafter "<u>Russo II</u>"), and <u>Russo v. Marquis</u>, Civil No. 3:00-cv-2382(JCH). Two claims remain in this case after the Ruling, including a portion of the First Count (First Amendment retaliation) directed to the Police Defendants and the Seventh Count directed to the City of Hartford. Earlier in the litigation, on June 10, 2002, the Court granted a Motion to Dismiss ("Ruling on Motion to Dismiss") by state defendants John Bailey, James Thomas, Herbert Carlson, Joan Alexander, Joseph Hammick, Lawrence Skinner, and Stephen Kumnick dismissing them from <u>Russo II</u>.

## II. RELEVANT ALLEGATIONS

For purposes of this Motion only, the Court can accept the following factual allegations from the <u>Russo II</u> Complaint as true. Plaintiff, Nicholas Russo ("Russo"), was

2

hired as a police officer by the City of Hartford Police Department ("HPD") in 1981, and served as a Detective with the Crimes Against Persons ("CAPERS") Division for over six years. Complaint ("Compl."), Count One ¶ 11. In January 1997, Russo was contacted by United States Attorney James Glasser regarding a federal investigation into corruption in the Hartford Police Department. Id. ¶ 12. Russo voluntarily gave the federal officials information regarding corruption in the HPD. Id. ¶ 13. Subsequently, the Defendants were made aware that Russo was providing information to federal officials regarding corruption within the HPD. Id. ¶ 17. On June 15, 1997, a homicide took place in the City of Hartford at Pope Park. Id. ¶ 25. Russo, who was detached to the Federal Gang Task Force at the time, was at the forefront of the criminal investigation, and, with the assistance of the federal government, caused the arrest of a suspect two days after the murder. Id. ¶ 26.

Russo claims that his quick arrest of the suspect and his affiliation with the federal authorities created unrest within the HPD and CAPERS. Id. ¶ 27. Russo also alleges that as a result of his role with federal law enforcement officials, his participation in a corruption probe of the HPD, and his filing of Russo I, the various Police Defendants retaliated against him by locking him out of his CAPERS office (id. ¶ 28), investigating his prescription drug use (id. ¶¶ 30, 39), and threatening him (id. ¶ 35). Further, he alleges that "on December 16, 1997, based upon [his] pharmaceutical records, false statements by Dr. Buccheri and

3

misleading and false information in the arrest warrant, [former state defendants] Bailey, Thomas, Carlson, and Alexander along with the Police members of the [Joint Investigative Team] arrested Plaintiff," and that "as part of the search and arrest of plaintiff the defendants maliciously and willfully violated plaintiff's First Amendment Rights." Id. ¶¶ 45, 46. Thereafter, Russo was immediately suspended from the HPD pending the outcome of his felony charges. Id. ¶ 54.

In its Ruling on Defendants' Motions for Summary Judgment, the Court determined that Russo has created a triable issue of fact as to whether the following actions constitute adverse employment actions: (1) the denial of Plaintiff's access to his work space by Kenary and Roberts in the Spring of 1997 (Russo II Compl. ¶ 22; Ruling at 3, 46); (2) the investigation into Plaintiff's prescription drug use by Croughwell, Flaherty and Kenary commencing in September of 1997 (Russo II Compl. ¶¶ 37-47; Ruling at 3-5, 44-45); (3) his December 16, 1997 arrest (Russo II Compl. ¶¶ 45-46; Ruling at 45); (4) Plaintiff's suspension without pay following his arrest (Russo II Compl. ¶¶ 37-47; Ruling at 3-5, 44, 45); and (5) the telephone reprimand/threat conveyed to Plaintiff by Croughwell, Lyons and Lawlor on October 30, 1997 (Russo II Compl. ¶ 35; Ruling at 4, 43-45). In its Ruling, the Court also noted that on November 3, 2003, Russo was convicted on six felony counts. Ruling at 10.

4

### III. ARGUMENT AND AUTHORITIES

**A.    The Movant's And Non-Movant's Respective Burdens On Rule 12(c) Motions For Judgment On The Pleadings.**

The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim. Irish Lesbian & Gay Org. v. Giuliani, 143 F.3d 638, 644 (2d Cir. 1998); Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994). In both postures, the district court must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor. Irish Lesbian & Gay Org., 143 F.3d at 644. The court will not dismiss the case unless it is satisfied that the complaint cannot state any set of facts that would entitle him to relief. Sheppard, 18 F.3d at 150. Pursuant to Rule 12(c), a party may move for judgment on the pleadings after the pleadings are closed but within such time as not to delay the trial. Fed. R. Civ. P. 12(c)). While the Court recently moved the trial date up three weeks (from March 21, 2005 to March 2, 2005), it remains possible for this motion to be heard without delaying the trial. Indeed, this motion relates to undisputed facts and, if the Court were to grant Defendants' motion, it would considerably shorten the trial and conserve judicial time and resources. The Defendants maintain that it is appropriate for the Court to entertain this Motion despite the tight pre-trial deadlines.

5

Courts deciding a motion can consider documents referenced in the complaint and documents that are in the plaintiffs' possession or that the plaintiffs knew of and relied on in bringing suit. See Brass v. American Film Technologies, Inc., 987 F.2d 142, 150 (2d Cir.1993); Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47-48 (2d Cir.1991); Meyer Pincus & Assoc., P.C. v. Oppenheimer & Co., Inc., 936 F.2d 759, 762 (2d Cir.1991); Skeete v. IVF America, Inc., 972 F.Supp. 206, 208 (S.D.N.Y.1997). The Court can also consider "matters of which judicial notice may be taken." See Leonard F. v. Israel Discount Bank of New York, 199 F.3d 99, 107 (2d Cir.1999) (quotation omitted); see also Fed. R. Evid. 201; Kramer v. Time Warner Inc., 937 F.2d 767, 773 (2d Cir.1991).

**B.  Defendants Are Entitled To Judgment On The Pleadings For Plaintiff's First Amendment Retaliation Claim In Count One Insofar As Such Claim Is Premised Upon Their Alleged Role In Plaintiff's Arrest And Prosecution Because Plaintiff Fails To State A Claim Upon Which Relief Can Be Granted.**

To survive a motion to dismiss his First Amendment retaliation claim, Plaintiff must allege that "(i) he has an interest protected by the First Amendment, (ii) the defendant['s] actions were motivated by or substantially caused by the plaintiff's exercise of that right and (iii) the defendant['s] actions chilled the exercise of those rights." Kerman v. City of New York, 261 F.3d 229, 241-42 (2d Cir. 2001). However, as this Court recognized in its June 10, 2002 Ruling on the State Defendants' Motion to Dismiss (attached at Tab A), "if [a defendant] either had probable cause or was qualified immune from subsequent suit (due to

6

an objectively reasonable belief that he had probable cause), then [courts] will not examine

the officer's underlying motive in arresting and charging the plaintiff." Ruling on State

Defendants' Motion to Dismiss at 5-6 ((citing Singer v. Fulton County Sheriff, 63 F.3d 110,

120 (2nd Cir. 1995) (citing in turn Mozzochi v. Borden, 959 F.2d 1174, 1179-80 (2d Cir.

1992); Magnotti v. Kuntz, 918 F.2d 364, 368 (2d Cir. 1990)).

 Further, in light of Singer, it is appropriate for this Court to consider whether the

Police Defendants had probable cause for their actions. "Where allegations of a

constitutional injury would imply that a conviction or sentence were invalid, however, a

plaintiff 'must prove that the conviction or sentence has been reverse on direct appeal,

expunged by executive order, declared invalid by a state tribunal authorized to make sure a

determination, or called into question by a federal court's issuance of a writ of habeas

corpus." Ruling on State Defendants' Motion to Dismiss at 6 (citing Heck v. Humphrey, 512

U.S. 477, 486-87 (1994)). The Court must dismiss any claims in this regard, "unless the

plaintiff can demonstrate that the conviction or sentence has already been invalidated." Id.

 On November 3, 2003, Russo was convicted on six felony counts relating to his

illegally obtaining prescription drugs, thereby establishing, as a matter of law, that the

Defendants had probable cause for their actions. "Because plaintiff's retaliation claim would

depend upon his demonstrating an absence of probable cause supporting the charges against

7

him, that claim would necessarily call into question the validity of his conviction. The rule in

Heck is designed to avoid just such 'parallel litigation over the issues of probable cause and

guilt....'" Duamutef v. Morris, 956 F. Supp. 1112, 1116 (S.D.N.Y. 1997) (citing Heck, 512

U.S. at 484). Furthermore, Russo can present no evidence that his conviction has been

reversed or otherwise invalidated. Accordingly, to the extent that the Plaintiff's claim for

First Amendment retaliation in Count One is premised upon Defendants' alleged role in his

arrest and prosecution it must be dismissed.

**C.    In The Alternative, Even If Plaintiff Could Establish A Claim For First Amendment Retaliation Without Demonstrating That His Criminal Conviction Or Sentence Has Been Invalidated, The Defendants Are Entitled To Qualified Immunity For Their Actions Based On The Existence Of Probable Cause.**

Even if Plaintiff could state a claim for First Amendment retaliation despite the

holding in Heck, the Police Defendants are entitled to qualified immunity for their role in

Plaintiff's arrest and prosecution because they had probable cause for their actions. Qualified

immunity shields government officials from liability for civil damages when they are sued in

8

their personal capacity as a result of their performance of discretionary functions, and serves

to protect government officials from the burdens of costly, insubstantial lawsuits. Lennon v.

Chief William P. Miller of Troy, 66 F.3d 416, 420 (2d Cir. 1995) (citing Harlow v.

Fitzgerald, 457 U.S. 800, 818, 73 L.Ed. 396, 102 S. Ct. 2727 (1982)). Government

officials performing discretionary functions are "shielded from liability for civil damages

insofar as their conduct does not violate clearly established statutory or constitutional rights

of which a reasonable person would have known." Harlow, 457 U.S. at 818. Even where

the plaintiff's federal rights and the scope of the official's permissible conduct are clearly

established, the qualified immunity defense protects a government actor if it was "objectively

reasonable" for him to believe that his actions were lawful at the time of the challenged act.

Anderson v. Creighton, 483 U.S. 635, 641, 107 S. Ct. 3034 (1987). In other words, a

"police officer's actions are objectively unreasonable, and therefore are not entitled to

immunity, when 'no officer of reasonable competence could have made the same choice in

similar circumstances.'" Anthony v. City of New York, 339 F.3d 129, 138 (2d Cir. 2003)

(quoting Lennon, 66 F.3d at 420-21)).

In Mozzochi v. Borden, 959 F.2d 1174, 1179-80 (2d Cir. 1992), the Second Circuit

determined that it is inappropriate to examine a defendant's motives in initiating a criminal

prosecution when probable cause for such prosecution exists. "An individual does not have a

right under the First Amendment to be free from a criminal prosecution supported by

probable cause that is in reality and unsuccessful attempt to deter or silence the criticism of

the government." Id. at 1180.  Based on Plaintiff's conviction, Defendants had probable

cause and their actions were objectively reasonable as a matter of law.  Accordingly,

Defendants are entitled to qualified immunity for their role in Plaintiff's arrest and

prosecution.

### III. CONCLUSION

For the foregoing reasons, Defendant's Motion for Judgment on the Pleadings should

be granted.

DEFENDANTS,
JOESPH CROUGHWELL, JEFFERY
FLAHERTY, DAVID KENARY, DARYL
ROBERTS, CHRISTOPHER LYONS and
ROBERT LAWLOR

By: _____
       Charles L. Howard (ct 05366)
       Gregg P. Goumas (ct 19095)
       Derek L. Mogck (ct 23688)
       Shipman & Goodwin LLP
       One Constitution Plaza
       Hartford, CT 06103-1919
       Tel: (860) 251-5000
       Fax: (860) 251-5214


DEFENDANT,
CITY OF HARTFORD

By _____ / w permission
      John P. Shea, Jr.
      Federal Bar CT 17433
      Sabia & Hartley, LLC
      190 Trumbull Street, Suite 202
      Hartford, CT 06103
      Telephone: 860-541-2077
      Facsimile: 860-713-8944
      Its Attorney

11

## CERTIFICATION

I hereby certify that a copy of the foregoing was sent via facsimile and U.S. Mail, first class, postage prepaid, on this 3rd day of February, 2005 to:

Erin I. O'Neil-Baker, Esq.
818 Farmington Avenue
West Hartford, CT 06119

John T. Forrest, Esq.
Law Offices of John T. Forrest, LLC
142 Jefferson Street
Hartford, CT 06106

Charles L. Howard, Esq.
Gregg Peter Goumas, Esq.
Derek L. Mogck, Esq
Shipman & Goodman
One American Row
Hartford, CT 06103

Helen Apostolidis, Esq.
City of Hartford
Corporation Counsel's Office
550 Main Street
Hartford, CT 06103

Norman A. Pattis, Esq.
649 Amity Road, P.O. Box 280
Bethany, CT 06524

Attorney Erin O'Neil
41A New London Turnpike
Glastonbury, CT 06033

Chambers Copy:
The Honorable Janet C. Hall
Unites States Distrcit Court
915 Lafayette Blvd.
Bridgeport, Ct

Gregg P. Goumas

393694 v.01 S2

12

# TAB A



UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

NICHOLAS RUSSO,    :
Plaintiff    :
    :    CIVIL ACTION NO.
v.    :    3-97-CV-2380 (JCH) lead case
    :    3-00-CV-2382 (JCH)
CITY OF HARTFORD, et al.    :    3-00-CV-1794 (JCH)
Defendants.    :
    :    JUNE 10, 2002

## RULING ON MOTION TO DISMISS [DKT. NO. 210]

This litigation involves federal civil rights actions brought pursuant to 42
U.S.C. § 1983 by the plaintiff, Hartford Police Detective Nicholas Russo ("Russo"),
against state criminal prosecutors and inspectors, Hartford police officers and
supervisors, the Hartford Police Union and union officers, and the City of Hartford.
Russo alleges several federal constitutional and state law violations. Russo filed
three related lawsuits, Russo v. City of Hartford, et al., 3:97cv2380 (JCH); Russo
v. Bailey, et al., 3:00cv1794 (JCH); and Russo v. Marquis, et al., 3:00cv2382
(JCH), which have been consolidated for purposes of discovery.[1] Pending before
the court is a motion to dismiss filed by John Bailey, James Thomas, Herbert
Carlson, Joan Alexander, Joseph Hammick, Lawrence Skinner, and Stephen
Kumnick ("the State Defendants").

---

[1] Russo also filed a proposed class action, Russo v. CVS Pharmacies, Inc., et al.,
3:00cv1852 (JBA), stemming from related facts, but naming different defendants and
raising different issues. That action has not been consolidated.

# I.    FACTUAL BACKGROUND[2]

Russo has been employed as a police officer for the City of Hartford Police Department since 1981. For more than six years, Russo served as a Detective with CAPers, the Crimes Against Persons division of the Hartford Police Department. In June 1995, Russo was also assigned to the Federal Violent Crimes Unit in Hartford. He served as a detective in both capacities until his arrest on December 16, 1997.

On or about September 9, 1997, Lieutenant David Kenary contacted the Drug Enforcement Administration ("DEA") to initiate a criminal investigation of Russo's physician, as a ruse to investigate Russo. State's Attorneys James Thomas ("Thomas"), Herbert Carlson, Jr. ("Carlson"), and Joan Alexander ("Alexander") also initiated a criminal investigation of Russo's physician in September 1997. A joint investigation team was formed that included Chief State's Attorney John Bailey ("Bailey"); State's Attorneys Thomas, Carlson, and Alexander; Lawrence Skinner ("Skinner"), an Inspector in the Office of the Chief State's Attorney; Chief Joesph Croughwell; Captain Jeffrey Flaherty; and Lieutenant Kenary. The plaintiff alleges that the defendants lacked probable cause to proceed with these investigations.

---

[2]The following facts are based on allegations made in the complaints. The facts have been combined to provide a complete narrative, but not all facts stated herein are incorporated or alleged in each count of all the complaints.

In January 1997, the United States Attorney's Office approached Russo for information with regard to a police corruption probe into the activities of Hartford Police Department officers and supervisors. Although not obligated to do so, Russo provided information to the United States Attorney's Office about Captain Flaherty, Sergeant Christopher Lyons, and Detective Robert Lawlor.

During October and November, at the direction of Chief State's Attorney Bailey and State's Attorneys Thomas, Carlson, and Alexander in investigating Russo's physician, Joseph Hammick ("Hammick"), an Inspector in the Office of the Chief State's Attorney, State Inspector Skinner, and Lieutenant Kenary seized Russo's confidential medical records from Russo's physician, searched and seized Russo's prescription records from numerous pharmacies, and focused on Russo as the target of the investigation. According to State's Attorney Thomas, the goal of the investigation was to discredit Russo, which in turn would discredit a federal murder investigation, in which Russo was involved.

On December 15, 1997, after meeting with other members of the joint investigation team, State's Attorneys Thomas, Carlson, and Alexander and State Inspectors Skinner and Hammick drafted an arrest warrant for Russo. On December 16, 1997, Russo's home was searched, and he was arrested. During the arrest, State Inspector Skinner called the State's Attorneys and Lieutenant Kenary to

confirm and joke about Russo's arrest. Once Russo arrived at the Office of the Chief State's Attorney, he was paraded, while handcuffed, past State's Attorneys Thomas, Carlson, and Alexander who sneered at him.

Chief Croughwell suspended Russo without pay pending the outcome of the criminal matter. On September 15, 2000, all criminal charges against Russo were dropped based on the trial court's ruling that the State obtained Russo's prescription records in violation of the Fourth Amendment. The Connecticut Supreme Court reversed the trial court's decision on February 19, 2002. State v. Russo, 259 Conn. 436 (2002).

## II.    DISCUSSION

A motion to dismiss filed pursuant to Rule 12(b)(6) can only be granted if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). In considering such a motion, the court must accept the factual allegations alleged in the complaint as true and all inferences must be drawn in the plaintiff's favor. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds, Davis v. Scherer, 468 U.S. 183 (1984). A Rule 12(b)(6) motion to dismiss cannot be granted simply because recovery appears remote or unlikely on the face of a complaint. Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996). "The issue is not

-4-

whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Id. (quotation omitted). "[B]ald assertions and conclusions of law will not suffice to state a claim . . . ." Tarshis v. Riese Org., 211 F.3d 30, 35 (2d Cir. 2000).

### A.    First Amendment

Among other arguments, the State Defendants argue that Russo fails to state a justiciable cause of action under the First Amendment because his allegations require the court to address the existence of probable cause in the pending state criminal proceeding. See Def. Memo. of Law in Support [Dkt. No. 211], at 16 & n.3. The plaintiff does not address this argument, but his complaint alleges that the defendants had no probable cause to proceed with their investigation of him. Russo v. Bailey, 3:00-CV-1794 (JCH), Fourth Amended Complaint [Dkt. No. 112], Count 3, ¶ 73.

To survive a motion to dismiss his First Amendment retaliation claim, Russo must allege that "(i) he has an interest protected by the First Amendment, (ii) the defendant['s] actions were motivated by or substantially caused by the plaintiff's exercise of that right and (iii) the defendant['s] actions chilled the exercise of those rights." Kerman v. City of New York, 261 F.3d 229, 241-42 (2d Cir. 2001). However, "if [a defendant] either had probable cause or was qualifiedly immune

-5-

from subsequent suit (due to an objectively reasonable belief that he had probable cause), then [courts] will not examine the officer's underlying motive in arresting and charging the plaintiff." Singer v. Fulton County Sheriff, 63 F.3d 110, 120 (2d Cir. 1995) (citing Mozzochi v. Borden, 959 F.2d 1174, 1179-80 (2d Cir. 1992); Magnotti v. Kuntz, 918 F.2d 364, 368 (2d Cir. 1990)).

In light of Singer, the court must consider whether probable cause existed for the State Defendants' actions. Where allegations of a constitutional injury would imply that a conviction or sentence were invalid, however, a plaintiff "must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Heck v. Humphrey, 512 U.S. 477, 486-87 (1994). The court must dismiss any claims in this regard, "unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." Id. at 487.

Given the present posture of the state prosecution in this case, Russo cannot state a claim under the First Amendment. The Connecticut Supreme Court has permitted the prosecution to proceed. A judgment on Russo's First Amendment claim, however, would raise questions about the validity of the prosecution against him in state court because probable cause for Russo's arrest would be a defense to

-6-

the First Amendment claim. Therefore, until Russo is acquitted, the charges are dismissed, or a conviction is otherwise invalidated, the court must dismiss the First Amendment claim without prejudice for the plaintiff to renew that claim after the resolution of his criminal prosecution.

B.     Substantive Due Process

In its February 5, 2002 Ruling, the court held that the plaintiff's Third Amended Complaint stated a cause of action for substantive due process against the State Defendants. The State Defendants argue that this court should revisit its prior ruling with regard to the allegations of a substantive due process claim, which claim has been reiterated in the Fourth Amended Complaint. Ten days after this court's prior ruling, the Second Circuit held that criminal investigations fall within the scope of the Fourth Amendment, not substantive due process under the Fourteenth Amendment. Poe v. Leonard, 282 F.3d 123, 136 (2d Cir. 2002) ("The Fourth Amendment is not the proper source [for] objectionable conduct [that] occurred outside of a criminal investigation or other form of governmental investigation or activity."). That holding directly contradicted this court's prior conclusion. See Russo v. City of Hartford, 184 F. Supp. 2d 169, 184 (D. Conn. 2002) ("[W]hile claims arising from a plaintiff's arrest and prosecution would fall within the scope of the Fourth Amendment, that Amendment would not cover a cause of action for

-7-

government abuse of process in the investigation or pursuit of a suspect.").

Accordingly, the court concludes that intervening law between the Third and Fourth

Amended Complaint has clarified the scope of the Fourth Amendment and

eliminated the substantive due process claim recognized by this court in its prior

ruling. The substantive due process claim against the State Defendants is therefore

dismissed.

      C.     Equal Protection

The State Defendants also move to dismiss any claim for equal protection

against them by the plaintiff. Russo responded to the pending motion to dismiss,

stating that the Fourth Amended Complaint no longer states an equal protection

claim against the State Defendants. Pl. Memo. in Opp. [Dkt. No. 217], at 16.

Therefore, the court concludes that the defendants' motion with regard to an equal

protection claim is moot.[3]

## III.  CONCLUSION

For the foregoing reasons, the State Defendants' Motion to Dismiss [Dkt.

No. 210] IS GRANTED. The clerk is directed to terminate John Bailey, James

---

[3]In light of the court's conclusions with regard to all substantive claims against the State Defendants, the court will not address the other grounds for the pending motion, including arguments regarding <u>Younger</u> abstention, Eleventh Amendment immunity, and qualified immunity.

Thomas, Herbert Carlson, Joan Alexander, Joseph Hammick, Lawrence Skinner, and Stephen Kumnick as defendants in <u>Russo v. City of Hartford, et al.</u>, 3:97cv2380 (JCH) and <u>Russo v. Bailey, et al.</u>, 3:00cv1794 (JCH).[4]

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 10th day of June, 2002.



Janet C. Hall
United States District Judge

JUN 13 2002

---

[4]Although the pending motion to dismiss was filed only with regard to the Fourth Amended Complaint in <u>Russo v. Bailey</u>, the plaintiff has not filed an amended complaint in <u>Russo v. City of Hartford</u> after the court's February 5 Ruling. The only remaining claim, if any, in that case against the State Defendants was a substantive due process claim, which the court dismisses on the same grounds stated in this ruling.

-9-