FILED

2005 MAR 11 P 1:45

U.S. DISTRICT COURT
BRIDGEPORT, C...

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| NICHOLAS O. RUSSO | CIVIL ACTION NO.<br>3:97 CV 2380 (JCH)(Lead Case) |
| Plaintiff, | 3:00 CV 1794 (JCH)√ |
| v. | |
| JOHN BAILEY, ET AL. | |
| Defendants | MARCH 11, 2005 |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT, CITY OF HARTFORD'S, MOTION FOR A JUDGMENT AS A MATTER OF LAW PURSUANT TO F.R.C.P. 50(a)**

I.    **INTRODUCTION**

Trial commenced in this matter on March 7, 2005. While trial encompassed two distinct lawsuits, Russo v. City of Hartford, 3:97 CV 2380 (Russo I) and Russo v. Bailey, 3:00 CV 1794 (Russo II), the only claim against the City of Hartford ("Hartford") is the claim in Russo II asserting that Hartford is liable under Section 1983 for its failure to train its police officers regarding how to treat officers who engage in conduct protected by the First Amendment. Plaintiff has completed his case in chief. Hartford moves for Judgment as a matter of law pursuant to Fed. R. Civ. P 50(a) on the grounds that: (1) Plaintiff's claim is barred by the doctrine of res judicata; and (2) Plaintiff cannot establish that his constitutional deprivation resulted from a policy or custom of Hartford because there exists no legally sufficient evidentiary basis for the jury to find the following two essential elements: (a) that a Hartford

policymaker displayed deliberate indifference to his constitutional rights; and (b) that a deficiency in Hartford's police training cause his constitutional deprivation. This Memorandum of Law is filed in support of that motion.

## II.     FACTS PRESENTED

Plaintiff has presented evidence suggesting that in 1996 and 1997 he was a detective in the Crimes Against Persons ("CAPERS") division of the Hartford Police Department who was, at various time either assigned or detached to the Federal Gang Task Force. Plaintiff has also presented evidence that he was: (1) forced to report his daily activities to his CAPERS supervisors in the fall of 1996; (2) drug tested in January of 1997; (3) suspended for two days for being absent without leave in January of 1997; (4) not provided a key to his office in the Spring of 1997; (5) told by Chief Croughwell over the telephone that two detectives wanted to "kick his ass"; (6) drug tested in November of 1997.[1] Plaintiff has attempted to put forward evidence suggesting that he was subjected to these actions in retaliation for his associating with federal law enforcement officers and reporting corruption within the HPD. While Hartford disputes that Plaintiff has put forward sufficient evidence of a retaliatory animus, this issue need not be decided by the Court in ruling upon this motion.

---

[1] Hartford disputes that any of these actions occurred or were motivated by retaliatory animus. Hartford further asserts that the actions referenced in numbers (1), (2) and (3) are no longer in the case as to any of Defendants after the Court's ruling on Summary Judgment. Nevertheless, the Court need not address these issues to adjudicate this motion. Hartford also notes that the November 1997 drug test referenced in number (4) cannot be the basis for municipal liability because this court has previously entered judgment for Hartford on this claim in Russo I.

2

Plaintiff asserts that a Hartford policy of failing to adequately train its police personnel in the proper treatment of officers who engage in this type of protected conduct has caused his complained of retaliation. Particularly, he has testified that grand jury secrecy provisions prevented him from informing his superiors of his whereabouts, resulting in discipline and mistreatment. Plaintiff has also presented evidence that he provided information about corrupt acts of his superiors and co-workers to the federal government. Plaintiff asserts that Hartford's failure to train its police personnel on the proper treatment of employees who are either unable to report their activities to their supervisors due to grand jury secrecy provisions or who report the corrupt activities of their co-worker has caused him to be subjected to the aforementioned mistreatment.[2]

### III. ARGUMENT AND AUTHORITIES

#### A. The Movant's And Non-Movant's Respective Burdens On A Motion For Judgment As A Matter Of Law.

A defendant is entitled to a Judgment as a Matter of Law pursuant to Fed.R.Civ.P. 50(a) at the close of the plaintiff's case in chief if, "with respect to an issue essential to the plaintiff's case, there exists 'no legally sufficient evidentiary basis' for the jury to find in favor of the plaintiff." Equal Employment Opportunity Commission v. Ethan Allen, Inc., 44 F.3d 116, 119 (2d Cir. 1994) (citing Fed.R.Civ.P. 50(a)). When

---

[2] Plaintiff has also introduced evidence attempting to establish that Chief Croughwell possessed final policymaking authority over training supervisors in personnel matters. While Hartford disputes that Plaintiff has offered sufficient evidence for a reasonable juror to conclude that Chief Croughwell possessed such authority, the Court need not address this issue to adjudicate this motion.

3

deciding whether to grant the Motion, the court must "draw[] all reasonable inferences regarding the weight of the evidence and the credibility of witnesses in favor of plaintiff" and determine if "a reasonable jury could only have found for the defendants." In re Joint E. & S. Dist. Asbestos Litig., 52 F.3d 1124, 1131 (2d Cir. 1995) (internal citations omitted). In considering the evidence, the court "may not weigh evidence, assess credibility, or substitute its opinion of the facts for that of the jury." Vermont Plastics, Inc. v. Brine, Inc., 79 F.3d 272, 277 (2d Cir. 1996). Thus, this Court should grant Hartford's Motion for Judgment as a matter of law if, "notwithstanding making all credibility assessments and drawing all inferences in favor of the [plaintiff], a reasonable juror would be compelled to accept the view of the [City of Hartford]." Ethan Allen, 44 F.3d at 199.

### B. Plaintiff's Claims Are Barred By Res Judicata.

All of Plaintiff's remaining claims were, or could have been, brought in Russo I, which was fully adjudicated in Hartford's favor. Plaintiff's claims in Russo II are therefore barred by res judicata. The doctrine of res judicata bars a plaintiff from re-litigating in a subsequent action claims that were, or could have been, brought in a prior action. Res judicata will bar an action where: (1) the prior action involved an adjudication on the merits; (2) the prior action involved the same parties; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action. Bronx Household of Faith v. Board of Education, 33 F.3rd 342, 362 (2d. Cir. 2003).

4

Plaintiff asserts in this action (Russo II) that he was subjected to a variety of adverse employment actions (commencing in 1996 and culminating in a drug test on November 5, 1997) in retaliation for his engagement in conduct protected by the First Amendment. Particularly, Plaintiff asserts that he was retaliated against because of his assignment to the Federal Gang Task Force and his provision of information about corruption in the Hartford Police department to federal officials.[3] Plaintiff had previously asserted in Russo I that he was subjected to a drug test on November 4, 1997 in retaliation for his engagement in the very same protected conduct again asserted in Russo II. Hartford was granted summary judgment on Plaintiff's retaliation claim stemming from the November 4, 1997 drug test on September 30, 1997.

All of the actions and events forming the bases of Plaintiff's remaining First Amendment claim against Hartford in this action occurred prior to the November 4, 1997 drug test and prior to the filing of Russo I on or about November 9, 1997. Moreover, Russo I asserted retaliation against Plaintiff due to his engagement in the same protected conduct asserted here, namely his assignment to the Federal Gang Task force and his alleged participation in a federal corruption investigation of the HPD. Plaintiff therefor could, and should, have brought the claims asserted herein in Russo I. Because Hartford was granted judgment on the merits of Plaintiff's claims of retaliation stemming from his drug testing on November 4, 1997 in Russo I, Plaintiff is barred by the doctrine of res judicata from recovering against Hartford for those alleged adverse

---

[3]   Plaintiff has acknowledged this his filing of Russo I is not protected conduct in this proceeding because none of the surviving adverse employment actions occurred after the filing of that suit.

employment actions occurring prior to November 5, 1997 which are the subject of this suit. Hartford is therefore entitled to judgment as a matter of law.

    C.    **Plaintiff Has Failed To Introduce Evidence Sufficient To Establish That Hartford Failed To Adequately Train Police Personnel On How To Supervise Subordinates Who Engage In Protected Speech.**

In order for a plaintiff to recover against a municipality under Section 1983, he must prove that the constitutional deprivation of which he complained resulted from an official custom or policy of the municipality. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). In his case in chief, Plaintiff attempted to prove that Hartford had a policy or custom of failing to adequately train its police officers regarding how to properly treat officers who are either bound by grand jury confidentiality provisions or who report police corruption.

    1.    **Plaintiff Has Offered No Evidence That Hartford's Failure To Adequately Train Its Police Personnel Has Displayed Deliberate Indifference to His Constitutional Rights.**

The Supreme Court of the United States has ruled that a municipality can be liable for a failure to train only where that failure amounts to "deliberate indifference" to the rights of those with whom municipal employees will likely come into contact. City of Canton v. Harris, 489 U.S. 378, 388 (1989). The phrase "deliberate indifference" means more than "simple or even heightened negligence"; it involves a "conscious disregard [on the part of municipal employers] for the consequences of their action." Board of the County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 407 (1997). Put another way,

6

> [It is not enough] that an otherwise sound program has occasionally been negligently administered. Neither will it suffice to prove that an injury or accident could have been avoided if an officer had better or more training, sufficient to equip him to avoid the particular injury-causing conduct. Such a claim could be made about almost any encounter resulting in injury, yet not condemn the adequacy of the program to enable officers to respond promptly to the usual and recurring situations with which they must deal. And plainly, adequately trained officers occasionally make mistakes; the fact that they do says little or nothing about the training program or the legal basis for holding the [municipality] liable.

Canton, 489 U.S. at 391.

Courts hold Section 1983 plaintiffs to such a high standard for establishing "deliberate indifference" because "[i]n virtually every instance where a person has had his or her constitutional rights violated by a [municipal] employee, a Section 1983 plaintiff will be able to point to something the city 'could have done' to prevent the unfortunate incident." Id. at 392. Thus, if a Section 1983 plaintiff could establish municipal liability for failure to train by merely showing that the municipality could have done something to prevent the incident in issue, federal courts would be engaged "in an endless exercise of second-guessing municipal employee training programs." Id. Because it is not the courts' function to "micro-manage municipal police departments," liability for a municipality's failure to train will not be imposed "[a]bsent evidence of a constitutional infirmity . . . ." Fincher v. County of Westchester, 979 F. Supp. 989, 1009 (S.D.N.Y. 1997).

The United States Court of Appeals for the Second Circuit has required plaintiffs seeking to establish that a municipality's failure to train amounts to deliberate indifference to satisfy a three prong test. Walker v. City of new York, 974 F.2d 293,

7

197 (2d. Cir 1992). Particularly, a plaintiff must prove: (1) that a final policymaker knows to a "moral certainty" that his or her employees will confront a given situation; (2) that the situation either presents an employee of the sort training will make less difficult, or there is a history of employees mishandling the situation; and (3) the wrong choice by the employee will frequently result in the deprivation of a citizen's constitutional rights. Id.

> 2. **Plaintiff Has Provided No Legally Sufficient Evidentiary Basis For A Jury To Find That A Hartford Policymaker Knew "To A Moral Certainty" That Police Officers Would Confront A Situation Where Their Subordinates Could Not Provide Them Sufficient Information As To Their Activities Due To Grand Jury Secrecy Provisions Or A Situation Where Co-Workers Were Providing Information About Misconduct To Federal Authorities.**

Plaintiff failed to establish that a Hartford policymaker[4] knew "to a moral certainty" that its police officers would confront either situations in which their subordinates were unable to report to them the nature of their activities due to grand jury disclosure rules or situations where other officers were reporting police corruption. Plaintiff's counsel has suggested that the convening of the "Spada" grand jury in the early 1990s satisfies this requirement. Plaintiff elicited testimony form Chief Croughwell that officers within the HPD provided information of misconduct against

---

[4] Plaintiff has attempted to establish that Chief Croughwell was a final policymaker for purposes of training supervisors in personnel matters such as supervision. While Hartford disputes that Plaintiff has met this burden, the issue need not be resolved for purposes of this motion. Hartford notes that to the extent the Court finds, as a matter of law (See: Jeffes v. Barnes, 208 F.23d 49, 57-58 (2d Cir. 2000), that the City Manager, and not the Police Chief, is the final policy maker for purposes of training supervisors in personnel administration, Plaintiff has offered no evidence that the City Manager was aware of the "Spada" grand jury relied upon by Plaintiff to satisfy the "moral certainty" requirement.

8

other officers and their supervisors to the "Spada" grand jury. Plaintiff has offered no other evidence of additional instances where Hartford officers provided information to grand juries regarding misconduct by their co-workers and supervisors. Plaintiff has likewise offered no evidence of situations other than Plaintiff's own wherein officers were pressed to provide confidential information to their supervisors or disciplined for failing to provide such information. A single incident of a particular situation is patently insufficient for a jury to find that Hartford policymakers knew to a "moral certainty" that these situations would exist. This is borne out by the cases in which courts have found that the plaintiff satisfied the "moral certainty" requirement. In those cases, the situation the individuals confronted was so intertwined with their day-to-day job duties as to make such confrontation not only very predictable, but nearly inevitable. See, Pappas v. New Haven Police Dept., 175 F. Supp. 2d. 288, 294 (D. Conn. 2001) (reasonable jury could find that policymaker would know "to a moral certainty" that police officers would confront a situation where they subjectively believe that probable cause exists but judge nevertheless denies search warrant); Wilson v. City of Hartford, No. CV:3 97CV00671, 1998 WL 229819, at *3 (D. Conn. Mar. 24, 1998) (policymaker knew to moral certainty that police officers would confront situations wherein the officers would have to use force to seize fleeing individuals); Babi-Ali v. City of New York, 979 F. Supp. 268, 273 (S.D.N.Y. 1997) (policymaker aware to moral certainty that its employees in Department of Health, Department of Social Services, District Attorney's Office and Police Department would confront situations involving

9

allegations of child sexual abuse in contested custody cases); Post v. Elser, No. 92-CV-1146, 1996 WL 406843, at *4 (N.D.N.Y., July 19, 1996) (defendants conceded that policymakers should have known to moral certainty that police officers would confront situation, while effectuating arrest, wherein they might be tempted to use excessive force); Hogan v. Franco, 896 F. Supp. 1313, 1321 (N.D.N.Y. 1995) (municipal policymaker knew to moral certainty that police officers would confront situations in which they are tempted to use physical force against detainees who verbally abuse them).

This is also consistent with the district court's interpretation of the "moral certainty" requirement in Mejia v. City of New York, 228 F. Supp.2d 234, 248 (E.D.N.Y. 2002). The Mejia court reasoned that the first prong of the Walker test, that the policymaker knows to a moral certainty that his employees will confront a given situation, actually consists of two elements. First, there must be some need for a policy regarding "a given situation." The court interpreted this as contemplating a significant level of specificity regarding the situation to be confronted by the employee. Second, the given situation must occur so frequently as to be a moral certainty. It follows, therefore, that the types of situations deemed by courts within this circuit to satisfy the "moral certainty" requirement are those that employees regularly encountered as an integral part of their job duties.

Here, in contrast, the situation alleged by Plaintiff is a "rare" event not regularly

10

encountered by police officers as an integral part of their job. Plaintiff failed to establish at trial to any degree, let alone to a "moral certainty", that HPD officers were likely to be placed in situations where they would be supervising subordinates who could not report to them either the location or substance of their activities or who were allegedly involved in investigating them. As such, Defendant Hartford is entitled to a judgment as a matter of law because Plaintiff has failed to establish this essential element of his case.

    **3.    Plaintiff Failed To Produce Sufficient Evidence At Trial For A Jury To Conclude That HPD Officers Who Supervised Officers Who Could Not Provide Them With Grand Jury Information Or Who Worked With Officers Who Reported Police Corruption Had A Difficult Choice Of The Type That Training Would Make Less Difficult.**

Similarly, Plaintiff failed to establish the second prong of the Walker test. Simple common sense instructs that police officers, entrusted with the public safety, should not be pressing subordinates for confidential information, retaliating against them for failing to provide that confidential information or devoting their energy to harassing them. It is clear that any police officer should be aware of this. As such, training with respect to this issue would be completely superfluous: "Where the proper response ... is obvious to all without training or supervision, then [any alleged] failure to train or supervise is generally not `so likely' to produce a wrong decision as to support an inference of deliberate indifference by city policymakers to the need to train or supervise." Walker, 974 F.3d at 299-300. See also Cooper v. Masiello, No. 95-

11

CV-0849E(H), 2000 WL 432813 at *3 (W.D.N.Y. April 14, 2000) (where the alleged misdeeds "relate to such basic norms of human conduct ... in the ordinary case a municipal policymaker need not expend precious resources on training or supervision but can instead rely on the common sense of her employees"), (citing, Walker, 974 F.2d at 301).

Thus, Plaintiff has failed to provide a sufficient evidentiary basis for the jury to conclude that Hartford officers had a difficult choice in this situation and that training would have made it less difficult.

    **4.**    **Plaintiff Failed To Introduce Evidence Sufficient For A Jury To Find A History Of Hartford Police Officers Pressing Their Subordinates For Confidential Information, Disciplining Them For Not Providing Such Confidential Information Or Retaliating Against Their Coworkers For Reporting Police Corruption.**

Plaintiff similarly failed to put into evidence any proof that the Hartford policymakers - specifically, either Chief Croughwell (which Hartford disputes is a policy maker for purposes of training in personnel matters) or its City Manager — were aware of a pattern of officers pressing subordinates for confidential grand jury information, disciplining them for failing to disclose such information or retaliating against officers who reported police corruption. In fact, Chief Croughwell could not identify once such occurrence (other than that claimed by Plaintiff), and testified that he had never been presented with a reason to believe that subordinates who had either withheld information from their supervisors or provided grand jury information about their supervisors had ever complained of or suffered such retaliation. See, Fincher, 979 F. Supp. at 1008

12

(although plaintiff produced some evidence of history of police officers trumping up charges, at least against him, plaintiff had failed to produce any evidence that municipal policymaker was aware of such conduct); Post, 1996 WL 406843, at *5 (granting summary judgment to municipality on plaintiff's Section 1983 claim, in part because record was bereft of any proof that municipal policymakers were aware of pattern of use of excessive force by city police officers, but failed to institute appropriate training or supervision).

Plaintiff has therefor offered no legally sufficient evidentiary basis for the jury to find that Plaintiff has met the second prong of the Walker standard. Because Plaintiff has failed to introduce evidence sufficient to satisfy the first or second of the requisite elements for establishing "deliberate indifference" to citizens' constitutional rights as set forth in Walker, Hartford is entitled a judgment as a matter of law against all of Plaintiff's claims.

### 5. Plaintiff Has Failed To Provide Sufficient Evidence For A Jury To Conclude That Inadequate Training Caused His Constitutional Deprivation.

Even if the Court finds that Plaintiff has introduced sufficient evidence for a reasonable jury to conclude that Hartford policymakers displayed a deliberate indifference to Plaintiff's constitutional rights, Plaintiff nonetheless remains unable to prevail because he has offered no evidence suggesting how inadequate training has caused his harm. A Plaintiff seeking to impose liability for failure to train must establish not only that the officials' purported failure to train occurred under circumstances that could constitute

deliberate indifference, but must also identify a specific deficiency in the city's training program and establish that deficiency is `closely related to the ultimate injury,' such that it `actually caused' the constitutional deprivation. Amnesty America v. Town of West Hartford, 361 F.3d 113, 129 (2d Cir. 2004) (citing City of Canton, 489 U.S. at 391). As recognized by the Supreme Court in Canton, the plaintiff must establish that "'the officer's shortcomings ... resulted from ... a faulty training program' rather than from the negligent administration of a sound program or other unrelated circumstances." Id. (citing City of Canton, 489 U.S. at 390-91, 109 S.Ct. 1197). Thus, the Second Circuit in Amnesty America noted that:

> [i]t is impossible to prevail on a claim that the Town's training program was inadequate without any evidence as to whether the Town trained its officer ... how the training was conducted, how better or different training could have prevented the challenged conduct, or how `a hypothetically well-trained officer would have acted under the circumstance.'

Id. at 103.

Here, Plaintiff has offered no evidence as to whether Hartford trained its officers on how to deal with those employees who are either bound by grand jury secrecy or report police corruption, how that training was conducted, or how better or different training could have prevented the alleged retaliation. Amnesty America, 361 F.3d at 129.

Plaintiff has, however, introduced evidence suggesting that training in the more general provisions of the Code of Conduct and Anti-Harassment policies should, and

14

have to date routinely, prevented retaliation of the type suffered by Plaintiff.

Plaintiffs case was completely lacking in any evidence regarding how better or different training could have prevented the alleged conduct. <u>Amnesty America,</u> 461 F.3d at 130. Plaintiff presented no expert testimony to establish the alleged inadequacy of Hartford's training program. He presented no evidence of prior incidents of misconduct of this type. He presents no evidence that superior training regarding the First Amendment or alternate reporting arrangements are provided to other police departments. <u>Vann v. The City of New York,</u> 72 F.3d 1040, 1050 (2d. Cir. 1995).

Rather, Plaintiff merely presented his own speculation as to what Hartford might have done differently and the fact that his constitutional rights were allegedly violated as proof that the training program must have been inadequate. In essence, Plaintiff attempts to reinstate <u>respondeat superior</u> liability for Hartford as to the actions of its police officers. The courts, however, have made it clear that municipal liability for the actions of its employees must be established by demonstrating a policy or custom, not merely by the fact that the City may have employed a tortfeasor. <u>Jeffes,</u> 208 F.3d at 57-58 (citing <u>Monell,</u> 436 U.S. at 694. Because Plaintiff established no specific deficiency in the training program that was closely related to the alleged violation of his constitution rights, Defendant Hartford is entitled to judgment as a matter of law pursuant to F.R.C.P. 50(a).

15

## IV. CONCLUSION

For all the foregoing reasons, Hartford's Motion should be granted.

DEFENDANT,
CITY OF HARTFORD

By _____
John P. Shea, Jr.
Federal Bar No. CT 17433
Sabia & Hartley, LLC
190 Trumbull Street, Suite 202
Hartford, CT 06103
Telephone: 860-541-2077
Facsimile: 860-713-8944
Its Attorney

16

## CERTIFICATION OF SERVICE

I hereby certify that a copy of the foregoing was delivered by hand and/or mailed, postage prepaid, this 11th day of March, 2005, to:

Attorney Erin O'Neil
41A New London Turnpike
Glastonbury, CT 06033

Atrorney Helen Apostolidis
Office of corporation Counsel
City of Hartford
55 Main Street
Hartford, CT 06103

John T. Forrest, Esq.
Law Offices of John T. Forrest
142 Jefferson Street
Hartford, CT 06106

Norman A. Pattis, Esq.
P.O. 280
Bethany, CT 06524

Charles L. Howard, Esq.
One Constitution Plaza
Hartford, CT 06103

Chambers Copy:

The Honorable Janet C. Hall
United States District Court
915 Lafayette Blvd.
Bridgeport, CT 06604

_____
John P. Shea