UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| NICHOLAS RUSSO | :  3:00CV1794 (JCH) |
| v. | : |
| CITY OF HARTFORD, ET AL. | :  APRIL 18, 2005 |

### PLAINTIFF'S MEMORANDUM IN OPPOSITION TO UNION'S MOTION FOR ATTORNEY'S FEES

Counsel for the defendant Union in this action has filed a motion for attorney's fees, claiming that a sum of $103,687.50 was necessary to defend an action that was wholly lacking in merit. For all of the reasons stated below, the motion should be denied.

**I.     Legal Standard**

A prevailing defendant in an action arising under 42 U.S.C. Section 1983 is not entitled to attorney's fees merely because he prevails on the merits of the suit. In order to award fees to a prevailing defendant, the plaintiff's claim must be found to have been frivolous, unreasonable, or groundless, or, in the alternative, the plaintiff continued to litigate the claim once it became apparent that the case lacked merit. Rounseville v. Zahl, 13 F.3d 625 (2d.Cir., 1994). Thus, although a prevailing plaintiff may recover fees as of right, a prevailing defendant may recover only if the plaintiff's claim was vexatious, frivolous, or brought to harass or embarrass the defendant(s). Neider v. Comblo, 917 F.Supp. 262 (S.D.N.Y 1996). Some courts have held that the standard for determining whether a suit was so lacking in merit as to warrant prevailing defendant fees is akin to the standard for frivolous claims arising under Rule 11 of the Federal Rules of Civil

1

Procedure. Hughes v. Unified School Dist. No. 330, Wabaunsee County, Kan., 872 F.Supp. 882 (Dkan, 1994). Merely losing a suit is insufficient to render justify an award of attorney's fees to a defendant. Hughes v. Rowe, 101 S.Ct. 173 (1980).

**II      The Plaintiff Obtained A Judgment As To Fellow Employees Of The Defendants Seeking Attorneys Fees; The Action, In Which The Court Found That The Plaintiff Spoke Out On Matters Of Public Concern, Was Not Frivolous**

At trial, the plaintiff prevailed against the City of Hartford, the chief of police and another officer on a theory of First Amendment retaliation, and failure to train officers about how to respond if harassed in response to an investigation of corruption among fellow officers. He was awarded punitive damages as against the two individually named defendants. The total verdict was $570,000.

At trial, the plaintiff presented evidence that he was a member of a federal gang task force. During the course of his work with the task force, he met with an FBI agent and an assistant United States Attorney. At the time of this meeting, the federal officials were investigating rumors that three members of the Hartford Police Department had murdered a Hartford resident and dumped his body in Massachusetts. He told federal officials about claims that Hartford Police Officers were engaged in the practice of stealing money from suspects, planting evidence and using excessive force against persons in police custody. Federal authorities later obtained convictions against several Hartford police officers for violating the civil rights of prostitutes by forcing the women to submit to sexual contact. None of the information Mr. Russo provided to federal authorities led to the arrest of a Hartford police officer.

In addition, Mr. Russo was publicly critical of his own department for arresting a

suspect in the so-called Pope Park murder. In that case, Mr. Russo and federal authorities arrested one suspect; Hartford police officers swore affidavits leading to the arrest of a different man. The man Mr. Russo helped to arrest later pleaded guilty to the charge; charges were later dropped against the person arrested as a result of the Hartford investigation and he settled a claim against the City. The jury did not learn of the sum paid to settle that claim. Deputy United States Attorney John Durham testified compellingly about frictions between state and federal authorities arising from the Russo case. He also offered extensive testimony about failures of Hartford police officers in the investigation, testifying at length about things he put in writing in a federal sentencing memorandum relating to the man who pleaded guilty to the murder.

The evidence at trial provided grounds to support the conclusion that Mr. Russo was a man with many enemies in the department. Indeed, one Lieutenant, Mr. Kenary, was overheard saying in the Chief's office: "Fucking Russo; we'll get him."

Finally, the jury in this case rendered a verdict finding that the City of Hartford lacked any training for officers on how to respond to harassment when cooperating with brother law-enforcement agencies investigating corruption.

The defendants seeking attorneys fees in this case were all, at the time of the events giving rise to the complaint, members of the Hartford Police Department. They were all individuals or entities who were in a position to either help protect the plaintiff, or to fail to act causing the plaintiff harm.

When suit was filed, the plaintiff pleaded facts sufficient to permit the litigation to advance as to each defendant. At no point in the litigation did counsel for the defendants seeking attorney's fees alert the plaintiff that his claims were without merit.

Instead, the case litigated through summary judgment.

It was not frivolous or unreasonable for the plaintiff to believe that the defendants were inspired by the same retaliatory animus as fueled the other defendants in this case. Mr. Russo had become an outcast in his own department, breaking ranks with his brother officer to cooperate with investigators considering whether Hartford officers had engaged in acts of murder and theft. In the initial stages of the litigation, it was not unreasonable for him to suspect that union leaders and representatives shared the same animus as the other defendants and that they wanted him silenced at all costs. That the claim later failed as to these defendants does not in and of itself render his complaint frivolous. Mr. Russo plead a conspiracy. As this Court routinely instructs jurors in conspiracy cases: there is rarely an explicit contract or agreement binding a group bent on wrongful intent.

The failing of the union to protect him or otherwise seek to vindicate his First Amendment rights is hardly surprising. Surely one of the reasons the City failed to train officers on what to do in the face of retaliation is because the union failed to press for such a policy. An alternative theory of liability not pursued by prior plaintiff's counsel in this case could well have resulted in a different outcome as the union and individual defendants[1]: In the face of Mr. Russo's speaking out on matters of public concern and in the face of his claims of retaliation, the union did precious little to press for a policy

---

[1] One of the many ironies in this case is that summary judgment was granted as to the City in the case in which a motion was filed on the theory that the chief was not the final policy maker. On the claim in which summary judgment was not sought, the plaintiff was able to prove at trial that the chief was the final policymaker, thus withstanding a Rule 50 motion.

offering officers protection from vengeful supervisors. One reason for this may well have been that relations between union and management were a little too cordial when it came to the allegations present in this case: It is, after all, one things to press for more pay and better conditions of employment. It is quite another to stand up for an employee whose conduct could land other union members in a federal penitentiary.

The mere fact that Mr. Russo lost summary judgment in this case does not entitle the defendants to attorneys fees. Mr. Russo won an important verdict vindicating not just his First Amendment rights, but serving as a private attorney general in disclosing how senior members of his department responded to an investigation by federal officers of acts of corruption in the Hartford Police Department. This is not the sort of claim this Court should chill future plaintiff's from bringing by awarding defendants' attorneys fees. The jury in this case was no doubt shocked by much of what it learned in this case. By awarding punitive damages it concluded that there was a need to deter such conduct in the future. That message will be diminished by an award of attorney's fees to the union defendants.

Many foxes guarded the chicken coop in the Hartford Police Department. The plaintiff is to be forgiven for assuming that not all of them were management; some may well have been union representatives; some may well have been the target of federal investigators with power motives to silence Mr. Russo.

**III    Conclusion**

The fee applications submitted by counsel for the defendants reflect many hours for research on such issues as qualified immunity, color of law, duty of fair representation. Counsel for the defendants are not recent law school graduates; they

5

have ome experience in litigating claims of this sort. Were the claims truly frivolous or without support in the law, little or no research would be required to defeat them. Counsel intent on defending his client could well have submitted a Rule 11 letter, giving his adversary notice of the frivolous character of the claims and time to withdraw them without incurring cost.

  The Court should exercise its discretion in this matter and deny the request for fees. To do otherwise would be to penalize a prevailing plaintiff for aggressively seeking to vindicate his constitutional right to freedom of speech.

              THE PLAINTIFF

              By_____
                NORMAN A. PATTIS
                649 Amity Road
                Bethany, CT 06524
                203.393.3017
                203.393.9745
                ct 13120

## **CERTIFICATION**

  The foregoing was mailed this 18th day of April 2005 to:

| | |
|---|---|
| Erin O'Enill | John Forrest |
| 41A New London Turnpike | 142 Jefferson St. |
| Glastonbury, CT 06033 | Hartford, CT 06106 |

| | |
|---|---|
| Helen Apostolides<br>City Of Hartford<br>650 Main Street<br>Hartford, CT 06103 | Charles Howard<br>Shipman & Goodwin<br>One American Row<br>Hartford, CT 06103 |
| Joah Shea<br>Sabia and Hartley<br>190 Trumbull St.<br>Suite 202<br>Hartford, CT 06103 | Joseph McQuade<br>21 Oak St.<br>Hartford, CT 06106 |
| Ryan Berry<br>Moukawsher & Walsh<br>21 Oak St., Suite 209<br>Hartford, CT 06106 | Frank Szilagyi<br>Silvester and Daly<br>118 Oak Street<br>Hartford, CT 06106 |

_____
NORMAN A. PATTIS