UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| NICHOLAS O. RUSSO, JR. | : | CIVIL ACTION NO. |
| | : | 3:97 CV 2380 (JCH) (lead case) |
| Plaintiff, | : | **3:00 CV 1794 (JCH)**√ |
| v. | : | |
| | : | |
| JOHN BAILEY, ET AL. | : | |
| | : | |
| Defendants. | : | APRIL 13, 2005 |

**DEFENDANT, CITY OF HARTFORD'S, MEMORANDUM OF LAW IN
SUPPORT OF ITS: (1) MOTION TO AMEND THE JUDGMENT;
(2) RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO
FED. R. CIV. P. 50(b) OR MOTION FOR A NEW TRIAL PURSUANT TO FED. R. CIV.
P. 59(a); AND/OR (3) MOTION FOR REMITTITUR OR NEW TRIAL ON DAMAGES
PURSUANT TO FED. R. CIV. P. 59(e).**

## I.    INTRODUCTION

This matter involves two lawsuits, Russo v. City of Hartford, et al., 3:97 CV 2380 (JCH)

("Russo I") and Russo v. Bailey, et al., 3:00 CV 1794 ("Russo II"), which were consolidated for

trial by the Court.  In Russo I, Plaintiff alleged that Defendants Croughwell and Flaherty deprived

him of his First Amendment rights in 1997 by subjecting him to adverse employment actions in

retaliation for his engagement in conduct protected by the First Amendment.  Plaintiff alleged that

his protected conduct included involvement in the investigation of the June 1997 murder in Pope

Park (his  "Pope Park involvement") and the reporting of possible corruption within the Hartford

Police Department ("HPD") to federal authorities in 1997 (his "corruption allegations").  The

Defendant City of Hartford ("Hartford") was not a defendant in Russo I at trial because the Court

had previously granted Hartford summary judgment on Plaintiff's claim that a Hartford policy or

custom had caused Plaintiff to be retaliated against by Croughwell and Flaherty.  See Ruling on Summary Judgment, dated September 30, 2004 (the "SJ Ruling").

        In Russo II, Plaintiff alleged that Defendants Croughwell, Flaherty, Kenary, Roberts[1], Lyons and Lawlor (hereinafter, collectively, the "Individual Defendants") deprived him of his First Amendment rights in 1997 by subjecting him to adverse employment actions in retaliation for the same protected conduct identified in Russo I, namely his Pope Park involvement and corruption allegations.  Russo II also asserted that Hartford was liable to Plaintiff because a policy or custom of failing to adequately train its police personnel caused the unlawful retaliation of the Individual Defendants (the "Monell claim").

        Trial commenced on March 7, 2003.  On March 11, 2005, Plaintiff rested his case in chief and Hartford moved for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a) on the Monell claim.  Hartford's Motion asserted that judgment should enter for it because: (1) the claim was barred by the doctrine of res judicata; and (2) there existed no legally sufficient evidentiary basis for a jury to impose municipal liability under Section 1983 for the failure to train.  See Hartford's Motion for Judgment as A Matter Of Law dated March 11, 2005.

        The Court reserved ruling on that Motion by order dated March 14, 2005.  On March 16, 2005, the jury entered a general verdict on the consolidated matters against Croughwell, Kenary and Hartford.  Verdict Form, Sections I.A.1(a) & (c), I.B.4.  The jury determined that Croughwell and Kenary had each proximately caused Plaintiff to suffer $22,500.00 in compensatory damages,

---

[1]        Plaintiff withdrew all claims against Defendant Roberts during trial.

and awarded Plaintiff such sum from each defendant.  Verdict Form, Sections I.A.2(a) & (c).

The jury also awarded Plaintiff $75,000.00 in punitive damages against Croughwell and

$100,000.00 in punitive damages against Kenary.  Verdict Form, Sections I.A.3(a) & (c), I.C.6(a)

& (c) .  The jury also found that Plaintiff had proven his Monell claim, and determined that

Hartford's failure to train had proximately caused Plaintiff to suffer $350,000.00 in compensatory

damages. Verdict Form, Sections I.B.4 & 5.  The jury further determined that the $350,000.00

award against Hartford was not duplicative, in whole or in part, of the awards against Croughwell

and Kenary.  Verdict Form, Section I.D.7(i) & (iii).

On March 31, 2005, a Judgment dated March 28, 2005 was entered on the docket in

accordance with the jury verdict and the Court's prior disposition of the claims not submitted to

the jury.  This Judgment does not enter judgment for Hartford on Plaintiff's claims brought

pursuant to Russo I, despite the Court having disposed of all claims against Hartford in Russo I

prior to trial.

Hartford now moves, pursuant to Fed. R. Civ. P 60(a), to amend the Judgment to have it

properly enter in Hartford's favor on Plaintiff's claims in Russo I as mandated by the SJ Ruling.

Hartford also re-news its Motion for Judgment as a Matter of Law in Russo II pursuant to Fed. R.

Civ. P. 50(b) ("Rule 50(b)") on the grounds that: (1) the jury's verdict is unsupported and/or

contradicted by the evidence introduced at trial; and (2) the claim asserted therein is barred by the

doctrine of res judicata as asserted in Hartford's Ninth Affirmative Defense in its Third Amended

Answer.  In the alternative, Hartford moves for a new trial pursuant to Fed. R. Civ. P. 59(a)

- 3 -

("Rule 59(a)") on the grounds that: (1) the Court's error in finding that the Hartford Police Chief was a final policy maker for purposes of training Hartford Police Chiefs; and/or (2) the Court's Jury Charge pertaining to municipal liability, have resulted in the jury invoking respondeat superior liability upon Hartford in violation of Supreme Court precedent..

In the alternative, Hartford moves pursuant to Fed. R. Civ. P. 59(e) ("Rule 59(e)") for remittitur of the compensatory damages awarded against it in <u>Russo II</u> to either $1 or $15,000.00, or for a new trial on damages.

## II.    HARTFORD'S MOTION TO AMEND THE JUDGMENT PURSUANT TO RULE 60(a)

Rule 60(a) provides that the Court may, upon its own initiative or the motion of any party, correct clerical mistakes in judgment arising from "oversight or omission."   The Judgment in these consolidated matters dated March 28, 2005 does not enter judgment for Hartford on Plaintiff's claims asserted in <u>Russo I</u>.  This must be an oversight in light of the Court's granting of summary judgment to Hartford on the only claim remaining against it in <u>Russo I</u>.  SJ Ruling, p. 39.  Hartford therefore moves that the Judgment be amended to enter in Hartford's favor on Plaintiff's claims in <u>Russo I</u>.

## III.    HARTFORD'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

Pursuant to Rule 50(b), Hartford renews its Motion for Judgment As A Matter Of Law on Plaintiff's <u>Monell</u> claim in <u>Russo II</u> on the grounds that: (1) the jury's verdict on this claim is unsupported, and/or is contradicted, by the evidence introduced at trial; and (2) it is barred by the

doctrine of res judicata as asserted in Hartford's Ninth Affirmative Defense in its Third Amended Answer.

**A.**     **The Movant's And Non-Movant's Respective Burdens On A Re-Newed Motion For Judgment As A Matter Of Law After Verdict.**

In ruling on a Rule 50(b) motion, the court must view the evidence in a light most favorable to the non-movant and grant that party every reasonable inference that the jury might have drawn in its favor.  Rand-Whitney Containerboard L.P. v. Town of Montville et al., 289 F.Supp.2d 62, 66 (D.Conn. 2003), citing Samuels v. Air Transp. Local 504, 992 F.2d 12, 14 (2d Cir. 1993).  A party is entitled to a judgment as a matter of law pursuant to Rule 50(b) after entry of a verdict against it only if: (1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture; or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded jurors could not arrive at a verdict against the movant.  Rand-Whitney Containerboard L.P. , 289 F.Supp.2d at 66, citing Ahern v. County of Nassau, 118 F.3d 118, 120 (2d Cir. 1997).  Morever, the Court may not weigh the credibility of the witnesses or evaluate the weight of the evidence.  Rand-Whitney Containerboard L.P. , 289 F.Supp.2d at 66, citing Williams v. County of Westchester, 171 F.3d 98, 101 (2d Cir. 1999).

B.     **Judgment Must Enter For Hartford Because There Was No Evidentiary Basis From Which The Jury Could Have Concluded That Hartford Failed To Adequately Train Police Personnel On How To Treat Employees Who Engage In Protected Speech.**

A plaintiff seeking to recover against a municipality under Section 1983 must prove that the complained of constitutional deprivation resulted from an official custom or policy of the municipality. Monell v. Dept of Soc. Servs., 436 U.S. 658, 694 (1978). At trial, Plaintiff argued that his constitutional deprivation was caused by a Hartford policy or custom of failing to adequately train its police officers regarding how to properly treat officers who exercise their First Amendment rights. A municipality's failure to adequately train its employees can provide the basis for imposing municipality liability under Section 1983 when: (1) a municipal final policymaker, in formulating training policies, displayed deliberate indifference to the protection of citizens' constitutional rights; and (2) specific training deficiencies proximately caused the violation of a plaintiff's federally protected rights. City of Canton v. Harris, 489 U.S. 378, 387-392 (1989); Amnesty America v. Town of West Hartford, 361 F.3d 113, 127 n.8 (2d Cir. 2004) (failure to train liability, unlike failure to supervise liability, does not arise from municipal deliberate indifference to the particular mistreatment alleged by a plaintiff, but instead from deliberate indifference during formulation of training policies wherein a municipal policy maker consciously disregards "a risk of future violations of clearly established constitutional rights by badly trained employees") .

- 6 -

The jury's verdict for Plaintiff on this claim is unsupported by the evidence introduced at trial. There is no evidentiary basis for the jury's conclusion that Hartford, in formulating its training policies, displayed deliberate indifference to the constitutional rights of its employees. There is likewise no basis in the record for the jury's finding that specific deficiencies in Hartford's training program existed, or its conclusion that such deficiencies caused Plaintiff to be deprived of his constitutional rights. In fact, the evidence introduced at trial on this issue could have led fair and reasonable minded jurors to only one verdict, a verdict for Hartford.

1.    **Plaintiff Has Offered No Evidence That In Formulating Its Training Policies Hartford Displayed Deliberate Indifference To The Constitutional Rights Of Its Employees.**

The phrase "deliberate indifference" in the failure to train context denotes more than "simple or even heightened negligence"; it involves a "conscious disregard [on the part of municipal employers] for the consequences of their action." <u>Board of the County Comm'rs of Bryan County v. Brown</u>, 520 U.S. 397, 407 (1997). Put another way,

> [It is not enough] that an otherwise sound program has occasionally been negligently administered. Neither will it suffice to prove that an injury or accident could have been avoided if an officer had better or more training, sufficient to equip him to avoid the particular injury-causing conduct. Such a claim could be made about almost any encounter resulting in injury, yet not condemn the adequacy of the program to enable officers to respond promptly to the usual and recurring situations with which they must deal. And plainly, adequately trained officers occasionally make mistakes; the fact that they do says little or nothing about the training program or the legal basis for holding the [municipality] liable.

<u>City of Canton</u>, 489 U.S. at 391.

- 7 -

Courts hold Section 1983 plaintiffs to such a high standard for establishing "deliberate indifference" because "[i]n virtually every instance where a person has had his or her constitutional rights violated by a [municipal] employee, a Section 1983 plaintiff will be able to point to something the city `could have done' to prevent the unfortunate incident." Id. at 392. Thus, if a Section 1983 plaintiff could establish municipal liability for failure to train by merely showing that the municipality could have done something to prevent the incident in issue, federal courts would be engaged "in an endless exercise of second-guessing municipal employee training programs." Id. Because it is not the courts' function to "micro-manage municipal police departments," liability for a municipality's failure to train will not be imposed "[a]bsent evidence of a constitutional infirmity ...." Fincher v. County of Westchester, 979 F. Supp. 989, 1009 (S.D.N.Y. 1997).

The United States Court of Appeals for the Second Circuit has therefore required plaintiffs seeking to establish municipal deliberate indifference in the failure to train or supervise to satisfy a three prong test. Walker v. City of New York, 974 F.2d 293, 197 (2d. Cir 1992). Particularly, a plaintiff must prove that: (1) a final policymaker knew to a "moral certainty" that his or her employees would confront a given situation; (2) the situation either presents an employee with choices of the sort training will make less difficult, or there is a history of employees mishandling the situation; and (3) the wrong choice by the employee will frequently result in the deprivation of a citizen's constitutional rights. Id.

- 8 -

As Plaintiff pursued only a failure to train claim at trial, evidence of a Hartford final

policy maker's deliberate indifference to Plaintiff's own mistreatment was not sufficient to

impose liability upon Hartford.  Amnesty America, 361 F.3d at 127 n.8.  It would appear

axiomatic under Walker and Amnesty that when a plaintiff's own mistreatment, or an event

occurring thereafter, is the first indication that particular training may be necessary, the failure to

provide such training prior to the complained of mistreatment cannot constitute deliberate

indifference.  Plaintiff therefore had the burden at trial of proving that a Hartford policy maker

displayed deliberate indifference to the constitutional rights of its employees when formulating

those training policies which allegedly caused Plaintiff's mistreatment.  Id.

> **2.    The Record Is Devoid Of Any Evidentiary Basis From Which The
> Jury Could Have Concluded That A Hartford Policymaker Knew "To
> A Moral Certainty" That Police Officers Would Confront Co-
> Workers Who Had Exercised Their First Amendment Rights.**

The jury was not presented with a shred of evidence suggesting that Croughwell,[2] when

formulating those training policies in effect in 1997, knew "to a moral certainty" that Hartford

police officers would confront co-workers who had exercised their First Amendment Rights.

Croughwell did testify that officers, during the "Spada" grand jury proceedings in 1993, may

have exercised their First Amendment rights by reporting the possible criminal misconduct of

---

[2]    This Court has determined that the Hartford Police Chief was a final policymaker for
purposes of training officers as to how to treat fellow officers.  While Hartford disputes
that the Chief is the final policymaker over such personnel matters, or that he necessarily
had the power to dictate training on such matters, the issue need not be resolved for
purposes of this motion.

their co-workers.  Croughwell's mere knowledge of such prior cooperation, however,  is insufficient to establish that he knew to a moral certainty that officers would confront situations in which they would have to supervise or work with other officers who had exercised their First Amendment rights.

It cannot be disputed that an officer working with a co-worker is not "confronting" a situation where a co-worker has exercised his First Amendment rights unless and until the officer becomes aware that the co-worker has exercised those rights.  In order to establish the requisite moral certainly, Plaintiff was therefore required to introduce evidence that Croughwell not only knew that department personnel were cooperating with grand juries or otherwise reporting the misconduct of their co-workers, but also knew, to a moral certainty, that such cooperation or reporting would become known to other members of the HPD.

The record contains no evidence that Croughwell ever suspected that the identities of officers who reported the misconduct of their co-workers would necessarily become known to HPD personnel.[3]  To the contrary, the evidence suggests that the identities of such officers would

---

[3]    FBI Special Agent Kline and Assistant United States Attorney Glasser also testified that numerous members of the HPD provided information to them regarding the organization of the HPD and possible corruption beginning in about October of 1997.  Tr., 4th Day, pp. 24:9-25:16, 48:11-15, 49:3-8, 51:14-22, 52:8-24, 60:22-25; Tr., 5th Day, pp. 41:2-42:22, 43:22-44-14, 45:11-13, 49:10-13.  These incidents of employees reporting possible misconduct are in the fall of 1997 and thereafter cannot support a finding of deliberate indifference in the absence of evidence that Croughwell was aware of such activities, that Croughwell knew that others would become aware of such activities, and that training could have both been provided after these incidents and prior to any of the retaliatory acts for which Hartford can be liable (Hartford cannot be liable for the November 4, 1997 drug testing).

not ordinarily be revealed.  Tr., 1st Day, pp. 127:25-128:9 (Plaintiff noting that secrecy of

investigations generally paramount, including secrecy in his purported investigation into HPD);

Tr. 3rd Day, pp. 18:8-24; 19:3-17 (Croughwell noting that the grand jury process itself prohibits

the disclosure of grand jury material to anyone not on a particular disclosure list).  For example,

Croughwell testified at length that he did not believe that HPD personnel knew, or were able to

learn, which officers were cooperating with the Spada grand jury:

> Q:    What concerns did you have prior to the arrest of any men under your command
>       for the safety and welfare of those individuals who you knew to be offering
>       testimony against superiors?
>
> A:    Nobody knew they were offering testimony so there wasn't a great alarm.

Tr., 3rd Day, p. 27:19-24.

> Q:    You had no reason to suspect that those against whom they were offering
>       testimony, if they found out about it, might be upset, that didn't cross your mind?
>
> A:    I didn't believe they knew or were able to find out.

Tr., 3rd Day, p. 29:14-18.

> Q:    I'm being unclear.  I apologize.  Prior to the arrest of any of the members of the
>       Hartford Police Department, before that period of time, did you become aware
>       that any of those targets, those men who were later arrested or women, became
>       aware of who in the department was offering cooperation against them?
>
> A:    I can't think of any right now.

Tr., 3rd Day, p. 35:17-23.

> Q:    Was there any doubt in your mind, sir, that in the event there was another grand
>       jury investigation other than the Spada grand jury, that officers under your
>       command would confront situations where they would be at risk, if there were
>       identities, for example, that were known.

A:     I did not think that was a major problem or something that would happen.

Tr., 3rd Day, p. 38:9-16.

Moreover, evidence suggesting that other officers had been assigned to federal task forces is likewise insufficient to establish the requisite moral certainty. While the arrest of a purportedly guilty man while working with such a task force at a time when the HPD is pursuing another suspect may constitute protected conduct,[4] the mere assignment to a federal task force is not.[5] Thus, the fact that officers before Plaintiff had been assigned to a federal gang task force is insufficient to establish that Croughwell knew to a moral certainty that officers would confront situations requiring interaction with co-workers assigned to federal task forces who were known

---

[4]     Hartford disputes that Plaintiff's mere involvement in the arrest of Gilberto Rivera constitutes protected speech. While Plaintiff's alleged communications to the federal government and Hartford Courant that the HPD had arrested the wrong man might, in certain circumstances, constitute protected speech, Plaintiff did not undertake those activities until December of 1997, well after all of the alleged retaliatory conduct against him. Tr., 1st Day, pp. 99:4-22 (Pope Park Murder occurred on June 16, 1997), 108:14-109:1 (Julio Ramos arrested on or about June 18, 1997),113:3-9 (six months passed between arrest of Ramos and arrest of HPD suspect), 113:15-25 (Russo complained to United States' Attorney's office that HPD had arrested the wrong man), 114:23-115:6 (Russo told two Hartford Courant reporters that HPD arrested wrong man); Tr., 3rd Day, pp. 65:12-66:3 (Croughwell testifying that HPD arrested suspect in December of 1997).

[5]     Plaintiff argued to the Court at trial that Hartford should have trained officers such as Plaintiff how to respond to inquiries regarding either their activities while assigned to a task force or their participation in grand jury proceedings. This theory cannot be pursued because Plaintiff's Complaint makes no mention of such a failure to train causing his constitutional deprivation (nor could such a failure have caused Plaintiff's mistreatment). Plaintiff also argued that Hartford should have trained supervisors how to handle subordinates who cannot report the substance of their activities due to grand jury secrecy. This claim can not be pursued because the only employment action the evidence suggests may have arose from such reporting problems was the decision to drug test Plaintiff in January 1997. This incident occurred prior to any of Plaintiff's protected speech, and was not the subject of any of Plaintiff's claims at trial.

to have exercised their First Amendment rights.  This is particularly true in light of Plaintiff's

assertions that officers assigned to such task forces could not reveal certain information pertaining

to their activities to their supervisors.  Tr., 1st Day, pp. 59:1-13, 218:1-13.   This would make it

even more unlikely that HPD personnel would become aware that officers assigned to a federal

task force were exercising their First Amendment rights by

either investigating or reporting HPD misconduct.  As the record contains no evidence that

Croughwell knew that officers assigned to such task forces were exercising their First

Amendment rights, the jury could not have concluded that Croughwell possessed the requisite

moral certainty.

       While Plaintiff may argue that there is evidence suggesting that it was reasonably

foreseeable to Croughwell that officers might become aware that their co-workers were reporting

misconduct or otherwise exercising their First Amendment rights, this is insufficient. This is

borne out by the cases in which courts have found that a plaintiff has satisfied the requirement.  In

those cases, the situation the individuals confronted was so intertwined with their day-to-day job

duties as to make such confrontation not only very predictable, but nearly inevitable.  See Wilson

v. City of Hartford, No. CV:3 97CV00671, 1998 WL 229819, at *3 (D. Conn. Mar. 24, 1998)

(policymaker knew to moral certainty that police officers would confront situations wherein the

officers would have to use force to seize fleeing individuals);  Jones v. City of Bridgeport, No.

3:99 CV 1523 (CFD) 2002 WL 272397 at *9, n. 12 (D. Conn. Feb. 19, 2002) (policymaker knew

to moral certainty that officers would have to perform apartment searches).

Here, in contrast, the situation in which Hartford officers would be confronted with individuals whom they believed had exercised their First Amendment rights is a "rare" event not regularly encountered by police officers as an integral part of their job.  Accordingly, there was no basis from which the jury could have concluded that Croughwell, when formulating  those training policies in existence at the time of Plaintiff's mistreatment, knew to a moral certainty that officers would confront such situations.  In fact, the evidence before the jury could lead them to but one finding, that Croughwell did not know, and could not have known, to a moral certainty that his officers would be confronted with co-workers who had exercised their First Amendment rights.

> **3.      The Record Contains No Evidence From Which The Jury Could Have Concluded That HPD Officers Who Confronted Individuals Who Had Exercised Their First Amendment Rights Had A Difficult Choice Of The Sort Training Would Make Less Difficult Or That There Was A History Of Personnel Mishandling The Situation.**

Similarly, Plaintiff failed to introduce evidence sufficient to establish the second prong of the Walker test, requiring that he prove either that the situation presents an employee with a difficult choice of the sort training would make easier or that there existed a history of employees mishandling the situation.  The record is patently insufficient to establish that officers interacting with co-workers known to have exercised their First Amendment rights were presented with a difficult choice.

Simple common sense instructs that police officers, entrusted with justice and public safety, should not be retaliating against individuals who exercised their First Amendment rights.

It is beyond dispute that any police officer should be aware of this.  As such, training with respect to this issue would be completely superfluous: "Where the proper response ... is obvious to all without training or supervision, then [any alleged] failure to train or supervise is generally not 'so likely' to produce a wrong decision as to support an inference of deliberate indifference by city policymakers to the need to train or supervise."  Walker, 974 F.3d at 299-300.  See also Russo v. City of Hartford, 345 F.Supp.2d 85, 109 (D. Conn. 2004) (decision whether to retaliate against individuals who report corruption obvious to all and thus not difficult); Cooper v. Masiello, No. 95-CV-0849E(H), 2000 WL 432813 at *3 (W.D.N.Y. April 14, 2000) (where the alleged misdeeds "relate to such basic norms of human conduct ... in the ordinary case a municipal policymaker need not expend precious resources on training or supervision but can instead rely on the common sense of her employees"); Gallo v. Suffolk County Police Department,. No. 02-CV-2615(SJF)(WDW), 2005 WL 627961, at *5 (E.D.N.Y. Mar. 17, 2005) (decision whether to forge declination letters of job applicant not difficult since nothing more than the application of common sense and ethics is required).  Thus, Plaintiff has failed to provide a sufficient evidentiary basis for the jury to conclude that Hartford officers had a difficult choice in this situation and that training would have made it less difficult.

Plaintiff similarly failed to put into evidence any proof that Croughwell, at the time he was formulating the training policies which are alleged to have caused Plaintiff's mistreatment, was aware of a history of officers mishandling situations where they interacted with co-workers who had exercised their First Amendment rights.  The record does not reference a single event

occurring prior to 1997 wherein officers may have mishandled this type of situation.[6]  Croughwell

testified that he was unaware of any incidents of retaliation against officers who, either known or

unknown to their co-workers, reported misconduct to the Spada grand jury.  Tr., 3rd Day, pp.

16:22-17:7, 172:3-13.  Croughwell further testified that he was unaware of any need to train

officers how to treat employees who cooperated with grand juries.  Tr., 3rd Day, pp. 219:17-

220:3.  Likewise, there is no evidence that any other officers assigned to federal task forces were

mistreated due to their work with the task force, constitutionally protected or otherwise.

 The record therefore contains no evidentiary basis from which the jury could have

reasonably concluded that Plaintiff satisfied the second prong of the Walker standard.  In fact, in

light of Croughwell's testimony, no reasonable jury could have entered a verdict for Plaintiff.

Because of this, Hartford is entitled to judgment as a matter of law on Plaintiff's Monell claim.

---

[6] The alleged incidents of Plaintiff's mistreatment are insufficient in timing, nature and number to be probative as to deliberate indifference under the second prong of Walker. The institution of disciplinary charges against Plaintiff in February of 1997 for his being absent without leave the preceding January and his being locked out of his office in the spring of 1997 could not provide Croughwell with notice that officers might mishandle situations involving co-workers who had exercised their First Amendment rights. Croughwell had no notice at those times that Plaintiff had exercised his First Amendment rights.  Plaintiff had not yet participated in the Pope Park investigation and Croughwell was not yet aware of (and the competent evidence suggests that Plaintiff had not yet made) the corruption allegations reported to Kline and Glasser.  Tr., 1st Day, pp. 99:8-22, 117:19-122:9, 124:11-20, 126:14-127:18; Tr. 3rd Day, 83:7- 84:5, 157:14-159:21; Tr., 4th Day, pp. 24:9-25:16, 48:11-15, 49:3-8, 51:14-22, 52:8-24, 60:22-25; Tr., 5th Day, pp. 41:2-42:22, 43:22-44-14, 45:11-13, 49:10-13.  Thus, Croughwell's failure to provide training prior to the October 30, 1997 incident cannot reflect deliberate indifference under Walker.  Moreover, because the October 30, 1997 incident was the last retaliatory incident for which Hartford could be held liable (it could not be liable for the November 4, 1997 drug test under the charge), whether or not the October 30, 1997 conversation provided Croughwell with a notice that employees might mishandle such situations, while disputed by Hartford, is irrelevant.

4.    **The Record Is Devoid Of Evidence That The Wrong Choice By An Employee In This Situation Is Likely To Result In The Deprivation Of An Officer's Constitutional Rights.**

As the record contains no evidence of prior retaliation against officers who are known to have exercised their First Amendment rights, it fails to provide an evidentiary basis for any finding that Plaintiff has satisfied the third prong of the <u>Walker</u> standard by showing that the wrong choice by an officer in this situation is likely to result in the deprivation of an employee's constitutional rights. As noted above, Croughwell was unaware of any prior instances of retaliation against officers who had provided information to grand juries. Moreover, the record contains no evidence that officers who undertook any other sort of protected speech suffered any form of harassment or retaliation, or any other constitutional deprivation. Without such evidence, the jury could not have concluded that the wrong choice by an officer confronted with a co-worker who has exercised his First Amendment rights is likely to result in the deprivation of the co-worker's constitutional rights.

5.    **Plaintiff Has Failed To Provide Sufficient Evidence For A Jury To Conclude That Inadequate Training Caused His Constitutional Deprivation.**

Even if the Court finds that Plaintiff has introduced sufficient evidence from which the jury could have reasonably concluded that a Hartford policymaker's formulation of training policies displayed deliberate indifference to employee constitutional rights, judgment should nonetheless enter for Hartford. There is no support in the record for the jury's conclusion that

Hartford officers were inadequately trained or its conclusion that inadequate training caused

Plaintiff to be retaliated against.

A plaintiff seeking to impose liability for failure to train must establish not only the

deliberate indifference of municipal policy makers in formulating a training program, but also that

his constitutional deprivations were in fact caused by a specific deficiency in that program.

Amnesty America, 361 F.3d at 129) (citing City of Canton, 489 U.S. at 391).  As recognized by

the Supreme Court in Canton, the plaintiff must establish that "the officer's shortcomings ...

resulted from ... a faulty training program rather than from the negligent administration of a sound

program or other unrelated circumstances."  Id. (citing City of Canton, 489 U.S. at 390-91, 109

S.Ct. 1197).  Thus, the Amnesty Court noted that:

> [i]t is impossible to prevail on a claim that the Town's training program was
> inadequate without any evidence as to whether the Town trained its officer ... how
> the training was conducted, how better or different training could have prevented
> the challenged conduct, or how 'a hypothetically well-trained officer would have
> acted under the circumstance.'

Id. at 103.

The record contains no evidence suggesting that Hartford's training program was

inadequate as it identifies no specific deficiencies in that program.  Amnesty America, 361 F.3d

at 129.  In fact, Plaintiff's proposed expert,[7] Croughwell, testified: (1) about specific provisions of

the Code of Conduct which prohibit a wide variety of retaliatory actions; (2) that all officers were

---

[7]     Plaintiff has suggested that Croughwell is an expert as to police training.  Hartford
disputes this qualification in light of Plaintiff's failure to disclose Croughwell as an
expert witness pursuant to F.R.C.P. 26 and Plaintiff's  failure to qualify Croughwell as
an expert during trial.

trained as to the Code of Conduct; and (3) that the Code of Conduct, in his opinion, sufficiently

protected the rights of officers who would provide information to grand juries about their co-

workers.  Tr., 3rd Day, pp. 172:19-173:2, 175:14-178:3, 218:19-23.  Croughwell also testified the

Police Officers Standards Training Council mandated that all Hartford officers be trained on

constitutional law and civil rights.  Tr., 3rd Day, pp. 191:20-193:2; 196:14-197:3.  Croughwell

further testified that Hartford had provided harassment training which specifically addressed

protection of individuals who exercised their First Amendment rights.  Tr., 3rd Day, pp. 217:25-

218:7.

         In addition, Plaintiff himself acknowledged that numerous provisions of the Code of

Conduct, the HPD's Policy and Procedures and the collective bargaining agreement between

Hartford and the Hartford Police Union, prohibit all of the conduct he alleges to have been

retaliatory.  Tr., 2nd Day, pp. 85:18-87:10, 91:1-92:16, 93:7-94:1, 95:22-96:11; 97:23-100:8,

102:2-103:1.  Plaintiff presented no evidence that Hartford failed to adequately train officers as to

any of these provisions.

         There is likewise no evidence, let alone expert testimony, suggesting how any inadequacy

in Hartford's training program actually caused Plaintiff to be retaliated against.  There is no proof

as to how better or different training could, or would, have prevented the alleged conduct or as to

how a well or better trained officer would have responded.  Amnesty America, 461 F.3d at 130;

Vann v. The City of New York, 72 F.3d 1040, 1050 (2d. Cir. 1995).  Rather, Plaintiff's entire

offer of proof as to causation consisted merely of: (1)  his own speculation, presented through his

counsel's questioning of witnesses,  as to what Hartford might have done differently; and (2) his own assertion that his constitutional rights were allegedly violated.

By entering a verdict upon this conjecture, the jury has simply reinstated <u>respondeat</u> <u>superior</u> liability for Hartford as to the actions of its police officers.  The courts, however, have made it clear that municipal liability for the actions of its employees must be established by demonstrating a policy or custom, not merely by the fact that the City may have employed a tortfeasor.  <u>Jeffes</u>, 208 F.3d at 57-58 <u>citing</u> <u>Monell</u>, 436 U.S. at 694.

Because the record contains no evidence of a  specific deficiency in the training program, and no evidence that such a deficiency caused the complained of retaliation, Hartford is entitled to judgment as a matter of law pursuant to F.R.C.P. 50(a).

> ### C.     <u>Hartford Should Be Granted Judgment As A Matter Of Law On Its Ninth</u> <u>Affirmative Defense Because Plaintiff's Claim Is Barred By Res Judicata.</u>

Judgment as a matter of law should enter in Hartford's favor on its Ninth Affirmative Defense because Plaintiff's <u>Monell</u> claim is barred by the doctrine of res judicata.[8]  Plaintiff

---

[8]     Hartford affirms the propriety of pursuing its Ninth Affirmative defense at this juncture because the defense, which raises a question of law (<u>Norfolk Southern Corp. v. Chevron,</u> <u>U.S.A.</u>, 371 F.3d 1285, 1288 (11th Cir. 2004)), was not available until immediately prior to trial when the Court ruled on the Police Defendants' Rule 12(c) Motion for Judgment on the Pleadings.  That ruling removed from the case all of the alleged adverse employment actions occurring after the filing of <u>Russo I</u> on November 7, 1997 (including Plaintiff's arrest and suspension in December of 1997).  Thus, until such ruling, there remained issues of fact occurring after the filing of <u>Russo I</u> on November 7, 1997 possibly rendering a finding of res judicata inappropriate.  Hartford therefore raised the defense at the first available moment, on its Rule 50(a) Motion at the close of Plaintiff's case, and continues to assert the defense herein.  For this reason, and others (including a previously filed, but denied, Motion to Consolidate), there exists no argument that Hartford has waived this defense.

previously pursued, or could have pursued, municipal liability in <u>Russo I</u> for all of the actions of

Croughwell, Kenary and other Hartford employees which the jury was permitted to consider in

entering a verdict against Hartford in <u>Russo II</u>.

The doctrine of res judicata holds that "a final judgment on the merits in an action

precludes the parties or their privies from relitigating issues that were or could have been raised

in that action." <u>Monahan v. New York City Department of Corrections</u>, 214 F.3d 275, 285 (2d.

Cir. 2000). The affirmative defense of res judicata will bar an action where: (1) the prior action

involved an adjudication on the merits; (2) the prior action involved the Plaintiff or those in

privity with him; and (3) the claims asserted in the subsequent action were, or could have been,

raised in the prior action. <u>Allen v. McCurry</u>, 449 U.S. 90, 94 (1980); <u>Bronx Household of Faith</u>

<u>v. Board of Education</u>, 33 F.3d 342, 362 (2d. Cir. 2003); <u>Burgos v. Hopkins</u>, 14. F.3d 787, 789

(2d Cir. 1994). Whether the claims asserted in a subsequent action were, or could have been,

raised in the prior action depends "on whether the same transaction or series of transactions is at

issue, whether the same evidence is needed to support both claims, and whether the facts essential

to the second were present in the first." <u>NLRB v. United Technologies Corp</u>., 706 F.2d 1254,

1260 (2d Cir. 1983).

      **1.     The Claim Of Municipal Liability In <u>Russo I</u> Involved Plaintiff And**
              **Was Adjudicated On The Merits.**

It cannot be disputed that Plaintiff, Mr. Russo, was the named Plaintiff in <u>Russo I</u>, which

asserted municipal liability against Hartford under Section 1983 for the alleged First Amendment

retaliation by Croughwell and Flaherty.  It likewise cannot be disputed that the Court ruled

entered summary judgment for Hartford on the merits of that claim.[9]  SJ Ruling, pp. 33-38, 67.

> 2.      The **Monell** Claim Asserted Herein Was Previously Asserted In **Russo I.**

_____Plaintiff's Monell claim as submitted to the jury in Russo II is identical to the claim of

municipal liability previously submitted to, and rejected by, this Court in Russo I.  Jury Charge,

Section XXIV, p. 37 (instructing jury that Plaintiff claims that Hartford failed to "adequately train

police officers as to how to treat other officers who engage in conduct protected by the First

Amendment", p. 29 (instructing that Plaintiff's alleged protected speech consisted of having "told

federal authorities about incidents of corruption within the Hartford Police Department and

participated in the investigation of a murder"); SJ Ruling, pp. 36-37 (granting Hartford summary

judgment in Russo I on Plaintiff's Section 1983 claim asserting that inadequate "training

regarding the treatment of fellow officers who are investigating corruption in the HPD and/or

working with th federal government" caused the deprivation of his First Amendment rights).

Importantly, Russo I not only alleged the same theory of municipal liability, but also sought to

recover for the same constitutional deprivations alleged in this matter.

---

[9]      While the Court recently entered final judgment in these matters, as noted above, that
judgment erroneously fails to enter judgment for Hartford on Plaintiff's claims in Russo
I.  Once this judgment is corrected, a final judgment will have entered for Hartford.  It
cannot be disputed, however, that the entry of summary judgment constitutes the
requisite judgment for purposes of res judicata.  Mitchell v. National Broadcasting
Company, et al., 553 F.2d 265, (2d. Cir. 1977), citing Hubicki v. ACF Industries, Inc.,
484 F.2d 519, 524 (3d Cir. 1973) (summary judgment is a final judgment on the merits
sufficient to raise defense of res judicata in subsequent actions between the parties).

The protected conduct for which Plaintiff alleges he was retaliated against by Hartford officers in both suits is the same, consisting of: (1) his Pope Park involvement; (Russo I, Amended Complaint dated August 29, 2001 ("Russo I Complaint"), ¶¶ 14-21; Russo II, Sixth Amended Complaint dated February 11, 2003 ("Russo II Complaint"), ¶¶ 25-26; Jury Charge, Section XXI, p. 29); and (2) his corruption allegations (Russo I Complaint, ¶ 22; Russo II Complaint, ¶¶ 12-16; Jury Charge, Section XXI, p. 29).  In addition, the retaliatory conduct asserted in Russo I consists of the same employment actions asserted in this matter.  These actions consist of the following: (1) the October 30, 1997 phone call from Croughwell (Russo I Complaint, ¶ 23; Russo II Complaint, ¶¶ 32-35; Jury Charge, Section XXI, p. 28); (2) the decision to deny Plaintiff sick leave in January 1997 resulting in his being disciplined for being absent without leave (Russo I Complaint, ¶¶ 9-10;[10] Russo II Complaint, ¶¶ 18-20; Jury Charge, Section XXI, p. 28)[11]; and (3) the refusal to provide Plaintiff with a key to his office in the Spring of 1997 (Russo I Complaint, ¶ 9; Russo II Complaint, ¶ 22;[12] Jury Charge, Section XXI, p. 28.[13]

---

[10]    Plaintiff's counsel asserted to this Court that his claim for retaliatory discipline resulting from his absence without leave in January of 1997 was adequately pled by paragraphs 9-10 of the Russo I Complaint.  Tr., 5th Day, pp. 153:20-154:4.

[11]    While the alleged lockout of Plaintiff in the spring of 1997 is only specifically cited in the Russo II Complaint, counsel for Plaintiff  asserted to the Court that the allegations of harassment in Paragraph 9 of the Russo I Complaint adequately pled the lockout in the spring of 1997 for purposes of proceeding against Croughwell on this claim at trial.  Tr., 5th Day, pp. 152:21-153:10.

[12]    While Russo II does not specifically reference the November 4, 1997 drug test, the Court had properly determined during trial that Plaintiff could not recover against

In light of the above, it cannot be disputed that Plaintiff's <u>Monell</u> claim in <u>Russo II</u> utilizes the same theory of municipal liability asserted in <u>Russo I</u> to recover for the same constitutional deprivations asserted in <u>Russo I</u>. Because Plaintiff's <u>Monell</u> claim was previously pursued and adjudicated on the merits in <u>Russo I</u>, Plaintiff is estopped from recovering against Hartford in this matter.

> **3.    To The Extent The Court Finds That Plaintiff's Claim Herein Was Not Asserted Or Otherwise Pursued In <u>Russo I</u>, It Clearly Could Have Been Because It Relies Upon The Same Facts, Transactions And Evidence As Russo I.**

Hartford is unaware of any surviving claim pled in <u>Russo II</u> and presented to the jury which was not previously asserted and pursued in <u>Russo I</u>.  To the extent such claim exists, however, it clearly could have been asserted or pursued in <u>Russo I</u>, because all of the transactions and events affecting municipal liability in <u>Russo II</u> occurred prior to the filing of <u>Russo I</u> on November 7, 1997.[14]  In fact, all of the transactions and events at issue during the trial of Plaintiff's <u>Monell</u> claim in <u>Russo II</u>, including: (1) the incidents constituting Plaintiff's protected

---

Hartford for his drug test due to its prior adjudication in <u>Russo I</u>.

[13]    While Plaintiff's <u>Russo II</u> Complaint references conduct occurring after the filing of <u>Russo I</u>, all claims arising from such conduct were either dismissed by the Court or abandoned by Plaintiff.

[14]    While Plaintiff served the suspension arising from his January 1997 absence without leave after the filing of <u>Russo I</u>, Exhibit 118 conclusively establishes that Plaintiff was aware of such 2 day suspension by at least October 27, 1997, before such filing. Tr., 5th Day, p. 153:19-154:18 (Plaintiff's counsel acknowledging that Plaintiff marked AWOL in January 1997 pled in <u>Russo I</u> and that Plaintiff was aware of 2 day suspension in October 1997).

conduct; (2) the incidents constituting the alleged retaliatory employment actions; and (3) the incidents of Hartford's deliberate indifference and failure to train; were referenced in the Russo I Complaint.  Thus, it cannot be disputed that any claim which was not specifically asserted or pursued in Russo I could have been asserted or pursued therein because all of the facts essential to Russo II were present in Russo I, which relied upon the same series of transactions and required the same evidence to establish liability.

While Plaintiff may have offered evidence at trial in support of his claim of municipal liability in Russo II that he did not present in support of such claim in Russo I, this does not save Plaintiff's Monell claim.  It is well established that the doctrine of res judicata bars all claims in a subsequent matter which were, or could have been, asserted in a prior matter regardless of whether such claims were actually asserted in the prior matter or were otherwise pursued to the fullest possible extent through the introduction of all relevant evidence.  As the United States Court of Appeals for the Second Circuit has noted:

> Simply put, the doctrine of res judicata provides that when a final judgment has been entered on the merits of a case, it is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.

SEC v. First Jersey Sec., Inc., 101 F.3d 1450, 1463 (2d. Cir. 1996).

Plaintiff in this matter has, or could have, previously asserted the Monell claim in Russo I. As Plaintiff's claim in Russo I was adjudicated on the merits in Hartford's favor, Plaintiff is barred by the doctrine of res judicata from recovering under the Monell claim in Russo II.

Hartford should therefore be granted judgment as a matter of law on its Ninth Affirmative Defense asserting Res Judicata.

### III.    HARTFORD'S MOTION FOR A NEW TRIAL UNDER RULE 59(a)

In the event the Court denies Hartford's Rule 50(b) motion, it should nonetheless order a new trial pursuant to Rule 59(a) because its charge to the jury that the Hartford Police Chief was a final policy maker for purposes of training Police Chiefs as to the proper treatment of subordinate employees was erroneous and completely unsupported by the record. Moreover, to the extent the final policy maker charge was correct, the jury's verdict upon the evidence presented establishes that it either misunderstood the charge as permitting the imposition of municipal liability solely upon the finding of retaliatory conduct by Croughwell and/or ignored pertinent provisions of the charge instructing to the contrary. In so doing, the jury imposed respondeat superior liability upon Hartford in contravention of Monell.

A party is entitled to a new trial pursuant to Rule 59(a) if "the trial court is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." Lightfoot v. Union Carbide Corp., 110 F.3d 898, 911 (2d Cir. 1997) (quoting Hygh v. Jacobs, 961 F.2d 359, 365 (2d Cir. 1992)). Unlike a judgment as a matter of law, "a new trial may be granted even if there is substantial evidence to support the jury's verdict." Song v. Ives Labs, Inc., 957 F.2d 1041, 1047 (2d Cir. 1992). The trial judge hearing the motion for a new trial "is free to weigh the evidence himself and need not view it in the light most favorable to the verdict winner." Id. (quoting Bevevino v. Saydjari, 574 F.2d 676, 684 (2d. Cir. 1978)).

The Court instructed the jury that the Hartford Chief of Police was a final policy maker for purposes of training Hartford officers as to the proper treatment of employees who exercise their First Amendment right.  Tr. 6th Day, pp. 7:17-9:9; Jury Charge, Section XXIV, p. 37.  While Hartford objected to this charge, none of the parties drew the Court's attention to the possible need under the record to distinguish between final policy makers for purposes of training officers below the rank of Chief and those for purposes of training the Chief. Tr., 6th Day, p. 13:7-17.  A comprehensive review of the record, however, reveals that it provides no basis for any finding that the Hartford Police Chief was a final policy maker for purposes of training Police Chiefs as to the proper treatment of employees who exercise their First Amendment rights.

Croughwell never testified as to who dictated the training he as Police Chief received, or even what that training consisted of.  Croughwell's testimony on the subject of training related only to whether he controlled, or was otherwise responsible for, the training of his subordinates on certain matters.  Tr., 3rd Day, pp. 41:20-42:8 (testifying as to training offered to subordinates), 44:16-46:15 (same), 191:20-197:9 (testifying about training provided to subordinates, including training mandated by POST or the City Manager), 217:25-218:7 (training mandated by City Manager provided to subordinates), 218:8-23 (as Police Chief he did not possess the authority to train officers to violate policies enacted by the City Manager, ordinances enacted by Hartford, or the provisions of the Charter).  The record therefore cannot support any finding that the Police Chief was ultimately responsible for dictating his own training.[15]  As Plaintiff pursued municipal

---

[15]    Hartford likewise maintains that the record also provides no support for the Court's ruling that the Police Chief was a final policy maker for purposes of training his

liability for the failure to train Croughwell, it was his burden to identify the municipal official who possessed final policy making authority over training the Police Chief.

As Plaintiff introduced no evidence that Croughwell was a final policy maker for purposes of either the allegedly retaliatory personnel actions[16] or for the training of Police Chiefs on the treatment of subordinates, Plaintiff has failed to prove that any constitutional deprivations suffered at the hands of Croughwell were caused by the municipality itself. The jury's verdict has therefore imposed respondeat superior liability against Hartford, a result clearly prohibited by Monell. A new trial is therefore required.

Moreover, even if the determination that the Police Chief was a final policy maker for purposes of training Police Chiefs on the proper treatment of officers who exercise their First Amendment rights is correct, the verdict mandates a new trial. The paucity of evidence supporting the verdict suggests that the contents of the charge pertaining to Croughwell's dual role as policy maker for training purposes and purported tortfeasor confused the jury to the point where they misapplied the facts to the law.

---

subordinates on the proper treatment of employees who exercise their First Amendment rights. Tr., 3rd Day, pp. 178:4-191:15, 193:3-196:11 (City Manager directed him to provide harassment training), 217:25-218:10 (that harassment training addressed harassment of individuals who exercised First Amendment rights); Tr., 3rd Day, pp. 178:4-191:15; Exhibits 202, 203, 204, 206, 207.

[16]     See Pembaur v. City of Cincinnati, 475 U.S. 469, 483-84 (1986) (custom or policy necessary to impose municipal liability can be found in actions taken or decision made by government officials responsible for establishing policy in the particular area of business in which the challenged conduct arises); Jeffes v. Barnes, 208 F.3d 49, 57-68 (2d. Cir 2000) (same).

The lack of evidentiary support for any finding of municipal deliberate indifference or causation suggests that the jury somehow concluded that Croughwell's dual role mandated the imposition of municipal liability upon determination that he had unlawfully retaliated against Plaintiff. It appears almost certain that the jury reached the seriously erroneous result wherein Hartford was held liable for the actions of Croughwell based solely upon the fact that it employed him.

That the jury could become confused is understandable under the circumstances, as it was charged, in effect, that it could impose municipal liability where it found: (1) that Croughwell's personnel actions as Chief of Police violated Plaintiff's constitutional rights (Jury Charge, Section XXI); and (2) that the unconstitutional act of Croughwell "was the result of a 'deliberate' or 'conscious choice' made by" the Chief of Police (Jury Charge, Section XXIV, pp. 36-37). While the remainder of the charge did attempt to clarify that it was the Chief of Police's failure to train which is the basis for municipal liability, the jury's imposition of a verdict against Hartford on the evidence presented almost conclusively establishes that it misunderstood, or ignored, these provisions of the charge. Hartford is therefore entitled to a new trial regardless of whether the Court's finding that the Chief of Police was a final policy maker for purposes of training himself was correct.

Any award of a new trial as to municipal liability for the actions of Croughwell mandates a new trial as to municipal liability for the actions of Kenary. Because the Verdict Form did not require jurors to specify the particular constitutional deprivation(s) for which they imposed

municipal liability, it is unclear whether Hartford was ever determined to have been a proximate cause of the retaliatory actions of Kenary.[17]  Further, even if we assume the jury found that Hartford's failure to train caused or permitted Kenary's retaliatory acts, there is no way to assess from the Verdict Form the amount of compensatory damages, if any, the jury found was proximately caused by Hartford's failure in that instance.

As the evidence introduced at trial and the contents of the Jury Charge establish that the jury improperly imposed respondeat superior liability upon Hartford in contravention of Supreme Court precedent, the jury's verdict is clearly erroneous and represents a miscarriage of justice.  A new trial is therefore warranted.

## IV.     HARTFORD'S MOTION FOR REMITTITUR OR NEW TRIAL ON DAMAGES PURSUANT TO RULE 59(e).

If the Court denies Hartford's Rule 50(b) and Rule 59(a) Motions, it should reduce the amount of the $350,000.00 compensatory damage award assessed against Hartford to either $1.00, or, at most, $15,000.00, as those damages are necessarily duplicative and/or grossly excessive.

### A.     The Jury Award Against Hartford Must Be Reduced To A Nominal Award Because Hartford's Failure To Train Cannot Have Proximately Caused An Amount of Compensatory Damages Greater Than That Caused By The Actions of Croughwell And Kenary.

---

[17]     Despite a request from Hartford that the Verdict Form require the jury to specify which incidents of misconduct it attributed to Hartford's failure to train, the Verdict Form submitted to the jury did not do so.  See Section H.10, City of Hartford's Supplemental Verdict Form dated March 11, 2005; Section H.10, City of Hartford's Supplemental Verdict Form dated February 25, 2005.

"A basic principle of compensatory damages is that an injury can be compensated only once." Bender v. City of New York, 78 F.3d 787, 793 (2d Cir. 1996). "[O]nce an award of damages has been determined for an injury, there may not be additional compensatory damages for that same injury from two or more defendants." Id.; See also Gagnon v. Ball, 696 F.2d 17, 19 n.2 (2d Cir. 1982) (where defendants "are liable for causing the same injury" there should be one award of compensatory damages); McFadden v. Sanchez, 710 F.2d 907, 914 n.6 (2d Cir. 1983) (recognizing that when awarding compensatory damages the verdict form should simply ask about the total "amount of compensatory damages, if any, the plaintiff is entitled to receive.")

In this case, Hartford's liability for damages is derived from the actions of Croughwell and Kenary, as it arises solely from causing or permitting Croughwell and Kenary to act in the fashion they did (through the existence of a custom or policy).[18] It follows that where a municipality's liability arises solely from causing or permitting its employees to deprive persons of their constitutional rights, its actions can never constitute the sole proximate cause of any injury arising from such deprivation. In such circumstances, the misconduct of the employees must always be at least a proximate cause of all compensable injuries and losses suffered by a

---

[18]    This might not be the case had some of the defendants escaped liability pursuant to a qualified immunity defense. In such a case, Hartford could theoretically have been liable even though the individual defendants escaped liability. That did not happen in this case. Rather, only Croughwell and Kenary were found to have violated Plaintiff's rights. None of the other defendants were granted qualified immunity, but instead were either dismissed from the case pre-trial or were found not to be liable by the jury. As such, any liability of the City must necessarily arise solely from the actions of Croughwell and Kenary.

plaintiff.  Municipal liability for damages resulting from such injuries and losses therefore can not exceed the liability of the individual employees whose actions caused the injury.

Hartford can therefore only be responsible for those damages arising from injuries and losses proximately caused by Croughwell and Kenary.  As the jury determined that Croughwell and Kenary combined only caused Plaintiff to suffer injuries and losses warranting $45,000.00 in compensatory damages, that would be the most amount of compensatory damages that Hartford's failure to train could have proximately caused Plaintiff to suffer.  However, the jury also found that the award against Hartford was not duplicative, either in whole or in part, of the award as against Croughwell and Kenary.  Because of this finding, Hartford can only be liable for nominal damages of $1.00, as the award against Croughwell and Kenary necessarily fully compensates Plaintiff for all injuries and losses proximately caused by Hartford.[19]

This is borne out in a line of cases discussing the bifurcation of actions brought against individual defendants and municipalities under Section 1983.  For example, in Amato v. City of Saratoga Springs, 170 F.3d 311 (2d Cir. 1999) the court addressed the question of whether a claim against the City should be dismissed as moot after the jury found against the individual defendants in a bifurcated trial.  The court noted that the plaintiff "would not be permitted to re-litigate the issue of compensable injury in the trial against the City."  Id. at 317.  The court further recognized that in an action against the City the plaintiff would be able to collect, at most,

---

[19]    The jury found no liability for any of the other individual defendants.  As such, the Hartford's liability can only be predicated on the liability of Croughwell and Kenery and not any of the other defendants.

nominal damages of $1.00.  Id.  Nonetheless, the court refused to dismiss the case against the

City in recognition that "a litigant is entitled to seek symbolic vindication from the municipality

as well as the individual official for violation of constitutional rights."  Id. at 321.  See also

Sanchez v. City of Riverside, 596 F.Supp. 193 (C.D.Cal. 1984) (dismissing the plaintiff's claims

against the City after the jury awarded him full compensation in a bifurcated trial against the

individual defendants because the claims against the City alleged no wrong that was different

from that alleged against the individual defendants and all compensable damages resulting from

the individual defendants had already been awarded).

     As any award of damages against Hartford is duplicative of the full and fair compensation

Plaintiff received from Croughwell and Kenary, the $350,000.00 compensatory damage award

must be reduced to nominal damages of $1.00.

     **B.    To The Extent The Court Finds That Plaintiff's Recovery Against Hartford Is Not Limited To Nominal Damages, The Jury's Award Of $350,000.00 Should Nonetheless Be Reduced Because It Is Excessive And Shocks the Conscience.**

     If the Court finds that Plaintiff is entitled to more than nominal damages against Hartford,

the $350,000.00 verdict should nonetheless be reduced to $15,000.00 because the former is

grossly excessive.  It is well established that a jury may award compensatory damages including

damages for emotional distress in Section 1983 cases.  See e.g., Miner v. City of Glens Falls, 999

F.3d 655, 622 (2d Cir. 1993).  An award of damages for compensatory damages, however, should

be set aside as excessive when it "shock[s] the judicial conscience and constitute[s] a denial of

justice."  Hill v. Airborne Freight Corp., 212 F.Supp.2d 59, 72 (E.D.N.Y. 2002) (citing Kirsch v.

Fleet Street, Ltd., 148 F.3d 149, 165 (2d Cir. 1998)).  In determining if an award of compensatory

damages is excessive, the court should "examine the damage awards in other cases involving

similar facts and circumstances and compare them to the current case."  Ikram v. Waterbury

Board of Education, 1997 WL 597222 at *3 (D. Conn. Sept. 9, 1997) (citing Scala v. Moore

McCormack Lines, Inc., 985 F.2d 680, 684 (2d Cir. 1993)).

 In the current case, the jury awarded Plaintiff compensatory damages against Hartford in

the amount of $350,000.00.  In contrast, the jury awarded compensatory damages against the

individual defendants in the amount of $22,500.00 each.  It is unclear from the jury verdict slip

the nature of the damages allocated against Hartford, but it appears that it was an award for pain

and suffering because the amount of lost pay and other economic damages in this case were

minimal,[20] and more than covered by the award against the individual defendants.

 Damages for pain and suffering are compensatory in nature.  "There must therefore be

some evidence of the magnitude of the injury to ensure that the award is not punitive."  Binder v.

---

[20] Plaintiff testified that he spent about $3,000.00 on counseling with Dr. Hall (in 1997)
and about $3,000.00 on Dr. Goodwin (in 2002). Tr., 1st Day, pp. 137:3-138:9.  Plaintiff
also testified that he lost wages when he did not return to work on October 29, 2000
through February 19, 2002.  Tr., 1st Day, pp. 139:13-20; 142:9-11.  He further testified
that he lost about $1,000.00 a week in regular pay and $10,000.00 a year in overtime
during that period.  Tr., 1st Day, p. 142:13-23.  Mr. Russo acknowledged the inaccuracy
of these numbers on cross examination (including the fact that he was only responsible
for a $10.00 co-pay on Hall and Goodwin visits, that he received $77,000.00 in 2000
alone from working at Deleon Funeral Home, and that his actual earnings in 1996 and
1997 were below the suggested $62,000 a year suggested by him).  Tr., 1st Day, pp.
71:17-78:18.  In fact there can be little doubt that no reasonable juror could have
awarded Mr. Russo more than the $45,000.00 in economic compensatory damages it
awarded Mr. Russo from Croughwell and Kenary.

Long Island Lighting Co., 847 F.Supp. 1007, 1027-28 (E.D.N.Y. 1994). "[T]he mere fact that a constitutional deprivation has occurred does not justify the award of such damages; the plaintiff must establish that [he] suffered an actual injury caused by the deprivation." Patrolmen's Benevolent Association of the City of New York v. The City of New York, 310 F.3d 43, 55 (2d Cir. 2002) (citing Carey v. Piphus, 435 U.S. 247, 263-64, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978)). "A plaintiff's subjective testimony of emotional injury, standing alone, is generally insufficient to sustain an award of emotional distress damages." Id. The court may reduce an award where there is "sparse evidence with respect to the magnitude and duration of any emotional injury or mental distress" in order to "guard against such speculative damages." McIntosh v. Irving Trust Co,, 887 F.Supp. 662, 665 (S.D.N.Y. 1995). See also, Reiter v. Metropolitan Transportation Authority of New York, 2003 WL 22271223 (S.D.N.Y. Sept. 30, 2003) (reducing an award from $140,000 to $10,000 because of the lack of evidence of emotional distress).

In support of his claim for compensatory damages for emotional distress, Plaintiff offered little testimony. The testimony consisted of his own statements that in 1997 he sought psychological counseling from Dr. Mark Hall. Tr., 2nd Day, pp. 137:6-10, 167:9-20. In addition, he indicated that he saw a Dr. Goodwin, but established that this was not until 2002. Tr., 2nd Day, pp. 137:22-138:2; Tr., 3rd Day, p. 78:12-14. Neither doctor testified and Plaintiff did not testify as to the contents of any of those counseling sessions. Plaintiff's sister did testify that on an unspecified date she went to his apartment and he was "really upset and seemed very serious." Tr., 4th Day, p. 7:14. She later stated that on that same date he was "upset and very, very

worried." Tr. 4th Day, p. 8:17. She then indicated that after this incident he "was very stressed and very nervous." Tr., 4th Day, p. 15:10.

Plaintiff's testimony was completely devoid of references as to the severity of his emotional distress and/or the extent and duration of such distress. Plaintiff did not allege any physical manifestations of his emotional distress. He stated that he sought psychological counseling in March 1997, but did not elaborate as to the reasons for the counseling. On the other hand, his testimony was replete with other factors that were causing his, or could cause a reasonable person, emotional distress. For example, Plaintiff was battling an active addiction to narcotics that had lasted over several years. Tr., 1st Day, pp. 165-66. During the time in question, Plaintiff was taking anywhere between twenty (20) to forty (40) Tylenol with Codeine pills per day. Also during that time, Plaintiff was facing criminal charges that could result in incarceration or the loss of his job. Further, Plaintiff's wife had attempted to commit suicide several times, had become violent and assaulted him and was committed to a mental hospital during the same time period. Tr., 1st Day, pp. 168-69, 171.

A plaintiff is not required to provide medical testimony of physical symptoms of emotional distress. Miner v. City of Glens Falls, 999 F.2d 655, 663 (2d Cir. 1993) Plaintiff, however, must show some evidence that he suffered an actual injury. Patrolmen's Benevolent Association of the City of New York, 310 F.3d at 55 (citing Carey, 435 U.S. at 263-64, 98 S.Ct. 1042). Courts have routinely reduced jury awards when the evidence of emotional distress lacked details of the severity, duration or consequences of plaintiff's suffering. Awards to plaintiffs who

have provided no more than the "garden-variety mental anguish claims", have generally been in the range of $5,000 to $30,000.  Bick v. City of New York, 1998 WL 190283 at S.D.N.Y. Apr. 21, 1998).  See e.g. Hill v. Airborne Freight Corp., 212 F.Supp.2d 59, 73-74 (E.D.N.Y. 2002) (comparing case "entailing a plaintiff's general testimony of humiliation and stress, without medical corroboration" where damages have "generally been awarded in the range of $5,000 to $100,000"); Borja-Fierro v. Girozente Vienna Bank, 1994 WL 240360 at *3-4 (S.D.N.Y. May 27, 1994) (in cases where testimony about the alleged distress was "brief, not particularly strong and included a single reference to a visit to a psychologist" the court found "no case based on similar facts in which an award of over $15,000 was upheld."  The court further noted that "in the vast majority of cases, courts found awards of $5,000 to $10,000 to be appropriate."); McIntosh, 887 F.Supp. at 664-65 (award reduced from $200,000 to $20,000 where plaintiff's testimony regarding the duration and extent of his injuries was sparse and he produced no evidence of medical or psychological treatment); Trivedi v. Cooper, 1996 WL 724743 (S.D.N.Y. Dec. 17, 1996) (reducing compensatory damages award in a discrimination and retaliation case from $700,000 to $50,000 because plaintiff's testimony consisted of vague complaints of emotional distress); Bracey v. Board of Education of City of Bridgeport, 368 F.3d 108 (2d Cir. 2004) (finding compensatory damages award in the amount of $250,000 for violation of an employee's First Amendment rights was excessive under Connecticut law); Mihalick v. Cavanaugh, 26 F.Supp.2d 391 (D.Conn. 1998) (remittur of damages from $3,000,000 to $150,000 was warranted based on lack of evidence of emotional distress).

Plaintiff has provided no more than the "garden-variety" emotional distress claim. He presented little evidence of emotional distress and only vague testimony that he sought psychological counseling for about twenty (20) sessions starting in March 1997 for unspecified reasons. In contrast, the evidentiary record suggests that Plaintiff's personal life, including his battle with drug addiction, his pending arrest and prosecution on fraud charges, and his mentally ill spouse, were causing him significant emotional distress. An award of $350,000.00 of compensatory damages under these circumstances is excessive and shocking to the conscience.

In fact, the award's grossly excessive nature suggests that the jury disregarded the Court's instruction and awarded punitive damages against the City of Hartford in violation of established law. See City of Newport v. Facts Concerts, Inc., 453 U.S. 247 (1981) (punitive damages are not recoverable against municipalities for alleged violations of § 1983). The risk that this award represents punitive damages becomes more apparent when reviewed in light of the inflammatory nature of the hearsay evidence Plaintiff introduced in purported support of his retaliation and failure to train claims (Croughwell testimony pertaining to the Spada grand jury; Croughwell, Russo, Kline and Glasser testimony as to the FBI investigation into HPD corruption and the violations of certain women's civil rights; the Durham testimony as to the inadequacies of the HPD investigation into the Pope Park murder; and the Russo, Kline and Glasser testimony regarding the allegations against Lawlor and Lyons).

In any event, this is the type of speculative damages that the court should be particularly vigilant in guarding against. A search of similar cases indicates that most damage awards for this

type of garden-variety injury are in the range of $5,000 to $20,000.  As such, Hartford requests

that if the Court fails to enter judgment for Hartford or order a new trial, that it grant remitittur of

damages to an amount of no greater than $15,000.00 or order a new trial on damages.

**V.**     **CONCLUSION**

For all the foregoing reasons, Hartford respectfully requests the rulings and relief

specified herein.

**DEFENDANT,**
**CITY OF HARTFORD**

By_____
　　　　John P. Shea, Jr.
　　　　Federal Bar CT 17433
　　　　Sabia & Hartley, LLC
　　　　190 Trumbull Street, Suite 202
　　　　Hartford, CT 06103
　　　　Telephone: 860-541-2077
　　　　Facsimile: 860-713-8944
　　　　Its Attorney

## CERTIFICATION

I hereby certify that a copy of the foregoing was delivered by facsimile and United States mail, postage prepaid, this 14th day of April, 2005 to:

Attorney Erin O'Neil
41A New London Turnpike
Glastonbury, CT 06033

Norman A. Pattis, Esq.
649 Amity Road, P.O. Box 280
Bethany, CT 06524

Helen Apostolidis, Esq.
Corporation Counsel's Office
550 Main Street
Hartford, CT 06103

Charles L. Howard, Esq.
Gregg Peter Goumas, Esq.
Derek L. Mogck, Esq.
Shipman & Goodwin, LLC
One American Row
Hartford, CT 06103

Chambers Copy:
The Honorable Janet C. Hall
United States District Court
915 Lafayette Blvd.
Bridgeport, CT 06604

_____
John P. Shea, Jr.

E:\WPDOCS\City of Hartford\Russo\Rule 50\Rule 50.mol.MASTER.wpd