UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| NICHOLAS RUSSO, | : | |
| Plaintiff | : | CIVIL ACTION NOS. |
| v. | : | 3-97-cv-2380 (JCH) (lead case) |
| | : | 3-00-cv-1794 (JCH) |
| CITY OF HARTFORD, et al. | : | 3-00-cv-2382 (JCH) (closed) |
| Defendants. | : | |
| | : | MARCH 2, 2006 |

**RULING ON DEFENDANTS' MOTIONS FOR JUDGMENT AS A MATTER OF LAW, FOR A NEW TRIAL, AND FOR REMITTUR OR A NEW TRIAL ON DAMAGES [3:97CV2380[1] Doc. No. 627 & 3:00CV1794 Doc. No. 221 ]**

## I.    INTRODUCTION

This litigation involves three federal civil rights actions brought pursuant to 42 U.S.C. § 1983 by the plaintiff, Hartford Police Detective Nicholas Russo, against Hartford police officers and supervisors, the Hartford Police Union and Union officers, and the City of Hartford.  Russo alleged various federal constitutional and state law violations arising out of events preceding and surrounding his arrest on December 16, 1997, and his subsequent suspension from his police duties.  Russo filed three related lawsuits, Russo v. City of Hartford, et al., 3:97cv2380 (JCH) ("Russo I"); Russo v. Bailey, et al., 3:00cv1794 (JCH) (Russo II); and Russo v. Marquis, et al., 3:00cv2382 (JCH) (Russo III), which this court consolidated on March 12, 2001.

The court will not recount the entire procedural history of this action, assuming the reader's familiarity with the case, which is reflected in hundreds of pleadings and trial and conference transcripts.  As trial approached, the claims remaining were First Amendment retaliation in violation of 42 U.S.C. § 1983 against members of the Hartford

---

[1]   The number given for each document reflects the document number in the case under which the document was filed.  All subsequent document numbers will be to Case No. 97-cv-2380, unless they are followed by a cite to Russo II, which refers to Case No. 00-cv-1794.

Police Department ("HPD"), Joseph Croughwell, Jeffery Flaherty, David Kenary, Daryl K. Roberts, Christopher Lyons, and Robert Lawlor; and a <u>Monell</u>[2] claim against the City of Hartford ("City").

Following an eight day trial, the jury found in favor of Russo against defendants Joseph Croughwell, David Kenary, and the City. It awarded compensatory damages against Croughwell in the amount of $22,500.00, against the Kenary in the amount of $22,500.00, and against the City of Hartford ("the City") in the amount of $350,000.00. It also awarded punitive damages of $75,000.00 against Croughwell and $100,000.00 against Kenary. It returned verdicts in favor of the remaining defendants.

Moving pursuant to Fed.R.Civ.P. 50 and 59, defendants Croughwell, Kenary, and the City now seek to have the verdicts against them reversed or vacated, or to have the damage awards against them reduced. Croughwell and Kenary have asserted 13 grounds for their Rule 59 Motion and 10 grounds for their Rule 59 Motion. Individual Defs.'s Renewed Mot. [Doc. No. 627].

The City moves pursuant to Rule 50 to amend the judgment to reflect the summary judgment for the City on all then-remaining claims in <u>Russo I</u>. It also moves pursuant to Rule 50 for judgment as a matter of law on the following grounds: the verdict is unsupported or contradicted by the trial evidence and is barred by the doctrine of res judicata. Alternatively, the City moves pursuant to Rule 59(a) based on the court's error in finding that Croughwell, as the HPD Chief, was a final policymaker

---

[2] <u>Monell v. Dep't of Social Svcs.</u>, 436 U.S. 658 (1978).

regarding officer training[3] and the jury improperly basing its finding against the City on respondeat superior.  Finally, it moves to reduce the damage award against it.

## II.    STANDARDS

### A.    Motion for Judgment as a Matter of Law

Rule 50(b) of the Federal Rules of Civil Procedure allows for the entry of judgment as a matter of law if a jury returns a verdict for which there is no legally sufficient evidentiary basis.  See Fed. R. Civ. P. 50.  The standard under Rule 50 is the same as that for summary judgment:  A court may not grant a Rule 50 motion unless "the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable [persons] could have reached."  This Is Me, Inc. v. Taylor, 157 F.3d 139, 142 (2d Cir. 1998) (citation and internal quotation marks omitted).  Thus, in deciding such a motion, "the court must give deference to all credibility determinations and reasonable inferences of the jury . . . and it may not itself weigh the credibility of the witnesses or consider the weight of the evidence."  Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp., 136 F.3d 276, 289 (2d Cir. 1998) (citations omitted).  In short, the court cannot "substitute its judgment for that of the jury."  LeBlanc-Sternberg v. Fletcher, 67 F.3d 412, 429 (2d Cir. 1995) (citations omitted).  Rather, judgment as a matter of law may only be granted if:

---

[3]  In its Motion, the City states that the court erred in charging the jury that Croughwell, who was the Chief, was the final "policy maker for purpose of training Hartford Police Chiefs; . . . ."  Def. City's Mot. (Doc. No. 221) (Russo II) at 1.  However, the Jury Charge states that Croughwell was a final policy maker "with respect to the training of police officers."  Jury Charge § XXIV at 37.

> (1)    there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or
>
> (2)    there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded persons could not arrive at a verdict against it.

Galdieri-Ambrosini, 136 F.3d at 289 (quoting Cruz v. Local Union No. 3 of the Int'l Bhd. of Elec. Workers, 34 F.3d 1148, 1154 (2d Cir. 1994)) (internal quotation marks omitted); see also Luciano v. Olsten Corp., 110 F.3d 210, 214 (2d Cir. 1997).

Moreover, "weakness of the evidence does not justify judgment as a matter of law; as in the case of a grant of summary judgment, the evidence must be such that 'a reasonable juror would have been compelled to accept the view of the moving party.'" This Is Me, Inc., 157 F.3d at 142 (quoting Piesco v. Koch, 12 F.3d 332, 343 (2d Cir. 1993)). The court "must view the evidence in the light most favorable to the party in whose favor the verdict was rendered, giving that party the benefit of all reasonable inferences that the jury might have drawn in his favor." Norton v. Sam's Club, 145 F.3d 114, 118 (2d Cir. 1998) (citation omitted); see also Mickle v. Morin, 297 F.3d 114, 120 (2d Cir. 2002) (court must draw all reasonable inferences in favor of the non-moving party). Additionally, in making its determination, the court "'must disregard all evidence favorable to the moving party that the jury is not required to believe.'" Mickle, 297 F.3d at 120 (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 151 (2000)). Thus, "[a] party seeking to overturn a verdict based on the sufficiency of the evidence bears a very heavy burden." Norton, 145 F.3d at 118.

### B.    Motion for New Trial

Under Rule 59, a new trial "'should be granted when, in the opinion of the district court, the jury reached a seriously erroneous result or . . . the verdict is a miscarriage of justice.'" DLC Mgmt. Corp. v. Town of Hyde Park, 163 F.3d 124, 133 (2d Cir. 1998) (quoting Song v. Ives Labs., Inc., 957 F.2d 1041, 1047 (2d Cir. 1992)).  "A new trial may be granted, therefore, when the jury's verdict is against the weight of the evidence." Id. This standard differs from the Rule 50 standard in two significant ways:

> Unlike judgment as a matter of law, a new trial may be granted even if there is substantial evidence supporting the jury's verdict.  Moreover, a trial judge is free to weigh the evidence [herself], and need not view it in the light most favorable to the verdict winner.

Id. at 134 (citation omitted).  However, "a court should rarely disturb a jury's evaluation of a witness's credibility."  Id.  "'A motion for a new trial ordinarily should not be granted unless the trial court is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice.'"  Caruolo v. John Crane, Inc., 226 F.3d 46, 54 (quoting Atkins v. New York City, 143 F.3d 100, 102 (2d Cir. 1998)).

### C.    Motion to Amend or Alter the Judgment

In addition to the provision under Fed. R. Civ. P. 59(a) for a motion for a new trial, "Rule 59(e) provides for the altering or amending of a judgment." Devlin v. Transp. Communications Int'l Union, 175 F.3d 121, 131 (2d Cir. 1999) (citation omitted).  "[D]istrict courts may alter or amend judgment "to correct a clear error of law or prevent manifest injustice." Munafo v. Metropolitan Transp. Authority,  381 F.3d 99, 105 (2d Cir. 2004) (internal citations omitted).  "It is well-settled that Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a

rehearing on the merits, or otherwise taking a 'second bite at the apple.'" <u>Sequa Corp. v. GBJ corp.</u>, 156 F.3d 136,144 (citations omitted). "A district court has broad discretion in determining whether to grant a motion to alter or amend the judgment." <u>Baker v. Dorfman</u>, 239 F.3d 415, 427 (2d Cir. 2000) (citing <u>McCarthy v. Manson</u>, 714 F.2d 234, 237 (2d Cir. 1983) (per curiam)).

## III.    DISCUSSION

### A.    Res Judicata (City's Rule 50(b) Motion)

The City argues that the <u>Russo II</u> <u>Monell</u> claim, as submitted to the jury, was identical to the claim on which the court granted summary judgment in <u>Russo I</u>. The City urges the court to grant it judgment as a matter of law on the <u>Russo II</u> <u>Monell</u> claim, on which claims the jury ruled in Russo's favor. As a matter of law, and based on the record, this court concludes that the <u>Russo II</u> <u>Monell</u> claim is not barred by the doctrine of res judicata.

As a preliminary matter, and despite Russo's argument to the contrary, it is clear to this court that the City's claim that the verdict against it is barred by res judicata was preserved it its original Rule 50(a) motion. <u>See</u> Trial Tr. (3/11/05) at 82:6-83:2 [Doc. No. 619].

The doctrine of res judicata gives preclusive effect to a previous judgment in a separate action. <u>See</u> <u>Bay State HMO Mgmt., Inc. v. Tingley Sys., Inc.</u>, 181 F.3d 174, 177 (1st Cir. 1999) ("For a claim to be precluded, there must be: (1) a final judgment on the merits in an earlier action . . ."); <u>Maharaj v. Bankamerica Corp.</u>, 128 F.3d 94, 97 (2d Cir. 1997) (quoting Restatement (Second) of Judgments § 24(1) (1982)) ("Simply put,

the doctrine states that once a final judgment has been entered on the merits of a case,

that judgment will bar any subsequent litigation by the same parties or those in privity

with them concerning 'the transaction, or series of connected transactions, out of which

the [first] action arose.'").  The summary judgment ruling that the City claims should

preclude the jury's judgment against the City was a ruling that this court issued in one of

the two consolidated cases that went to trial, Russo I.[4]  Even if the ruling referred, as

the City's argument implies, to a claim originally asserted in a different complaint from

that in which the claim presented at trial was asserted, use of the res judicata doctrine

would still be inappropriate here.

　　The court concurs with the reasoning of the First Circuit in Bay State, and finds

that the cases before the court were consolidated for all purposes such that the policies

behind res judicata do not militate in favor of its application here.  See Bay State, 191

F.3d (undertaking a detailed analysis of case law and policies underlying res judicata

and holding that stipulation and order of dismissal of one case should not have

preclusive effect on claims in a case that had been consolidated with it); see also Devlin

---

[4]  The court consolidated the Russo I case with Russo II on November 22, 2000, granting a Motion to Consolidate filed by the defendants in Russo II.  See Doc. No. 55.  At oral argument on the summary judgment motions and motions to strike, all parties agreed that the court should treat the cases numbered 3:97CV2380, 3:00CV1794, and 3:00CV2382 as consolidated.  Oral Argument Re: Summ. J. Mots. Tr., 7:10-7:18, (9/24/04) [Doc. No. 526].  The court has treated all three cases as consolidated essentially since the filing of Russo II and Russo III.

　　Some confusion arose when the District of Connecticut  adopted CM/ECF as its docketing system.  The court mistakenly understood, and so advised the counsel, that the CM/ECF system would require separate copies of pleadings to be docketed in each case.  See Pre-trial Conference Tr. (2/24/05) at 6-7 [Doc. No. 592] (The court subsequently corrected this misunderstanding.)  However, at no time did the court intend to deconsolidate the cases, and counsel again acknowledged at the oral argument on post-trial motions, on January 31, 2006, that the three cases have indeed been consolidated since the court's original orders.

v. Transp. Comm. Int'l Union, 175 F.3d 121 (2d Cir. 1999) (vacating district court's application of res judicata where two cases at issue were both on active docket of same district court judge and remanding for consideration of consolidation).  Although the court recognizes that the present situation differs in some ways from that in Bay State, the policies underlying res judicata are similarly inapplicable here.  The two Russo cases at issue do not involve the type of "cost and vexation of multiple lawsuits" with which res judicata is concerned, given that both cases were already consolidated at the time of summary judgment.  See Bay State at 181-82.  Any claims that Russo may have brought in the 2000 complaint that he could have asserted in the 1997 complaint did not waste judicial resources in the manner pertinent to res judicata, because the two cases have proceeded effectively as a single lawsuit, and the relevant claim initially brought under the 2000 lawsuit could have been brought in an amended complaint in the 1997 suit.  See id.  Finally, although the City argues there is a risk of inconsistent adjudication, see id., this risk and related equitable considerations are more properly addressed under a different doctrine.

The City's res judicata argument is more properly construed as a "law-of-the-case" argument.  See Goodheart Clothing Co., Inc. v. Laura Goodman Enterprises, Inc., 962 F.2d 268, 274 (2d Cir. 1992) (considering applicability of law-of-the-case doctrine where appellant had argued that res judicata should apply based on a prior holding in the same litigation).  Under the law-of-the-case doctrine, courts "generally adhere to [their] own earlier decision on a given issue in the same litigation."  Id. (internal citation omitted).  In contrast to claim preclusion, law-of-the-case doctrine does not bar all matters that could have been decided in earlier proceedings.  Charles Alan

Wright et. al., 18B Federal Practice and Procedure § 4478 at 649-54 (2002).  "Actual

decision of an issue is required to establish the law of the case."  Id.  Moreover, the law-

of-the-case doctrine "directs a court's discretion, it does not limit the tribunal's power."

Arizona v. California, 460 U.S. 605, 618 (1983) (internal citations omitted); see Furlong

v. Shalala, 238 F.3d 227, 235 n.4 (internal citations omitted) ("We understand the 'law

of the case' doctrine to be discretionary."); Wright §4478 at 691.

The Russo II Monell claim, which the court submitted to the jury, does bear

similarities to the Russo I Monell claim, on which the court granted summary judgment.

They are both failure to train claims based on First Amendment retaliation.[5]  However,

the period of time covered by Russo II is later than Russo I.  And, as counsel for the

City acknowledged at the Pre-Trial Conference on February 24, 2005, while both cases

allege a First Amendment retaliation claim and the motivation claimed is generally the

same, the retaliatory acts at issue are different in Russo I and Russo II.  Pre-Trial

Conference Tr. (2/24/05) at 15:16-15:17.  The court granted summary judgment in

Russo I on the basis that Russo had failed to come forward with any evidence to

support the elements of a Monell claim, in particular any evidence of prior situations

similar to Russo's situation.  Ruling on Mots. Summ. J. at 35-39.  [Doc. No. 524]  As set

---

[5]  While the Amended Complaint (Doc. No. 126) in Russo I refers specifically to the right
to privacy, it asserts a cause of action under the First Amendment.  See Am. Compl. [Doc. No.
126], ¶ 1 and Second Count, ¶ 3.  Certainly, by the time of summary judgment, it was clear that
a claim in Russo I against the City was based on failure to train in connection with First
Amendment retaliation.  See Ruling on Motions for Summary Judgment (Doc. 524) at 31 et seq.
Indeed, in the Motion to Consolidate filed in Russo II on behalf all Russo II defendants, counsel
for the City stated:  "The factual allegations contained in this the [Russo II] complaint
encompass the allegations contained in Russo I and expand on the earlier allegations.  To a
large extent, the First and Seventh Counts of this action mirror the First and Seventh counts of
the complaint in Russo I."  Defs.'s Mem. Supp. Mot. Transfer and Consolidate at 2-3 (Doc. No.
56) (Russo II) (emphasis added).

forth in greater detail in Section III.C, infra, Russo did adduce evidence at trial of knowledge on the City's part of the need for training (e.g., testimony concerning the Spada Grand Jury and animosity between the HPD and some of its officers, and federal law enforcement).  Having failed to move for summary judgment, the City cannot now complain that Russo produced such evidence at trial.

A ruling overturning the jury's verdict against the City based on the law-of-the-case doctrine would be manifestly unfair to Russo.[6]  The City had ample opportunity to move for summary judgment on the Russo II Monell claim at the same time it moved for summary judgment on the Russo I Monell claim, and it declined to do so.  Indeed, counsel for the City confirmed at oral argument that his client was not moving for summary judgment on the relevant Russo II claim.  Oral Argument Re: Summ. J. Motions Tr. (Sept. 24, 2004) at 73:12-73:24 [Doc. No. 526].  By making the choice not to move for summary judgment on that claim,[7] the City allowed Russo to avail himself of his right to attempt to prove his claim.  The court will not intervene to allow the City to second-guess its own strategic decision to bring only a partial summary judgment motion in Russo II.[8]

_____

[6]  The analysis in this case does not concern itself with sufficiency of the evidence presented at trial, which the court addresses in Section III.C, infra.

[7]  Even if the City's January 2005 Rule 12(c)) Motion for Judgment on the Pleadings, (Doc. No. 175) (Russo II), which argued that the Russo II Monell claim was barred by collateral estoppel, were to be construed as a making a law-of-the-case argument, that motion is not a substitute for summary judgment and was not filed until approximately four months after the summary judgment ruling and three months after the final Pre-Trial Order was issued.  (Doc. No. 528).  The final deadline for dispositive motions was December 22, 2004, Order (Doc. No. 450).

[8]  The City did file a Motion for Summary Judgment in Russo II, but limited it to Count 8 (Constructive Discharge). (Doc. No. 122) (Russo II).

**B.**     **Jury Charge Regarding Protected Speech (Individual Defendants' Rule 59(a) Motion)**

The individual defendants argue that the court erred in instructing the jury that Russo's speech was protected under the First Amendment.  Whether speech is protected under the First Amendment is a question of law for the court to decide. Ezekwo v. New York City Health & Hospitals Corp., 940 F.2d 775, 781 (2d Cir. 1991) (citing Connick v. Myers, 461 U.S. 138, 148 n.7 (1983)).  This court has previously rejected the defendants' argument that Russo's speech was not so protected.  See Russo v. City of Hartford, 341 F.Supp.2d 85, 96-98 (D.Conn. 2004).  The court finds nothing in the evidence presented at trial that compels a different conclusion, and finds that the jury charge on this issue was consistent with the law.  Jury Charge §XXI at 29.[9] The evidence showed that Russo's statements were motivated by a desire to address matters of public concern.  See Pappas v. Giuliani, 290 F.3d 143, 153 (2d Cir. 2002). Russo testified that he was disgusted by corruption in the Hartford Police Department and testified to having made various statements to further investigation of this corruption.  Trial Tr. (3/7/05) at 84:13-91:2 and 95:5-95:20 [Doc. No. 615].  With regard to his conversation with Steve Kumnick, which the individual defendants have

---

[9]  This charge read in relevant part,

> Mr. Russo claims to have told federal authorities about incidents of corruption within the Hartford Police Department and participated in the investigation of a murder.  I instruct you that both of these instances of speech in which Mr. Russo claims to have engaged are protected speech under the First Amendment.  It is up to you, the jury, to determine whether Mr. Russo did in fact engage in such speech.

Jury Charge, §XXI at 29.

challenged as purely malicious speech, Russo testified that he solicited Kumnick as a potential witness on the issue of police corruption, under a directive from a federal law enforcement agent.  Id. at 120:16-121:6.  The testimony at trial did not establish that his speech was merely malicious, intended to satisfy a personal vendetta, or made with reckless disregard for the truth or falsity of his statements.  See Pickering v. Bd. of Ed., 391 U.S. 563, 574 (1968).  See also Russo, 341 F.Supp.2d at 97-98 (reviewing case law holding that the existence of a second, personal, motive does not render speech unprotected, so long as it the speech also had a broader public purpose).  Therefore, the court denies Croughwell and Kenary's Rule 59 Motion in this regard.

### C.    Challenges to Sufficiency of the Evidence / Verdict Against the Weight of the Evidence (Rule 50(b) and 59(a) Motions by all defendants)

As set forth in the jury charge, the only disputed elements of the First Amendment retaliation claims were (1) deprivation of a constitutional right (in this case, the First Amendment right to free speech), (2) a causal connection between a defendant's conduct and the constitutional deprivation, and (3) that such conduct was the proximate cause of injuries sustained by Russo.  See Jury Charge §§ XVIII-XXIII. To prove the first element, Russo had to establish (1) that he did, as he claimed, tell federal authorities about incidents of corruption within the Hartford Police Department or participated in the investigation of a murder, (2) that, as a result of his protected speech, he suffered adverse employment action, and (3) that Russo's protected speech was a substantial or motivating factor in a defendant's decision to take such action.  As the court charged the jury, a defendant's showing that he had other valid reasons for

taking an adverse employment action is a defense to liability only if he showed that he would have acted on such other reason in the absence of Russo's protected speech. Id. § XXI.

## 1.  Individual Defendants

a.  <u>Chief Croughwell</u>.  The case went to the Jury against Croughwell for First Amendment retaliation in violation of 42 U.S.C. §1983.  There were three adverse employment actions charged:  that Croughwell physically threatened and reprimanded Mr. Russo on October 30, 1997; that Croughwell ordered that Russo be drug tested in November 1997; and that Croughwell suspended Russo for two days in November of 1997.  Jury Charge § XXI at 28.  There was ample evidence on which the jury could support a finding that these actions occurred.  <u>See</u> <u>e.g.</u>, Trial Tr. (3/8/05) at 18:16-18:18, 97:23-98:15; Trial Tr. (3/9/05) at 100:1-100:3.

The issue then becomes whether Russo suffered these actions after, and as a result of, engaging in protected speech.  In that regard, there was substantial evidence of Russo's protected speech.  Russo had written to John Durham, the Deputy United States Attorney for the District of Connecticut, in 1996 concerning tension within the HPD over investigation of some of its officers and failure to investigate crimes.  Trial Tr. (3/7/05) at 95:21-97:8.  He also met with Assistant United States Attorney James Glasser and F.B.I. Special Agent Kevin Kline in early 1997 concerning corruption in the HPD.  <u>Id</u>. at 84:6-85:17.

Further, Russo was involved with the federal task force in the arrest of the man responsible for a murder in Pope Park in Hartford in June of 1997.  <u>Id</u>. at 98:8-108:1.

- 13 -

Despite that arrest by federal authorities, HPD continued its investigation and eventually arrested another man for the same murder.[10]  Russo was vocal in his criticism of the HPD in connection with its investigation of the Pope Park murder, including speaking to Croughwell about it.  Id. at 113:15-114:8.  Indeed, Attorney Durham testified it was a "bone of contention" between the federal task force (of which Russo was a member) and some members of the HPD.  Trial Tr. (3/10/05) at 96:25-97:19.  Russo spoke directly to Croughwell in 1997 on the subject of the HPD investigating the wrong man.  Trial Tr. (3/9/05) at 66:22-67:2.

Finally, there was evidence on which the jury could base its finding that Russo's protected speech was a substantial or motivating factor in the adverse employment actions he suffered.  First, there was evidence that Croughwell knew what Russo was doing as far as his work with the federal law enforcement authorities in connection with investigating corruption in the HPD.  Croughwell talked with AUSA Durham about the harassment Russo was suffering at the hands of fellow officers, Trial Tr. (3/9/05) at 62:2-62:6.  Further, Russo also complained directly to Croughwell in the first half of 1997 on the same subject, and Russo later told Croughwell he was getting no support for his efforts, as part of a federal investigation, in the Pope Park murder.  Id. at 62:17-63:14; 64:13-64:20.  Russo also expressed criticism to, inter alia, Croughwell because the HPD was investigating the wrong man for that murder.  Id. at 68:3-68:8.  Thus, there was ample evidence that Croughwell was aware of Russo's protected speech.

---

[10]  The man arrested on state charges was jailed for four and a half months; eventually, the charges were dropped.

In addition, the jury could infer that Croughwell acted because of that speech. Perhaps most compelling in this regard is the evidence concerning late October/early November.  In addition to his knowledge described above, Croughwell also learned on October 30, 1997, that Russo had approached an investigator in the State's Attorney's Office, Steve Kumnick[11] about working with Russo on the federal investigation of HPD corruption.  Croughwell learned of this from two HPD officers, Lawlor and Lyons, who were possible subjects of the corruption investigation.  Croughwell telephoned Russo while Lawlor and Lyons were in his office.  Russo testified that Croughwell said to Russo, "I have couple of detectives that want to kick your f***ing ass."  Trial Tr. (3/9/05) at 126:11-126:21.  The jury could have found this call was threatening as well as a critical reprimand of Russo's actions in connection with the federal investigation.  See, e.g., id. at 126:22-129:14.

Shortly after this phone call, Russo was taken from the Task Force offices in New Haven to Hartford by HPD personnel for a drug test ordered by Croughwell.  Id. at 134:19-135:1; Trial Tr. (3/9/05) at 100:1-100:9.  In addition, in this same general time period, Russo was ordered to serve a two day suspension for a violation of sick leave policy that had occurred in January of 1997.  Id. at 99:14-99:20.  Further, Croughwell contacted the Chief State's Attorney's Office in mid-November about investigating Russo for drug crimes.  Id. at 170:16-170:19.

---

[11]  Kumnick had formerly been a member of the HPD and had been involved with the Spada Grand Jury investigating corruption in the HPD.  Trial Tr. (3/9/05) at 83:2-83:6 (Doc. No. 617).

Taking this evidence[12] in the light most favorable to Russo, the court concludes that the evidence before the jury was clearly sufficient to support its finding that Russo had proven his claim against Croughwell for First Amendment retaliation. Therefore, the court denies Croughwell's Rule 50 Motion on this ground.

With regard to Croughwell's Rule 59 Motion, concerning the weight of the evidence, the court does not find that the verdict was a miscarriage of justice or based upon a serious error of law. While there was evidence, which if believed, would support a verdict for Croughwell,[13] there was substantial evidence that supports the jury's verdict against Croughwell. Therefore, the court denies Croughwell's Rule 59 Motion on this ground.

b. <u>Kenary</u>. Kenary argues that the verdict against him must be set aside as a matter of law for several reasons not yet addressed. He argues that there is no evidence on which the jury could have found either an adverse employment action or a causal connection between Russo's protected speech and such an action, as to him.

Kenary was sued only in <u>Russo II</u>. Thus, the statute of limitations would generally permit evidence against him back to September 20, 1997. One of the grounds claimed against Kenary was his involvement in the change of locks/lockout of Russo from the CAPERS office in April/ May of 1997; the other was his involvement in

---

[12] The evidence recited is not intended to be exhaustive.

[13] Indeed, <u>e.g.</u>, Croughwell testified that he would have ordered the drug test regardless of Russo's speech. However, a reasonable juror did not have to credit that testimony in the light of all this other evidence.

Russo's suspension based on the January AWOL/sick leave violation in November 1997.  Jury Charge § XXI at 28.

With regard to the latter, no specific evidence was offered as to why Russo's discipline, which arose out of events in January, would take until November to be actually imposed.  In their Reply Memorandum, Croughwell and Kenary cite to Delaware State College v. Ricks, 449 U.S. 250 (1980) for the "well-settled" principle that the statute of limitations runs from the time the employee receives notice of an adverse employment action.  However, the Ricks Court also noted that the complaint in that case could not support a "continuing violation."  Id. at 257.  Here, Russo alleged a period of harassment and intimidation that includes a period before 1997 and continues through at least November 1997.  Sixth Am. Compl.  at ¶ 28 (Russo II) [Doc. No. 117].  Thus, the actual imposition of the two-day suspension – particularly after many months of inaction and coming at a time when Russo's cooperation with the federal investigation of the HPD and the Pope Park murder was known – is retaliatory conduct within the limitations period of Russo II.  However, for Russo to sustain an action against Kenary based on this suspension, there must be evidence of Kenary's involvement in the suspension.

There was substantial evidence of Kenary's involvement in January 1997, in connection with the AWOL finding based on Russo's use of sick leave, but the court does not recall any evidence of actions of Kenary after September 20, 1997, that led to the two day suspension in November 1997.[14]  Without that evidence, neither the two-

---

[14]  The documentation concerning this suspension, Exs. 117, 118 and 119, evidence no involvement by Kenary.  He is copied on the October 29, 1997 letter from Croughwell advising

day suspension in November 1997 nor the lockout in April/May of 1997 is actionable,

even as part of a continuing hostile work environment theory.  See Cornwell v.

Robinson, 23 F.3d 694, 704 (2d Cir. 1994) (holding that, in a section 1983 case,

"[w]hen a plaintiff experiences a continuous practice and policy of discrimination, . . .

the commencement of the statute of limitations period may be delayed until the last

discriminatory act in furtherance of it.") (internal citation and quotation marks omitted).

Therefore, on this ground, Kenary is entitled to judgment as a matter of law, and the

court need not reach his other grounds for his Rule 50 or 59 Motions.

> ### 2.    The City

The court finds sufficient evidence on the trial record to support the jury's verdict

against the City for its violation of section 1983 on a theory that it failed to train its police

officers.[15]  Both Russo and Croughwell testified that there was no training in the HPD

concerning issues arising from an officer's involvement in investigations of HPD

corruption.[16]  Further, there was testimony concerning a grand jury investigation,

---

Russo that Croughwell was suspending him for 2 days in November, but nothing suggests it
was other than informational.  Ex. 119.

> [15]   The court charged the jury, in pertinent part, as follows:
> To establish a failure to train, Mr. Russo must show: (1) that the policymaker knows to a
> moral certainty that the City's police officers will confront a given situation; (2) that the
> situation either presents the police officers  with a difficult choice of the sort that training
> will make less difficult or that there is a history of police officers mishandling such
> situations; and (3) that the wrong choice by the police officer will frequently cause the
> deprivation of a fellow officer's constitutional right.

Jury Charge § XXIV.  See Walker v. City of New York, 974 F.2d 293, 297-98 (2d Cir. 1992).

> [16]   The court does not view Croughwell's testimony about sexual or other harassment
> training to be training about police officer involvement in corruption investigation, either with
> regard to how other officers should treat the investigating officer or how the investigating officer
> should handle the situation he is in.

conducted by Judge Spada of the Connecticut Superior Court, of corruption in the HPD in approximately 1993/1994.  In connection with that Grand Jury, some members of the HPD were indicted based on testimony of their fellow officers.  Croughwell testified that he was aware of the Spada Grand Jury and the problems it presented in connection with HPD officers investigating or testifying about corruption by other HPD officers.  He also acknowledged the possibility generally that a grand jury witness can be subject to harassment because he testified.  Trial Tr. (3/9/05) at 39:9-39:18.  In Croughwell's view, this affected morale in the HPD.  Id. at 13:8-13:11.  He testified there was "a feeling of being let down" by fellow officers.  Id. at 13:19-13:22.

Croughwell also testified that he was aware of friction between the HPD and the Federal Gang Task Force (of which Russo was a member) in 1996 as well as in 1997.  While the City cites to testimony by Croughwell that corruption investigations and police officer reaction to the same were not a major problem, the jury did not have to credit that testimony.  There is evidence from which the jury could have inferred that Croughwell knew, based on his experience in the HPD with the Spada Grand Jury, as a captain and then as chief, id. at 13:16-13:21, and then with Russo's situation in 1996 in connection with his cooperation with federal authorities, and Croughwell's knowledge of federal investigations into HPD corruption, that HPD officers would be (indeed were) confronting fellow officers who engaged in First Amendment protected speech, such as Russo, concerning corruption and mishandling of murder investigations.  Further, the evidence supports the conclusion that there was a history of such situations in the HPD, and certainly the jury could have found that training would alleviate the harassment that resulted.  Finally, untrained police officers who resorted to harassment of officers like

Russo, in retaliation for his actions, would likely cause a violation of the constitutional rights of officers like Russo.  Thus, there was evidence, when taken in a light favorable to Russo, to support the jury's finding for Russo on his § 1983 <u>Monell</u> claim.

The City also moves under Rule 59(a) for a new trial on several grounds.  First, it argues that the court erred in instructing the jury that Croughwell was a policymaker for purposes of training.  The court believes, for reasons previously articulated on the record, that its charge in this respect is correct.  <u>See</u>, <u>e.g.</u>, Trial Tr. (3/14/05) at 7:17-9:9.

Alternatively, the City argues that the jury either misunderstood or ignored pertinent parts of the charge: in effect, the City argues that the jury's verdict must be the result of imposing liability based on respondeat superior.  The court finds no miscarriage of justice or seriously erroneous result in the verdict against the City.  As to the amount of damages, the court addresses that issue, <u>infra</u>, at § III.K.

The City also argues that, because the Verdict Form did not specify the particular constitutional violations which the jury found, it is entitled to a new trial because it is not clear on what the jury based its <u>Monell</u> verdict.  In light of the court's ruling concerning Kenary, <u>see</u> § III. C.2, the court agrees.  The court cannot rule out the possibility that the verdict against the City on the <u>Monell</u> claim was based upon the jury's finding of a constitutional violation by Kenary only.  Therefore, the court orders a new trial on Russo's claim against the City for failure to train.

The City's Rule 50 Motion is denied on the foregoing grounds.  The City's Rule 59 Motion is granted.  The court also grants the City's Rule 59(e) Motion to Amend the

final judgment to reflect the entry of summary judgment for the City in Russo I.

**D.     Statute of Limitations (Individual Defendants' Rule 50(b) Motion)**

The court similarly finds that sufficient evidence was presented as to retaliation

that occurred within the statute of limitations period to support the jury's verdict as to

Croughwell.[17]   Croughwell appears to argue that nothing prior to September 1997

should have been considered because Russo I, filed in 1997, alleged a First

Amendment "invasion of privacy claim," not retaliation.  Am. Compl. [Russo II, Doc. No.

117].  While Croughwell is correct as to what the Amended Complaint alleges, in part,

in its characterization of the claim, he overlooks the allegations of that complaint which

cite to the First Amendment.  Federal pleading rules require notice pleading.  The

defendants were clearly on notice, long before trial, that Russo's claim against them

was a First Amendment retaliation claim.  In numerous pre-trial motions and pleadings,

that is what was addressed.  See, e.g., Defs.' Mem. Supp. Mot. Summ. J. at 23 et seq.

(Doc. No. 454) (while initially referring to intrusion upon seclusion, discussing the First

Amendment retaliation claim); Pre-Trial Mem. at 6 (Russo I) [Doc. No. 551] (describing

the claim as violation of Russo's "First Amendment rights to freedom from retaliation

. . .").  It is not surprising given the court's characterization of Russo's claim in Russo I

as a First Amendment retaliation claim, see Ruling on Mot. Summ. J. at 9, 67 [Doc. No.

524], and Russo's characterization of it as such in his opposition to summary judgment,

see Mem. Opp. Summ. J. at 13 [Doc. No. 477].  Thus, any evidence from November 7,

1994 (three years prior to Russo I filing) was relevant as to Croughwell on Russo's First

---

[17]   Kenary's argument in this regard is moot in light of the court's Ruling in § III.C.1.b,
supra.

- 21 -

Amendment claim at trial.[18]

### E.     Waiver of Hearing on Two-Day Suspension (Individual Defendants' Rule 50(b) Motion)

The defendants argue that it was improper for Russo to claim that a two-day suspension he served in November 1997 was an adverse employment action because Russo had "voluntarily waived his right to a disciplinary hearing and accepted the suspension."  Mem. Supp. Defs. Croughwell and Kenary's Mot. J. Matter of Law and Mot. New Trial or in the Alternative Remittitur [hereinafter, Mem. Supp. Individual Defs.'s Mot., 4/14/05] at 27 [Russo I, Doc. No. 628].  However, they offer no legal authority in support of this contention.  They cite to no cases requiring Russo to contest the HPD discipline imposed by the Chief of the HPD as retaliation for protected free speech.  Defendants cite no law supporting their argument that there was a waiver of Russo's section 1983 claim.  The court therefore declines to grant judgment as a matter of law on this ground.

### F.     Qualified Immunity (Individual Defendants' Rule 50(b) Motion)

Croughwell further argue that they are entitled to qualified immunity because their actions with respect to Russo were objectively reasonable.  See  Anderson v. Creighton, 483 U.S. 635, 641 (1987).  However, as this court held in its summary judgment ruling, the reasonableness of their actions for purposes of qualified immunity could not be determined without a factual decision on the subjective intent behind these actions.  Russo v. City of Hartford, 341 F.Supp.2d 85, 104 (D.Conn. 2004).  The court

---

[18]   The court notes, however, that the adverse actions claimed all occurred after September 1997.  See § III.C., supra, re: continuing conduct.

held, in that Ruling, and adheres to it now, that Russo's speech was protected First Amendment speech and that any retaliation for such speech violated a clearly established constitutional right.  Id. at 96-97, 104.  Certainly, the jury's punitive damage finding would make Croughwell's actions not objectively reasonable.  In order to award punitive damages, the jury had to find that Croughwell violated Russo's First Amendment rights by conduct "inspired by a purpose to do the plaintiff harm," with the "intent to bring about such a result," or conduct undertaken with "a reckless disregard of the consequences which might follow from such acts."  Jury Charge § XXX.

The court has found that Russo presented sufficient evidence from which the jury reasonably, and without serious error, could have concluded that Croughwell undertook adverse employment actions against Russo with the motivation of retaliating against him for exercising First Amendment rights.  See Part III.C.1, supra.  In light of the jury's liability finding on the section 1983 claims against Croughwell, the jury had to have found that Croughwell acted with intent to discriminate against Russo for his exercise of his First Amendment Rights.  No objectively reasonable officer would think that such motivated action was lawful.  The court therefore finds Croughwell is not entitled to qualified immunity.

### G.    Use of a General Verdict Form (Rule 59(a) Motions by individual defendants)

#### 1.    Verdict form did not ask specific questions about the basis for the jury's findings on the question of liability.

Croughwell argues that the verdict form's omission of specific questions about the basis for "the jury's finding of adverse employment action, damages, and issues of

motive and malice relating to the Kumnick Conversation as a basis for a finding that First Amendment speech was a motivating factor" "left open the possibility that the jury based its verdict on impermissible or erroneous findings." Mem. Supp. Individual Defs.'s Mot. at 39 [Doc. No. 628] (capitalization omitted). In support of this argument, they cite Annis v. Cty. of Westchester, 136 F.3d 239, 248 (2d Cir. 1998) (" When it is not possible to ascertain what portions of the compensatory and punitive damages awards were attributable to claims that were time-barred, the damages awards must be vacated.") (internal citation, quotation marks, and brackets omitted).

While it is this court's practice generally to use a special verdict form (with jury interrogatories), the court determined that the defendants' proposed special verdict form was extremely confusing and complexifying. Trial Tr. (3/14/05) at 11:11-12:12, 30:9-30:16. The court instructed the jury on the findings necessary for a verdict on Russo's claims. In the absence of evidence that its instructions were confusing, in error, or contradictory, it must presume that the jury followed them. See, e.g., Smith v. Texas, 543 U.S. 37, 46 (2004) (quoting Penry v. Johnson, 532 U.S. 782, 799-800 (2001)) ("We generally presume that jurors follow their instructions."). Therefore, it does not find that the verdict form it gave to the jury would require it to grant a new trial based on the "possibility that the jury based its verdict on impermissible or erroneous findings."

> 2.    Verdict Form did not ask jury to differentiate between award of lost wages and of emotional distress damages.

Croughwell argues that the fact that the jury was not asked to differentiate between these two types of compensatory damages necessitates a new trial because

- 24 -

"any award of lost wages in excess of two days [reflecting the two-day suspension in 1997] is against the weight of the evidence."  Mem. Supp. Individual Defs.'s Mot. at 39 [Doc. No. 628] (capitalization omitted). However, the individual defendants do not suggest any defect in the jury instructions that would have misled the jury into thinking that its calculation of lost wages, if any, did not need to be supported by the evidence. The jury instructions explained that any compensatory damages award had to be based on evidence presented by trial.  <u>See</u> Jury Instructions § XXVI at 41-42.[19]  The court presumes that the jury followed these instructions, as well as the instructions regarding the substantive elements of Russo's claims.  <u>See, e.g.</u>, <u>Smith v. Texas</u>, 543 U.S. 37, 46 (2004) (quoting <u>Penry v. Johnson</u>, 532 U.S. 782, 799-800 (2001)).  It therefore presumes, and the defendants offer nothing to compel the contrary conclusion, that the compensatory damage award reflects a proper finding of damages and finds no merit in the argument that the verdict form should have required the jury to distinguish between damages for lost wages and damages for emotional distress.

---

[19]  Jury Instruction § XXVI.  The Instruction explained that compensatory damages may include both economic and non-economic damages and charged that:

> [g]enerally speaking, in order to award compensatory damages for a given injury or harm, you must find that Mr. Russo has proven by a preponderance of the evidence that the claimed injury or harm was caused by one or more of the defendants.  A plaintiff may recover fair, reasonable, and just compensation for only those elements of damage he has proven were caused by the acts of a defendant, which acts satisfy the elements of the plaintiff's claim. . . . Damages must be based on evidence at trial. . . . You must bear in mind at all times that the burden is on the plaintiff, Mr. Russo, to prove that any claimed element of damages was a proximate consequence of a proven wrongful act, as well as to prove the reasonable amount with respect to any element of damage.

**H.    Permitting the plaintiff to introduce irrelevant and prejudicial evidence (Individual Defendants' 59(a) Motion)**

Much of the argument on this issue concerns evidence about Kenary.  In light of the court's ruling granting Kenary's Rule 50 Motion, the court need not address the admission of Karen Bowen's testimony.  With regard to the remaining arguments in this section, the court, having reviewed them, does not find error in the admissibility of any of the referenced testimony.

**I.    Precluding defendants from introducing relevant evidence (Individual Defendants' Rule 59(a) Motion)**

Croughwell argues that the court's refusal  to allow all of the evidence they wished to offer concerning Russo's drug use in 1988, including his being charged with drug use, was in error.  The court permitted the defendants to introduce substantial evidence concerning Russo's drug problems in 1988, including evidence of his suspension and drug treatment.  Trial Tr. (2/24/05) at 86-90; Trial Tr. (3/4/05) at 41-43.  To the extent it excluded some evidence in this regard, concerning criminal charges, it did so after balancing, under Fed.R.Evid. 403, the prejudicial versus the probative effect.  It finds no error in its ruling in this regard.

**J.    Additional Alleged Errors in Jury Charge**

The individual defendants argue that the court erred in denying requests to give certain jury charges, including a charge on stray remarks, and in giving other charges above their objections, including those on hostile work environment, intent, and the scope of Russo's claims.  The court notes that, with regard to the requested stray remark charge, it was pertinent to evidence concerning Kenary.  In light of the court's

ruling on Kenary's Rule 50 motion, it need not address this claimed error.

Croughwell cites to no case law in support of his arguments that the court's rulings on other issues in this regard were in error.  The court therefore stands by its previous rulings on those matters.

### K.     Motion for Remittitur or New Trial on Damages (Individual Defendants' Rule (59(e) Motion)[20]

#### 1.     Compensatory Damages

The jury found that the damages proximately caused by the violation by Croughwell totaled $22,500, and the court holds that this amount is not excessive.  "It is well established in this Circuit that in section 1983 cases [t]he standard for appellate review of damage awards, whether compensatory or punitive, is whether the award is so high as to shock the judicial conscience and constitute a denial of justice."  Mathie v. Fries, 121 F.3d 808, 813 (2d Cir.1997) (internal quotation marks and citation omitted) (alteration in original).  Russo presented testimony from which the jury reasonably could have concluded that he suffered $22,500 in damages.  His testimony could lead a reasonable jury to conclude that he suffered some lost wages as a result of the defendants' conduct, even after the wages he earned as a mortician were subtracted as mitigation, and that this conduct also caused him to seek psychological counseling, for which he incurred expense.

Most importantly, the jury reasonably could have concluded that Russo suffered emotional distress as a result of the constitutional violations caused by the defendants'

---

[20]  Having already ruled that Kenary's motion for judgment as a matter of law is granted, the court need not address his argument regarding damages.  Similarly, having granted the City's Motion for a New Trial, the court need not address its arguments on damages.

conduct.

> It is well-established that courts may award emotional distress damages in section 1983 cases. However, the mere fact that a constitutional deprivation has occurred does not justify the award of such damages; the plaintiff must establish that she suffered an actual injury caused by the deprivation. The damage award must be supported by competent evidence concerning the injury. A plaintiff's subjective testimony, standing alone, is generally insufficient to sustain an award of emotional distress damages. Rather, the plaintiff's testimony of emotional injury must be substantiated by other evidence that such an injury occurred, such as the testimony of witnesses to the plaintiff's distress, or the objective circumstances of the violation itself. Evidence that a plaintiff has sought medical treatment for the emotional injury, while helpful, is not required.

Patrolmen's Benevolent Ass'n. of City of New York v. City of New York, 310 F.3d 43, 55

(2d Cir. 2002) (internal citations and quotation marks omitted).

Although Russo did not present such evidence of physical symptoms, he did

testify that this distress caused him to seek psychological counseling, Trial Tr. (3/7/05)

at 137:3-138:9, and that his fear of reprisals for his protected speech was intense

enough to prevent him from returning to work on the police force in 2002, id. at 141:15-

23. His sister also testified that she observed his emotional distress in the fall of 1997.

Trial Tr. (3/10/05) at 7:11-10:5; 15:3-15:10. The jury reasonably could have inferred

that the violations of Russo's First Amendment rights proximately caused enough

emotional anguish to support a $22,500 compensatory damages award. Considering

the evidence of economic damages and the evidence of emotional distress together,

the court does not find a total compensatory damages award of $22,500, proximately

caused by Croughwell's conduct, to shock the judicial conscience or to be a denial of

justice.

## 2.    Punitive Damages Against Croughwell

Croughwell also argues in his motion for judgment as a matter of law that the

$75,000 punitive damages award against him should be vacated because it is possible that the jury considered time periods other than that between September 20, 1997 and November 7, 1997 in calculating punitive damages, see Individual Mem. Supp. Individual Defs.'s Mots. at 31, 46 [Doc. No. 628-3] and because the punitive damages awarded were not otherwise supported by the record, id. at 46.  In the alternative, he argues that the punitive damages amount should be reduced because it is excessive and unconstitutional.  Id.

        The court rejects the first argument because it has found that the jury's verdict against Croughwell is supported by evidence of his actions during the statutory limitations period.  See Section III. C. 1, supra.  Although the court recognizes that "[w]hen it is not possible to ascertain what portions of the compensatory and punitive damages awards were attributable to claims that were time-barred, the damages awards must be vacated," Annis v. County of Westchester, 136 F.3d 239, 248 (2d Cir. 1998), the court does not find that any portion of the jury's awards against Croughwell were attributable to time-barred claims.  See Section III. D., supra.

        Similarly, the court does not find merit in Croughwell's arguments that the punitive damages against him were unsupported by the evidence or so excessive as to be unconstitutional.  The jury having reasonably found Croughwell liable, it was permitted to award punitive damages if it found that Croughwell's conduct was "shown to be motivated by evil motive or intent" or to "involve[] reckless or callous indifference to the federally protected rights of others."  Smith v. Wade, 461 U.S. 30, 56 (1983). DiSorbo v. Hoy, 343 F.3d 172, (2d Cir. 2003).

The court finds that the jury could reasonably have found Croughwell to have acted maliciously or recklessly. Croughwell claims that, "Russo admitted that Chief Croughwell merely conveyed to him the anger of others and said that he was trying to calm them down," Mem. Supp. Individual Defs.'s Mot. [Doc. No. 628]. However, the record contains evidence from which a jury could have reached a very different conclusion. In particular, Russo testified that Croughwell told him, "I have couple of detectives in my office who want to kick your f***ing ass," Trial Tr. (3/9/05) at 126:14-126:19, followed immediately by a question as to whether Russo was "assisting or conducting a corruption investigation against his department," id. at 126:11-127:15, and then a statement that he wanted Russo to take a polygraph test and that he or the other officers with him "would take care of" whoever was lying, id. at 129:3-129:15. Contrary to Croughwell's contention, Russo testified that Croughwell himself sounded "very angry, very upset" at the time he said these words. Id. at 126:22-127: 3. Moreover, Russo specifically characterized Croughwell's statement as a "threat" that he took seriously, id. at 131:8-131:16, and his sister gave additional testimony supporting a finding that Russo was in fact frightened by Croughwell's words, Trial Tr. (3/10/05) at 7:11-10:5; 15:3-15:10. A jury reasonably could have found that Croughwell's actions toward Russo were motivated by spite or ill-will towards Russo, thus permitting an award of punitive damages.

As to the amount, a punitive damages award is excessive if it "is so high as to shock the judicial conscience and constitute a denial of justice." DiSorbo v. Hoy, 343 F.3d 172, 186 (2d Cir. 2003) (internal citation and quotation marks omitted). The Supreme Court has identified three "guideposts" that the court must follow in making

this determination: "1) the degree of reprehensibility; 2) the disparity between the harm

or potential harm and the punitive damages award; 3) the difference between the

remedy and the civil penalties authorized or imposed in comparable cases." Id. (citing

BMW of N. Am. v. Gore, 517 U.S. 559, 574-75 (1996)).

"Perhaps the most important indicium of the reasonableness of a punitive

damages award is the degree of reprehensibility of the defendant's conduct."

Id. (quoting Gore, 517 U.S. at 475).  To assess the degree of reprehensibility, the court

must consider three "aggravating factors": "1) whether a defendant's conduct was

violent or presented a threat of violence; 2) whether a defendant acted with malice as

opposed to mere negligence; and 3) whether a defendant has engaged in repeated

instances of misconduct."  Id.

Although Croughwell did not commit physical violence against Russo, his

statements to Russo could easily be interpreted as a threat of violence, by himself or by

approval of violence by others, in direct retaliation for Russo's exercise of his First

Amendment rights.  The court has similarly found that the evidence could support a

finding that Croughwell acted with malice.  See, Part III. K.2, supra.  Finally, the court

finds at least some evidence that Croughwell engaged in repeated instances of

misconduct, considering his role in the ongoing retaliation against Russo, including

intimidation and the two-day suspension.

Turning to the second Gore guidepost, the compensatory damages awarded

against Croughwell are equal to slightly under one-third of the punitive damages award

against him.  This ratio does not shock the judicial conscience.  Although the Supreme

Court has "decline[d] . . . to impose a bright-line ratio which a punitive damages award

cannot exceed," State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 425 (2003),

it has "referenced a long legislative history, dating back over 700 years and going

forward to today, providing for sanctions of double, treble, or quadruple damages to

deter and punish." Id., 538 U.S. at 425 (citing Gore, 517 U.S. at 581 and n. 33).  The

court does not find that the compensatory damages against Croughwell are so

substantial as to render the punitive damages award excessive in light of the particular

circumstances of this case.  See id.  Rather, particularly in light of the fact that the

compensatory damages could not include damages for the fact of the First Amendment

violation itself, it finds that the ratio is reasonable.  See Argentine v. United

Steelworkers of Am., AFL-CIO  287 F.3d 476, 488 (6th Cir. 2002) (holding, in a case

brought under the Labor Management Reporting and Disclosure Act: "In this case,

Plaintiffs' reputations and free speech rights were impaired. These injuries are without a

ready monetary value as opposed to the injuries in BMW [v. Gore].  Thus, while the

42.5 to 1 ratio is larger than the 10 to 1 ratio approved by the Court in BMW, we cannot

say it is unreasonable.")

The third Gore guidepost "compares the punitive damages awarded with the civil

and criminal penalties for comparable misconduct."  Disorbo, 343 F.3d at 187 (citing

Gore, 517 U.S. at 583).  This consideration reflects the principle that, "if the penalties

for comparable misconduct are much less than a punitive damages award, the

tortfeasor lacked fair notice that the wrongful conduct could entail a sizable punitive

damages award."  Id.  Croughwell does not direct the court's attention to any state civil

or criminal penalties for conduct comparable to his that would have been less severe

than the punitive damages award.  Croughwell's particular conduct in his phone

conversation with Russo, viewed in isolation from the other evidence of retaliation, could open him up to criminal prosecution for harrassment in the second degree pursuant to Conn. Gen. Stat. § 53a-183(a)("A person is guilty of harassment in the second degree when: (1) By telephone, he addresses another in or uses indecent or obscene language . . . or (3) with intent to harass, annoy or alarm another person, he makes a telephone call, whether or not a conversation ensues, in a manner likely to cause annoyance or alarm.").  Such offense is a class C misdemeanor, punishable by a fine of up to $500 and imprisonment of up to three months.  Although this fine is much lower than the punitive damages award, imprisonment for any length of time may be considered a very severe punishment.  Moreover, the Second Circuit has held that "criminal penalties understate the notice when the misconduct is committed by a police officer" because police officers are expected to have more notice of the gravity of misconduct than others.  DiSorbo, 343 F.3d at 188 (internal citation omitted).  Moreover, Croughwell's wrongful conduct included more than just a threat, so the statute above is not truly comparable to his section 1983 liability.  His wrongful conduct included retaliation against Russo for the exercise of his First Amendment rights, rights of which Croughwell undoubtably had notice.

Taking into account the factors above, the court finds that the punitive damages award against Croughwell does not shock the judicial conscience.  The court denies to order a new trial or remittur on the issue of punitive damages against Croughwell.

The parties stipulated that, if punitive damages were awarded and upheld, the court would then hold a hearing on the defendant's ability to pay, as that issue relates to the appropriateness of the amount.  By separate Order, the court sets the matter for

a hearing.

## IV.    CONCLUSION

Based on the foregoing, the court grants the City's Motion [Doc. No. 221] in part as follows: (1) it enters judgment for the City in Russo I; (2) it grants the City's Rule 59(a) motion for a new trial; it denies the City's Motion [Doc. No. 221] in all other respects, as noted, either on the merits or as moot.

Based on the foregoing, it grants the individual defendants' Motion [Doc. No. 627] in part as follows: it grants Kenary's Rule 50 Motion for judgment as a matter of law.  It denies the individual defendants' Motion [Doc. 627] in all other respects.


**SO ORDERED.**

Dated at Bridgeport, Connecticut this 2nd day of March, 2006.


/s/ Janet C. Hall
Janet C. Hall
United States District Judge