UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| NICHOLAS O. RUSSO, JR. | : | CIVIL ACTION NO. |
| | : | 3:97 CV 2380 (JCH) (lead case) |
| Plaintiff, | : | **3:00 CV 1794 (JCH)**√ |
| v. | : | |
| | : | |
| JOHN BAILEY, ET AL. | : | |
| | : | |
| Defendants. | : | MARCH 15, 2006 |

**DEFENDANT, CITY OF HARTFORD'S, MEMORANDUM OF LAW IN SUPPORT OF
ITS MOTION FOR RECONSIDERATION OF THE RULING DENYING ITS RULE 50
MOTION FOR JUDGMENT**

**I. INTRODUCTION**

The Defendant, City of Hartford ("Hartford"), moves for reconsideration of the March

2, 2006 ruling ("Ruling") denying its Rule 50 Motion for Judgment as a Matter of Law.  As

Hartford was previously granted Judgment in <u>Russo I</u>, and Defendant David Kenary was

recently granted Judgment in <u>Russo II</u>, the only retaliatory acts for which Hartford can be found

liable under <u>Monell</u>[1] are: (1) Defendant Joseph Croughwell's ("Croughwell") decision to

suspend Plaintiff for two days; and (2) Croughwell's purportedly threatening telephone call to

Plaintiff on October 30, 1997.[2]  Accordingly, the only issue before the Court is whether

sufficient evidence existed from which the Jury could have concluded that a deliberately

---

[1] <u>Monell v. Department of Social Services</u>, 436 U.S. 658 (1978) (recognizing, and
establishing parameters of, municipal liability under 42 U.S.C § 1983 ("Section
1983")).

[2] Ruling, p. 13 (noting three adverse actions charged to Croughwell consisted of
two-day suspension, threatening telephone call and November 1997 drug test);
Jury Charge, Section XXIV, p. 38 (noting Hartford cannot be liable for November
1997 drug test).

**SABIA & HARTLEY, LLC**
**ATTORNEYS AT LAW**        | 190 Trumbull Street   Suite 202   Hartford, CT 06103-2205
                            | tel 860.541.2077   fax 860.713.8944   www.sabiahart.com

indifferent failure to adequately train Hartford Police Officers caused Croughwell to suspend or

threaten Plaintiff in a retaliatory manner.

Hartford seeks reconsideration of the Ruling because the Court overlooked the fact that

the Jury was not presented with sufficient evidence of causation under <u>Amnesty America v.

Town of West Hartford</u>, 361 F.3d 113 (2d Cir. 2004)[3] to impose <u>Monell</u> liability for the failure

to train. The <u>Amnesty America</u> Court confirmed that municipal liability for the failure to train

can only be imposed when a deliberately indifferent failure to train is found to have actually

caused the constitutional violation. <u>Amnesty America</u> therefore required Plaintiff to introduce

evidence of specific deficiencies in the training provided Hartford officers, and establish that

such deficiencies caused Plaintiff to be the victim of retaliation. Judgment must enter for

Hartford pursuant to <u>Amnesty America</u> because the intentionally unlawful nature of Croughwell's

actions preclude, as a matter of law, any finding that a training deficiency caused Plaintiff's

constitutional deprivation.[4]

---

[3]     Hartford specifically raised application of the <u>Amnesty America</u> decision in its
Motion for Judgment at the close of Plaintiff's case and its renewed Motion for
Judgment which is the subject of the Court's Ruling. Hartford's Motion for
Judgment dated March 11, 2005, pp 13-15; Tr. 5th Day, p. 86; Hartford's Motion
for Judgment, dated April 14, 2005, pp. 17-20; Hartford's Reply Brief, dated July
15, 2004, pp. 7-10.

[4]     Hartford disputes that Croughwell violated Plaintiff's constitutional rights or
otherwise acted in an unlawful manner, intentionally or unintentionally.
Hartford's argument is based entirely upon the determinations made by the Jury
and the Court as to the nature of Croughwell's actions. <u>See</u> Ruling, p. 23.

2

## II.  ARGUMENT

**A.**    **The Court's Failure To Consider The Causation Requirement of Amnesty America Mandates Reconsideration**

A motion for reconsideration should only be granted where "the moving party can point to controlling decisions or data that the Court overlooked–matters in other words, that might reasonably be expected to alter the conclusion reached by the case." Shrader v. CSX Transportations, Inc., 70 F.3d 255, 257 (2d Cir. 1995).  The failure to consider the causation requirement of Amnesty America has been held sufficient to warrant both reconsideration and reversal of decisions affecting municipal liability under Section 1983.  See Santiago v. City of Hartford, et al., 2005 WL 2234505 (D. Conn 2005) (attached at "Tab 1") (failure of court to consider Amnesty America decision warranted reconsideration and reversal of denial of summary judgment); Jane Doe II v. City of Hartford, et al., 2005 WL 2009051 (D. Conn. 2005) (attached at "Tab 2") (same).

Amnesty America confirms that municipal liability for the intentionally unlawful acts of its employees cannot ordinarily, if ever, arise from a proclaimed failure to train.  Amnesty America, 361 F.3d at 124-27, 130.  While the Court acknowledged that municipal liability for intentionally unlawful acts can arise pursuant to a number of other theories, its analysis of the principle of causation forecloses imposition of failure to train liability for such acts.  Amnesty America, 361 F.3d at 124-27, 130.

The Court noted that imposition of failure to train liability under Section 1983 requires:

that plaintiffs establish not only that the officials' purported failure to train
occurred under circumstances that could constitute deliberate indifference, but

3

> also that plaintiffs identify a specific deficiency in the city's training program and
> establish that that deficiency is "closely related to the ultimate injury," such that
> it "actually caused" the constitutional deprivation.

Amnesty America, 361 F.3d at 129 (quoting City of Canton, 489 U.S. at 391). It also opined

that: "[t]he elements of an identified training deficiency and a close causal relationship, which

together require the plaintiffs to prove that the deprivation occurred as the result of a municipal

policy rather than as a result of isolated misconduct by a single actor, ensure that a failure to

train theory does not collapse into *respondeat superior* liability." 361 F.3d at 130.

 Amnesty America requires that the "factfinder's inferences of inadequate training and

causation be based on more than the mere fact that the misconduct occurred in the first place."

361 F.3d at 130. With this principle in mind, the Amnesty America Court determined that a

plaintiff seeking to establish the causal link between a training deficiency and his or her

constitutional deprivation must both: (1) prove "how better or different training could have

prevented the challenged conduct"; and (2) introduce evidence "tending to rule out those causes

of the [plaintiff's constitutional injury]... that would not support municipal liability, such as the

negligent administration of a valid program, or one or more officers' negligent or intentional

disregard of their training." Amnesty America at 130, citing City of Canton 489 U.S. 390-91.

 As Plaintiff's constitutional injury arises from the intentionally unlawful acts of a

municipal employee, Plaintiff was unable, as a matter of law, to establish causation under

Amnesty America. Hartford's Motion to Reconsider should be granted, accordingly.

4

**B.**  **Hartford Is Entitled to Judgment As A Matter Of Law Because The Intentionally Unlawful Nature Of Croughwell's Actions Preclude Any Finding That A Training Deficiency Actually Caused Plaintiff's Constitutional Violation**

Plaintiff argued, either at trial or thereafter, that Hartford's training program was deficient because it failed to provide two specific types of training, including: (1) training on the proper treatment of officers who investigate or report corruption; and (2) training on the proper investigation or reporting of corruption within the department. The former would instruct officers on how to interact with persons such as Plaintiff, and the latter would instruct persons such as Plaintiff himself. While Hartford vehemently disputes that the failure to provide such specific training constitutes a deficiency in its training program under Amnesty America,[5] the Court need not resolve this issue because no reasonable jury could have concluded that such a deficiency caused Croughwell to threaten or otherwise intentionally retaliate against Plaintiff. To the contrary, the intentionally unlawful nature of Croughwell's actions preclude such a finding as a matter of law. The Jury therefore imposed municipal

---

[5]    There is no evidence from which the Jury could have concluded that Hartford officers were inadequately trained in either area, as it is clear that officers were: (1) trained on the Code of Conduct ("Code"), which both generally governed the proper treatment of all police personnel and specifically prohibited the types of unlawful and abusive acts Croughwell is alleged to have undertaken; and (2) trained on the importance of confidentiality in the investigation and reporting of any type of criminal activity. Plaintiff offered no testimony, expert or otherwise, suggesting how the above training was insufficient to either instruct officers on the proper treatment of employees who report corruption or assist officers in investigating or reporting corruption within the department.

SABIA & HARTLEY, LLC
ATTORNEYS AT LAW

190 Trumbull Street    Suite 202    Hartford, CT 06103-2205
tel 860.541.2077    fax 860.713.8944    www.sabiahart.com

liability based upon the isolated misconduct of Croughwell alone, a result prohibited by

Amnesty America and Monell.[6]

### 1.    No Reasonable Jury Could Have Concluded That Additional Training Could Have Prevented The Intentionally Unlawful Acts Of Croughwell.

First, Plaintiff did not establish that providing the referenced additional training could

have prevented Croughwell's conduct. Amnesty America, 361 F. 3d at 130. As this Court

noted, the Jury's finding of liability against Croughwell confirms its determination that he

"acted with intent to discriminate against Russo for his exercise of his First Amendment

Rights." Ruling, p. 23. Further, this Court itself determined that "no objectively reasonable

officer would think that such motivated action is lawful." Ruling, p. 23.

Plaintiff offered no evidence suggesting how better or different training on the proper

treatment of officers who report corruption could have prevented Croughwell from intentionally

and unlawfully retaliating against Plaintiff. Indeed, it is difficult, if not impossible, to conceive

---

[6]    While Monell permits the imposition of municipal liability for the intentionally unlawful act of an official with final policy making authority over the particular act in question, Plaintiff did not plead, and the Court was not presented with evidence establishing, that Croughwell was a final policy maker for purposes of the two-day suspension or the October 30, 1997 reprimand. City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988) (noting that factors affecting final policy making authority include whether official's decision held in check by more general policies established by other officials and whether decision subject to review). Croughwell's actions are therefore insufficient, in and of themselves, to impose municipal liability. Jeffes v. Barnes, 208 F.3d 49, 57 (2d. Cir.), cert denied sub nom. County of Schenecteday v. Jeffes, 531 U.S. 813 (2000) (imposition of municipal liability for act of tortfeasor alone requires showing that tortfeasor is responsible under state law for making policy in that particular business area in which conduct is at issue).

6

of how such additional training could have prevented Croughwell from undertaking these intentionally unlawful acts.

In fact, courts have recognized that where an employee performs an intentionally unlawful act, the failure to train the employee is simply not so closely related to the ultimate injury that a training deficiency can be found to have actually caused the injury. See e.g., Andrews v. Fowler, 98. F.3d. 1069, 1077 (8th Cir.1996) (failure to train officers not to rape young women could not, as a matter of law, have actually caused officer to rape woman); Jones v. James, No. Civ. 02-4131, 2005 WL 459652 (D. Minn. Feb. 24, 2005) (failure to train officers on how to interact with female prisoners could not, as a matter of law, have actually caused officer to sexually assault female detainee) (attached at "Tab 3"). As the Jones Court noted; "no reasonable jury could find that any alleged failure to train [the defendant] proximately caused [him] to commit the crime of third degree sexual conduct by having sex with a detained female in the back of a transport van."[7] Jones, 2005 WL 459652 at *5. It likewise follows that

---

[7]    These cases, together with Amnesty America, underscore both the primary purpose behind the Monell doctrine and the resulting general inapplicability of the failure to train theory to circumstances where an employee undertakes an intentionally unlawful act. Where an employee deliberately acts in a manner that is not unlawful in and of itself, but his or her actions are found unconstitutional under the circumstances, the failure to properly train the employee on how to respond in such circumstances can be found to be a cause of the unconstitutional act, and the municipality can properly be found to be a moving force behind the violation as required by Monell. Thus, for example, where a police officer either injures a citizen by improperly implementing the Heimlich maneuver (in an effort to dislodge ingested drugs) or uses the Heimlich maneuver when circumstances do not warrant such use, the failure to train the officer on the proper use of the Heimlich maneuver might be a cause of a resulting constitutional injury. Where however, as here, an employee undertakes a deliberate act known by him or her to

7

SABIA & HARTLEY, LLC
ATTORNEYS AT LAW

190 Trumbull Street    Suite 202    Hartford, CT 06103-2205
tel 860.541.2077    fax 860.713.8944    www.sabiahart.com

no reasonable jury could have concluded that the failure to train officers how to treat employees who investigate and report corruption caused Croughwell to intentionally and unlawfully retaliate against Plaintiff. <u>Amnesty America</u>, 361 F.3d at 130.

Plaintiff likewise proffered no testimony, expert or otherwise, establishing how better or different training of the Plaintiff himself, and others like him, could have prevented the challenged conduct of Croughwell.[8] It is again difficult, if not impossible, to conceive of how training Plaintiff on the proper investigation or reporting of corruption could have prevented Croughwell from intentionally and unlawfully retaliating against him.

For example, even if Plaintiff had received specific and detailed training on how to respond to every possible scenario which could develop as a result of his investigation or

---

be unlawful in all circumstances, a municipality's failure to train the employee not to undertake such an act cannot be found to be the cause of the constitutional violation because simple common sense dictates that the individual, and not the municipality's failure to train, is the moving force behind the constitutional deprivation. To base a finding of municipal liability upon the failure to train an employee not to intentionally perform unlawful acts simply imposes respondeat superior liability upon the municipality, a result expressly forbidden by <u>Monell</u>.

[8]   The Court itself, during oral argument on Hartford's Rule 50 Motion for Judgment at the close of Plaintiff's case, questioned the sufficiency of evidence on causation: "I'm talking about the lengthy examination about the need to train somebody in Russo's position and where that's covered in the complaint and why training of a person in the plaintiff's position would have prevented the constitutional violation of the plaintiff by the defendants who weren't in the plaintiff's position." Tr. 5th Day, p. 166:6-12. The Court suggested that Croughwell had not provided sufficient evidence as to causation: "He was questioned about training but I don't recall him providing what I am going to call the causational element of proof...without this training, there is a risk of constitutional violations or with this training, the risk of constitutional violation is at a minimum." Tr. 5th Day, p. 168:4-11.

8

reporting of corruption, such training ultimately could not have prevented the intentionally unlawful acts of others, such as Croughwell.[9] It is therefore apparent that no reasonable jury could have concluded that Croughwell could not have suspended or threatened Plaintiff had Plaintiff been better trained.

### 2. No Reasonable Jury Could Have Concluded That Croughwell's Intentional Disregard Of His Own Training Was Not A Cause Of Plaintiff's Injury.

The Jury also possessed no evidentiary basis from which it could have ruled out causes of Plaintiff's injury that do not support municipal liability, such as a municipal officer's intentional disregard of his training. Amnesty America, 361 F.3d at 130. In fact, the evidence overwhelmingly and conclusively establishes that it was Croughwell's intentional disregard of training he actually received, and not some purported failure to specifically instruct him not to intentionally break the law, that caused Plaintiff to be subjected to retaliation.

---

[9] As the Court itself noted: "When I heard that line of questioning, I think there's a causation element to your claim which has to be that the training in question would have prevented the violation that's claimed and I don't see any basis for a jury to conclude that had Mr. Russo been trained about who to talk to, that pick a defendant, wouldn't violated his rights." Tr. 5th Day, pp. 161:20-162:1; "This is what you should do when the following 47 possible scenarios happen, we have books, everything you can imagine, every expert in the country comes in. What about that training is going to have prevented... I will say a police officer from walking into the chief's office and saying something that could be claimed to be threatening and having that conveyed to Mr. Russo? What about the training of Mr. Russo that would have stopped that constitutional violation assuming there is one?" Tr. 5th Day, p. 162:11-20; "[H]ow does training Mr. Russo stop any one of these defendants from doing whatever it is you complained about them doing?" Tr. 5th Day, p. 166:18-21.

SABIA & HARTLEY, LLC
ATTORNEYS AT LAW

190 Trumbull Street    Suite 202    Hartford, CT 06103-2205
tel 860.541.2077    fax 860.713.8944    www.sabiahart.com

It cannot be disputed that Croughwell's actions were taken in contravention of the training he received on the Code, and possibly in contravention of the General Statutes as well.[10]  Croughwell himself confirmed that all officers were trained on the Code, which specifically prohibited all of his purported retaliatory conduct. Tr. 2nd Day, p. 87:11-16; Tr. 3rd Day, p. 218:19-23. Section 4.02 of the Code prohibits supervisory officers from "giving an order knowing such to be unlawful or beyond the scope of the supervisor's authority." Defendants' Exhibit 105. This provision, on its face, clearly and unequivocally prohibited Croughwell from intentionally and unlawfully retaliating against Plaintiff by suspending him for two days without just cause. Indeed, both Plaintiff and Croughwell acknowledged that this provision would prohibit retaliating against officers who reported corruption within the department. Defendants' Exhibit 105; Tr. 2nd Day, pp: 90:22-91:22; Tr. 3rd Day, p. 175:15-25.

Section 4.01 of the Code prohibits the use of "rude, insulting or offensive language, or other offensive behavior by a supervisory officer towards an employee of a lower rank." Exhibit 105. Section 6.01 of the Code prohibits the use of "violent, abusive or profane language with the intent to incite another employee, not in the public view." Defendants' Exhibit 105. Croughwell acknowledged that these two sections would prohibit many forms of retaliation, and Plaintiff admitted that these two provisions prohibited Croughwell from telling him that "I have a couple of detectives that want to kick your fucking ass" on October 30, 1997.

---

[10]    The Court has suggested that Croughwell's phone call to Plaintiff, "viewed in isolation from other evidence of retaliation, could open him up to criminal prosecution for harassment in the second degree pursuant to Conn. Gen. Stat. § 53a-183(a)." Ruling, pp. 32-33.

SABIA & HARTLEY, LLC
ATTORNEYS AT LAW

190 Trumbull Street    Suite 202    Hartford, CT 06103-2205
tel 860.541.2077    fax 860.713.8944    www.sabiahart.com

Tr. 1st Day, p. 125:16-19; Tr. 2nd Day, pp. 97:23-99:11. In addition, Section 10.07 of the Code

prohibits the "arbitrary or abusive use of police powers or arbitrary or abusive action taken

under the color of police power in personal disputes or affairs," which Croughwell testified

would prohibit retaliation of this nature as well. Defendants' Exhibit 105; Tr. 2nd Day, pp.

91:23-92:8.[11]

Moreover, the proper conduct for a law enforcement officer such as Croughwell in this

situation, refraining from retaliating against an individual who performed his duty by reporting

corruption within the department, is patently obvious. See e.g., Defendants' Exhibit 105, p. 3,

Law Enforcement Code of Ethics. Croughwell, by retaliating against Plaintiff, acted in

complete disregard of both his training and his duties as a law enforcement officer. Indeed,

both the Jury and the Court specifically determined that Croughwell acted in an intentionally

unlawful manner. In these circumstances, no reasonable jury could have concluded

Croughwell's intentional disregard of his training did not cause Plaintiff's constitutional injury.

The Jury, therefore, had no basis from which it could have concluded that: (1) the

failure to provide any specific additional training to officers caused Croughwell to intentionally

and unlawfully retaliate against Plaintiff, and (2) the retaliation Plaintiff suffered was not

---

[11]     Croughwell further testified that Code Sections 4.04, 4.07, 6.02, 6.04, 6.08 and
6.09 all could be read as prohibiting retaliatory acts, and that Hartford had
provided harassment training which specifically addressed Fist Amendment
rights. Exhibit 105; Tr. 3rd Day, pp. 217:25-218:7. Finally, Croughwell also
testified the Police Officers Standards Training ("POST") Council mandated that
all Hartford officers be trained on constitutional law and civil rights, and Plaintiff
confirmed having attended such sessions. Tr. 3rd Day, pp. 191:20-193:2; 196:14-
197:3; Tr. 2nd Day, pp. 115:21-116:20.

11

caused by Croughwell's intentional disregard of his own training.  As Plaintiff has not

established causation under <u>Amnesty America</u>, Hartford is entitled to Judgment as a matter of

law.

### III.  CONCLUSION

For all the foregoing reasons, Hartford's Motion for Reconsideration should be granted

and the Court should enter Judgment for Hartford as a matter of law.

**DEFENDANT,
CITY OF HARTFORD**


By_____
     John P. Shea, Jr.
     Federal Bar CT 17433
     Sabia & Hartley, LLC
     190 Trumbull Street, Suite 202
     Hartford, CT 06103
     Telephone: 860-541-2077
     Facsimile: 860-713-8944
     Its Attorney

12

## CERTIFICATION

I hereby certify that a copy of the foregoing was delivered by facsimile and United States mail, postage prepaid, this 15th day of March, 2006 to:

Attorney Erin O'Neil
41A New London Turnpike
Glastonbury, CT 06033

Helen Apostolidis, Esq.
Corporation Counsel's Office
550 Main Street
Hartford, CT 06103

Chambers Copy:
The Honorable Janet C. Hall
United States District Court
915 Lafayette Blvd.
Bridgeport, CT 06604

Norman A. Pattis, Esq.
649 Amity Road, P.O. Box 280
Bethany, CT 06524

Charles L. Howard, Esq.
Gregg Peter Goumas, Esq.
Derek L. Mogck, Esq.
Shipman & Goodwin, LLC
One American Row
Hartford, CT 06103

John P. Shea, Jr.

E:\WPDOCS\City of Hartford\Russo\Reconsiderat\mol.reconsideration.3.14.06.b.wpd

SABIA & HARTLEY, LLC
ATTORNEYS AT LAW

190 Trumbull Street   Suite 202   Hartford, CT 06103-2205
tel 860.541.2077   fax 860.713.8944   www.sabiahart.com