Westlaw.

Page 1

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 459652 (D.Minn.)
(Cite as: 2005 WL 459652 (D.Minn.))

C

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Minnesota.
Wanda Lee JONES, Plaintiff,
v.
Robert JAMES Stoneking, individually and in his official capacity, and Cass County, Defendants.
No. Civ.02-4131 JNE/RLE.

Feb. 24, 2005.

David L. Garelick, Leventhal Law Office, for Plaintiff Wanda Lee Jones.

Jon K. Iverson, and Jason J. Kuboushek, Iverson Reuvers, LLC, for Defendant Cass County.

Craig S. Hunter, Hunter Law Office, for Defendant Robert James Stoneking.

ORDER

ERICKSEN, J.

*1 Wanda Lee Jones brought this 13-count action against Cass County civilian transport officer Robert James Stoneking, individually and in his official capacity, [FN1] and against Cass County after Stoneking had sexual intercourse with Jones while she was an inmate in the Cass County jail. Jones alleges claims under 42 U.S.C. § 1983 (2000), for violations of the Fourth, Eighth and Fourteenth Amendments, and under 42 U.S.C. § 1981 (2000), for denial of equal protection. She also alleges claims under Minnesota state law. The matter is before the Court on Cass County's motion for summary judgment. For the reasons set forth below, the Court grants in part and denies in part Cass County's motion.

FN1. Jones sued Stoneking in his official and individual capacities to ensure that he received notice of his potential personal liability. See Nix v. Norman, 879 F.2d 429, 431 (8th Cir.1989). A § 1983 suit against an employee in his official capacity is deemed to be a suit against the employer only, which in this case is Cass County. Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir.1999).

I. BACKGROUND

On January 3, 2000, Jones was placed on probation for gross misdemeanor DWI. As part of her probation agreement, Jones agreed not to use intoxicants. On December 31, 2001 or January 1, 2002, Jones consumed a large amount of alcohol. When law enforcement personnel saw her on the street, she was arrested and taken to Cass County jail, where she was placed in a holding cell.

Sometime after being placed in the cell, Jones woke up feeling sick and asked to be taken to the Cass County Hospital. Stoneking was assigned to transport Jones to and from the hospital. After leaving the hospital and before returning to the jail, Stoneking had sexual contact, including sexual intercourse, with Jones.

Upon her return, Jones told a female officer "that old man just had sex with me." The officer told her supervisors, and they immediately began investigating Jones's claim. The next day, Stoneking was placed on administrative leave. He subsequently resigned and later pled guilty to third degree criminal sexual conduct in violation of Minn.Stat. § 609.344, which provides that a "person who engages in sexual penetration with another person is guilty of criminal sexual conduct in the third degree if ... the actor is an employee ... of a ... county ... and the complainant is a resident of a facility or under supervision of the correctional system."

II. DISCUSSION

Summary judgment is proper "if the pleadings,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party satisfies its burden, Rule 56(e) requires the nonmoving party to respond by submitting evidentiary materials that designate "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

A. Section 1983

*2 In Count Eleven of her Complaint, Jones alleges that Cass County violated § 1983 by negligently hiring, training, and retaining Stoneking, and encouraging and implicitly authorizing a policy or custom of persistent and widespread discrimination. [FN2] Section 1983 provides:

> FN2. In her papers opposing Cass County's motion for summary judgment, Jones argues only that Cass County is liable under § 1983 for a failure to train and inadequate hiring. The Court therefore addresses only those two theories of liability and considers Jones to have waived any alternative theories.

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured....

Jones alleges violations of the Fourth, Eighth, and Fourteenth Amendments against Stoneking. However, she does not specifically assert which constitutional violation she is alleging against Cass County. Because the Eighth Circuit has recognized that a sexual assault can be a substantive due process violation under § 1983, *see, e.g., Rogers v. City of Little Rock, Ark.*, 152 F.3d 790, 796 (8th Cir.1998) and *Haberthur v. City of Raymore, Mo.*, 119 F.3d 720, 723 (8th Cir.1997), for the purposes of this motion, the Court will assume that Jones is alleging a substantive due process violation against Cass County.

A § 1983 suit against a governmental entity employer is commonly referred to as a *Monell* claim. In *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the United States Supreme Court held that for a municipality to be liable under § 1983, a plaintiff must prove that a municipal policy or custom was the "moving force [behind] the constitutional violation." *Monell*, 436 U.S. at 694. An official policy involves a deliberate choice to follow a course of action made from among various alternatives by an official who is determined by state law to have the final authority to establish governmental policy. *Ware v. Jackson County, Mo.*, 150 F.3d 873, 880 (8th Cir.1998). Alternatively, a "custom or usage" is demonstrated by: (1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) the plaintiff's injury by acts pursuant to the governmental entity's custom, *i.e.*, proof that the custom was the moving force behind the constitutional violation. *Id.*

Jones asserts that Cass County's decision to hire Stoneking, without conducting any background check, and then, without training, allowing him to transport handcuffed, female inmates is sufficient to establish a § 1983 claim. In response, Cass County contends that an isolated incident of hiring does not amount to a constitutional violation and that Jones failed to identify

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2005 WL 459652 (D.Minn.)  
**(Cite as: 2005 WL 459652 (D.Minn.))**

Page 3

a factual issue with respect to her claim that Cass County inadequately trained Stoneking.

*1. Inadequate Hiring*

*3 The United States Supreme Court addressed the issue of municipal liability under § 1983 for a single hiring decision in *Board of County Commissioners of Bryan County v. Brown*, 520 U.S. 397, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). Concerned that municipal liability could very easily collapse into respondeat superior liability in the context of a single, facially lawful hiring decision, the Supreme Court adopted stringent culpability and causation requirements, noting that "[t]he fact that inadequate scrutiny of an applicant's background would make a violation of rights more *likely*" will not suffice. *Bryan County*, 520 U.S. at 410-11 (emphasis in original).

> Only where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute "deliberate indifference."

*Id.* at 411. The Eighth Circuit has explained that:

> *Bryan County* teaches us that liability may not be imposed unless a plaintiff directly links the applicant's background with the risk that, if hired, that applicant would [violate a plaintiff's constitutional rights]. In other words, a plaintiff must show that the hiring decision and the plaintiff's alleged constitutional injury are closely connected--an applicant's background is that causal link.

*Morris v. Crawford County, Ark.*, 299 F.3d 919, 923 (8th Cir.2002).

In this case, Cass County hired Stoneking to be a part-time boat and water division deputy in the summer of 2000. In his application to Cass County, Stoneking listed three previous jobs and employers. For one of those positions, Stoneking stated that he was the Chief of Police for Odebolt, Iowa. Cass County Sheriff Randy Fisher, who was responsible for hiring Stoneking, did not contact any of those employers. Instead, he hired Stoneking based on his conversations with Stoneking and his conversation with the retiring boat and water division deputy, who told Fisher that Stoneking had a knowledge of boats and that he had been a police officer in Iowa. In December 2000, a position became available for a Cass County Transport Officer. Based on Stoneking's months of service with Cass County, Sheriff Fisher recommended that Stoneking apply for the position. Because he considered Stoneking to be making a "lateral" move, Sheriff Fisher did not require Stoneking to fill out a new application. Moreover, even though he knew of Stoneking's law enforcement past, he did not make further investigations into Stoneking's background now that Stoneking would be transporting inmates.

In support of her opposition to Cass County's motion for summary judgment, Jones submitted the affidavits of Robert A. Ford, Robert G. Carnine, Sandra L. Berndt and Jon R. Huggins (collectively, the Affidavits). The Affidavits, if accepted, are essential to Jones's ability to demonstrate that Cass County failed to adequately scrutinize Stoneking's background under the rigorous *Bryan County* standard. One could reasonably conclude from the Affidavits that Stoneking had a history of crude and insulting behavior towards women and that investigations of Stoneking while employed by other law enforcement agencies reveal allegations of sexual improprieties. Indeed, Carnine, who was the Mayor of Odebolt when Stoneking was hired as a patrolman with the Odebolt Police Department, testified via affidavit that had anyone from Cass County contacted him regarding his knowledge of Stoneking's employment record at Odebolt, he would have "advised that they should not hire Mr. Stoneking because his character would not stand up to scrutiny," and that Stoneking "had a tendency to insult and cause stress to members of the female sex." In addition, Berndt, who has worked as the Supervisor of Dispatchers for the City of Iowa Falls for thirty-eight years, testified that had she been contacted by Cass County regarding Stoneking's employment history with Iowa Falls, she would have told them that Stoneking was investigated during his employment and that the "investigation ... revealed allegations of a sexual nature which indicated that Robert Stoneking could not be trusted around teenage girls...." Finally, Ford, who was a patrolman with the Iowa Falls Police Department when Stoneking was

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 459652 (D.Minn.)
(Cite as: 2005 WL 459652 (D.Minn.))

Page 4

hired as Chief of Police, attached to his affidavit notes regarding conversations he had with police officers while investigating Stoneking's prior work history. These notes indicate, among other things, that "[t]here is on record in Colfax handwritten statements from high school aged girls alleging that Stoneking made lewd statements to the girls" and that a woman in Colfax alleged that Stoneking sexually harassed her and on one occasion assaulted her with a nightstick.

*4 In its reply papers, Cass County claims that the Affidavits are inadmissible because they were disclosed for the first time in response to Cass County's motion and after the close of discovery. The Court recognizes the importance of the issue of whether the Affidavits are properly considered. However, Cass County has not made a formal motion and does not point to any discovery request to which Jones failed to adequately respond. Moreover, Cass County's claim that it is being "sandbagged" is belied by the fact that the identity of the affiants may have been disclosed, or made readily ascertainable, in Cass County's or Stoneking's discovery responses. [FN3]

> FN3. That Stoneking worked in law enforcement in Odebalt, Iowa was disclosed in Stoneking's July 2000 employment application for Cass County. In addition, Stoneking disclosed in response to a discovery request that he served as a law enforcement officer in the towns of Perry, Pocahontas, Colfax, Iowa Falls, and Odebolt in Iowa.

Because of the importance of the evidence contained in the Affidavits, the drastic consequences of excluding them, and the fact that the admissibility of the Affidavits is outside the scope of the current briefing, the Court feels that this issue warrants litigation. Therefore, the Court accepts the Affidavits as properly admitted solely with respect to the motion currently before the Court. This does not constitute a ruling as to the ultimate admissibility of the Affidavits; any relevant motions *in limine* will be heard at the appropriate time.

Considering the Affidavits, and viewing this evidence in the light most favorable to Jones, the Court concludes that there is a genuine issue of material fact with respect to whether Sheriff Fisher acted with deliberate indifference by hiring Stoneking to transport female prisoners without conducting any further background check into Stoneking's past and whether Jones's alleged injuries were caused by Cass County's inadequate hiring. A reasonable juror could find that the plainly obvious consequence of hiring Stoneking would be the deprivation of Jones's rights. Accordingly, the Court denies Cass County's motion on Count Eleven with respect to Jones's inadequate hiring claim.

*2. Failure to Train*

In order for Jones to prevail on her § 1983 claim under the failure to train theory, she must demonstrate that Cass County failed to adequately train its employees and that its failure to train amounts to "a 'deliberate indifference' to the rights of persons with whom the police come into contact." *See City of Canton v. Harris,* 489 U.S. 388, 392 (1989). Moreover, Jones must demonstrate that Cass County's failure to train proximately caused the alleged constitutional deprivation. *Id.* at 391. In *City of Canton,* the Supreme Court explained:

> That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program.... It may be, for example, that an otherwise sound program has occasionally been negligently administered. Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct.

*5 489 U.S. at 390-91 (citations omitted).

Jones claims Stoneking did not receive enough "detention center personnel" training and that he was given no instruction as to how to interact with female prisoners. In addition, Jones asserts that the need for more training for Stoneking was so obvious that one can reasonably conclude that Cass County was deliberately indifferent to the need. Cass County, on the other hand, asserts that Stoneking was adequately trained and that Jones cannot demonstrate that any alleged failure to train was the proximate cause of the

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2005 WL 459652 (D.Minn.)  
**(Cite as: 2005 WL 459652 (D.Minn.))**

Page 5

incident.

Viewing the evidence in the light most favorable to Jones, the Court finds that Jones has failed to identify a genuine issue of material fact to support her failure to train claim. On the record before the Court, there is no evidence that Cass County failed to properly train Stoneking or that it was deliberately indifferent to the constitutional rights of Cass County inhabitants. Moreover, no reasonable jury could find that any alleged failure on the part of Cass County to train Stoneking proximately caused Stoneking to commit the crime of third degree criminal sexual conduct by having sex with a detained female in the back of a transport van. Accordingly, the Court grants Cass County's motion with respect to Jones's failure to train claim under § 1983.

B. Section 1981

In Count Four of her Complaint, Jones alleges a claim for a violation of 42 U.S.C. § 1981 based on Jones's assertion that Stoneking's actions were motivated in part because Jones is an American Indian. In order to state a prima facie claim under § 1981, Jones must show that (1) she is a member of a racial minority; (2) Cass County and Stoneking intentionally discriminated against her on the basis of her race; and (3) the discrimination was directed toward one or more activities protected by § 1981. *See Williams v. Lindenwood Univ.*, 299 F.3d 349, 355 (8th Cir.2002); *Clardy v. City of St. Paul*, Civ. No. 01-1275, 2003 WL 21805203, at *10 (D.Minn. Aug.4, 2003).

In this case, there is no dispute that Jones is an American Indian. However, she has failed to address or establish the remaining two elements of a prima facie case under § 1981. Accordingly, the Court grants Cass County's motion with respect to Count Four.

C. State-Law Claims

In addition to the § 1983 and § 1981 federal claims, Jones also asserts various Minnesota state-law claims against Cass County. The basis for the Court's jurisdiction over these claims is 28 U.S.C. § 1367(a) (2000), which permits a district court to exercise supplemental jurisdiction over claims that are part of the same case or controversy as the claims that fall within the district court's original jurisdiction. The Court considers each claim in turn.

*1. Respondeat Superior*

In Count Ten of her Complaint, Jones alleges that Cass County is liable under a theory of respondeat superior. Under the doctrine of respondeat superior, an employer is vicariously liable for the torts of an employee committed within the course and scope of his or her employment. *Fahrendorff v. N. Homes, Inc.*, 597 N.W.2d 905, 910 (Minn.1999). "Such liability stems not from any fault of the employer, but from a public policy determination that liability for acts committed within the scope of employment should be allocated to the employer as a cost of engaging in that business." *Id.* The Minnesota Supreme Court has explained that an employer may be held liable for even the intentional misconduct of its employees when (1) the source of the attack is related to the duties of the employee, and (2) the assault occurs within work-related limits of time and place. *Id.*

*6 Cass County concedes that Stoneking acted in work-related limits of time and space. *See* Cass County Mem. at 15. However, it contends that there is no genuine issue of material fact that Stoneking's actions were not related to his duties as a transport officer. In response, Jones asserts that it was foreseeable to the County that Stoneking might assault Jones.

In determining whether an attack is related to an employee's duties, Minnesota law focuses on the foreseeability of the employee's actions. *See Fahrendorff*, 597 N.W.2d at 912. Specifically, the Minnesota Supreme Court has explained that conduct is foreseeable in the respondeat superior context if the conduct "is not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business." *Id.* In contrast, foreseability in a negligence sense involves determining "the level of probability which would lead a prudent person to take effective precautions." *Id.* In *Fahrendorff*, the Minnesota Supreme Court determined that there was a genuine issue of material fact with

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:00-cv-01794-JCH    Document 225-5    Filed 03/15/2006    Page 6 of 7

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 459652 (D.Minn.)
(Cite as: 2005 WL 459652 (D.Minn.))

Page 6

respect to whether a group home counselor's sexual misconduct was foreseeable based, in part, on an expert opinion that such abuse was a well-known hazard and the conclusion that the counselor's actions, though wrong, were related to her duties as a counselor. *Id.* at 911.

In this case, Cass County policies contemplate that inappropriate interaction between male officers and female inmates may occur. For instance, male employees are forbidden from searching female inmates. In addition, for trips over 100 miles, there is an unwritten policy that a female must drive female inmates. Moreover, Jones's expert Anthony Bouza opines, albeit in a conclusory manner, that such interaction between an officer and an inmate is "well-known." Stoneking also held significant authority over Jones and his job enabled him to be alone with her. At this stage, viewing this evidence in the light most favorable to Jones, the Court concludes that genuine issues of material fact exist with respect to whether Stoneking's actions were foreseeable in the respondeat superior context and related to his duties as a transport officer. *Cf. L.M. v. Karlson,* 646 N.W.2d 537, 544 (Minn.Ct.App.2002). A reasonable juror could conclude that Stoneking's actions were not so unusual or startling that it would seem unfair to require Cass County to account for the loss resulting from his actions. Therefore, the Court denies Cass County's motion with respect to Count Ten.

*2. Negligence*

In Count Twelve, Jones alleges that Cass County was negligent in hiring, training, supervising, and retaining Stoneking. In general, to establish a negligence claim under Minnesota law, a party must prove (1) duty; (2) breach; (3) causation; and (4) damages. *Woehrle v. City of Mankato,* 647 N.W.2d 549, 551 (Minn.Ct.App.2002).

A claim of negligent hiring is predicated on the negligence of an employer in placing a person with known propensities, or propensities which should have been discovered by reasonable investigation, in an employment position in which it should have been foreseeable that the hired individual posed a threat of injury to others because of the circumstances of the employment. *Yunker v. Honeywell, Inc.,* 496 N.W.2d 419, 422 (Minn.Ct.App.1993). Liability for negligent hiring "is determined by the totality of the circumstances surrounding the hiring and whether the employer exercised reasonable care." *Id.* In this case, Cass County did not do a background check before hiring Stoneking. Viewing this evidence in the light most favorable to Jones, and for the reasons discussed above, the Court concludes that genuine issues of material fact exist that preclude summary judgment. Accordingly, the Court denies Cass County's motion for summary judgment with respect to this issue.

*7 Minnesota law does not recognize a cause of action for negligent training. *McKenzie v. Lunds, Inc.,* 63 F.Supp.2d 986, 1007 (D.Minn.1999); *M.L. v. Magnuson,* 531 N.W.2d 849, 856 (Minn.Ct.App.1995). The Court therefore grants Cass County's motion with respect to this issue.

In order to avoid liability for negligent supervision, an employer must exercise ordinary care in supervising an employee, so as to prevent that employee's foreseeable misconduct from causing harm to other employees or third persons. *See Magnuson,* 531 N.W.2d at 858. Unlike liability based on respondeat superior, in an action against an employer based on negligence, liability is predicated on the fault of the employer. *Fahrendorff,* 597 N.W.2d at 912. In the context of a negligence claim, " 'foreseeable' means a level of probability which would lead a prudent person to take effective precautions...." *Id.* (quotation omitted).

In support of her negligent supervision claim, Jones asserts that Cass County failed to comment on occasions when Stoneking violated Cass County's policies concerning the transport of females, such as transporting females outside a 100-mile radius and failing to bring a "matron" along on rides. The Court finds that Jones's allegations do not raise a genuine issue of fact as to the fault of Cass County, specifically whether it was foreseeable that Stoneking would sexually assault Jones. Moreover, the Court holds, on the record before it, that no reasonable jury could conclude that any alleged failure on the part of Cass County to adequately supervise Stoneking proximately

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:00-cv-01794-JCH   Document 225-5   Filed 03/15/2006   Page 7 of 7

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 459652 (D.Minn.)
(Cite as: 2005 WL 459652 (D.Minn.))

Page 7

caused Jones's alleged injuries. Therefore, the Court grants Cass County's motion with respect to this issue.

Negligent retention occurs when, during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further action such as investigating, discharge or reassignment. *Yunker,* 496 N.W.2d at 423-24. In support of her negligent retention claim, Jones points to the deposition testimony of Daniel Ahlquist, a Special Investigator from the Minnesota Bureau of Criminal Investigation who participated in the investigation of the incident giving rise to this action. Ahlquist testified that during the investigation, Stoneking stated that he had been accused of improprieties with his daughter in Itasca County three years prior but that those claims were later determined to be unfounded. In addition, Ahlquist testified that he was aware of an ongoing investigation of Stoneking involving a claim of sexual impropriety. Without more, and viewing the evidence in the light most favorable to Jones, the Court concludes that no reasonable jury could conclude that Cass County is liable for negligent retention. Accordingly, the Court denies in part and grants in part Cass County's motion for summary judgment with respect to Count Twelve.

*3. Miscellaneous State-Law Claims*

*8 In Count Eight, Jones alleges a claim against Cass County for a violation of the Minnesota Constitution. Because Minnesota does not recognize a tort for deprivation of due process, *see Bird v. Dep't of Pub. Safety,* 375 N.W.2d 35, 40 (Minn.1985), the Court grants Cass County's motion with respect to Count Eight.

In Count Nine, Jones alleges a claim against Cass County for a violation of the Minnesota Human Rights Act, Minn.Stat. §§ 363A.01-363A.41 (Supp.2003) (MHRA). As with her § 1981 claim, Jones has failed to demonstrate any way in which Cass County's actions were motivated by her race. This showing is, however, required. *See id.* § 363A.02, subd. 1(4) ("It is the public policy of this state to secure for persons in this state, freedom from discrimination ... in public services *because of* race, color, creed, religion, national origin, sex, marital status, disability, sexual orientation, and status with regard to public assistance ...") (emphasis added). Accordingly, the Court grants Cass County's motion with respect to Count Nine.

III. CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Cass County's Motion for Summary Judgment [Docket No. 31] is GRANTED IN PART and DENIED IN PART.
2. Counts Four, Eight, and Nine of Jones's Complaint [Docket No. 1] are DISMISSED WITH PREJUDICE.
3. Count Eleven of Jones's Complaint [Docket No. 1] insofar as it relates to Jones's failure to train claim against Cass County is DISMISSED WITH PREJUDICE.
4. Count Twelve of Jones's Complaint [Docket No. 1] insofar as it relates to negligent training, negligent supervision and negligent retention against Cass County is DISMISSED WITH PREJUDICE.

Not Reported in F.Supp.2d, 2005 WL 459652 (D.Minn.)

**Motions, Pleadings and Filings (Back to top)**

• 0:02CV04131 (Docket) (Oct. 22, 2002)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.